### IN THE UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

LARRY KLAYMAN,

                    Appellant,

          - vs -                                    Appeal No. 25-7079

DISTRICT OF COLUMBIA COURT
OF APPEALS, *et al.*,

                    Appellees.

### BOARD ON PROFESSIONAL RESPONSIBILITY, ROBIN BELL, SARA BLUMENTHAL, MARGARET CASSIDY, THOMAS GILBERTSEN, WILLIAM HINDLE, BUFFY MIMS, SHARON RICE-HICKS, BERNADETTE SARGEANT, LESLIE SPIEGEL, MICHAEL E. TIGAR, ROBERT WALKER, AND CHRISTIAN WHITE'S RESPONSE TO APPELLANT'S MOTION TO EXPEDITE APPEAL

This appeal arises out of the United States District Court's denial of Larry Klayman's motion for preliminary injunction. Mr. Klayman demanded that the District Court take the extraordinary step of ordering the D.C. Court of Appeals to stop its consideration of *In re Klayman*, No. 24-BG-689, involving whether he should be disciplined for his violations of the D.C. Rules of Professional Conduct in connection with his efforts to become admitted *pro hac vice* in another federal district court ("the Bundy matter"). He claimed the District Court should grant this unprecedented relief because a Hearing Committee of the Board on Professional Responsibility – the entity the D.C. Court of Appeals tasked with administering the

attorney discipline system and supporting the court in disciplinary proceedings –
issued its Report and Recommendation in the Bundy matter beyond the timeframe
contemplated by Board Rule 12.2.[1] Mr. Klayman argued that the tardy submission
required dismissal of his discipline case.

The D.C. Court of Appeals opposed Mr. Klayman's motion on the basis that
it had not been properly served, although it was the very entity he wanted to enjoin,
and because he could not succeed on the merits of his claims. The Board on
Professional Responsibility, three Hearing Committee members, and nine Board
members all sued by Mr. Klayman ("the Board defendants") argued the District
Court should deny Mr. Klayman's motion for multiple reasons, including that he
failed to establish a substantial likelihood of success on the merits of his claims,
relied only on speculation and conjecture for his assertion of irreparable harm, and
failed to show that the balance of equities tips in his favor or that it is in the public
interest to stop the D.C. Court of Appeals from considering whether an attorney

---

[1]    Mr. Klayman's motion asserts that the Hearing Committee "fail[ed] to issue"
the "Report and recommendation for **over four (4) years** – almost half a decade – .
. .". Motion at 5 (bold in original). This is yet another false representation by Mr.
Klayman to this Court. *See, e.g., In re Klayman*, No. 20-7110, 2021 U.S. App.
LEXIS 9040 (D.C. Cir. March 26, 2021) (referring Mr. Klayman to the Committee
on Admissions and Grievances for recommendations about any further discipline
warranted by his lack of candor to the Court). The Report and Recommendation
was issued on September 11, 2023, which is less than three years after the
sanctions/mitigation phase of the hearing ended. https://www.dcbar.org/Attorney-
Discipline/Disciplinary-Decisions/Disciplinary-Case?docketno=18-BD-070

violated myriad Rules of Professional Conduct.

Following an emergency hearing on May 27, 2025, the District Court denied

Mr. Klayman's motion for preliminary injunction. It found that Mr. Klayman

failed to establish "that there is *any* likelihood that he will succeed on the merits of

the claims for which he seeks an injunction." *See Klayman v. D.C. Ct. of Appeals*,

No. 24-cv-2997, 2025 U.S. Dist. LEXIS 101168, at *2 (D.D.C. May 28, 2025)

(emphasis in original).

The District Court noted that Mr. Klayman had not properly served the D.C.

Court of Appeals. *Id.* at *14-15. Even if he had, the District Court held that

*Younger v. Harris* and its progeny dictated that the federal district court should not

interfere with the ongoing disciplinary proceeding. *Id.* at *17-21. And it concluded

that he could not show a substantial likelihood that he was going to prevail on his

claims because this lawsuit was effectively an attempt to relitigate the issues that

were – or could have been – decided by the courts in the District of Columbia in a

prior lawsuit brought by Mr. Klayman. *Id.*

Mr. Klayman did not move this Court for injunctive relief. So, on May 29,

2025, the D.C. Court of Appeals held extended oral argument on whether Mr.

Klayman should be disciplined for his conduct and statements in the Bundy matter.

*See* https://www.youtube.com/watch?v=orUj0SbbSQY (starting at 45:30). The

D.C. Court of Appeals took the matter under advisement. To date, it has not issued

an opinion.

Pursuant to D.C. Circuit Rule 27(f) and the Court's May 28, 2025 Order, the Board defendants intend to file a motion for summary affirmance. In the interim, although his motion involves only the alleged violation of a local rule (rather than a federal question), and the D.C. Court of Appeals argument has already occurred, making his motion less urgent, Mr. Klayman now asks this Court to expedite its review of his appeal, claiming that he has "more than shown that he will suffer an irreparable injury and that the decision under review is subject to substantial challenge." Motion at 5.

## DISCUSSION

## I.    Mr. Klayman has not shown that he will suffer an irreparable injury absent expedited review

Mr. Klayman argues he will suffer irreparable harm if expedited review is not granted because he fears the D.C. Court of Appeals will soon issue a decision in the Bundy matter "that is not likely to be favorable to Mr. Klayman." Motion at 7.

The primary problem with Mr. Klayman's argument is that he offers no facts, documents, testimony, or evidence to support his speculation that the D.C. Court of Appeals has prejudged the outcome of the Bundy matter. To the extent he suggests that the D.C. Court of Appeals always accepts the Board's arguments, that

is not accurate. *See, e.g., In re Teitelbaum*, 303 A.3d 52, 56 (D.C. 2023)

(disagreeing with the Board's recommendation to reject a petition for negotiated

discipline).

To show irreparable harm, especially where he is seeking mandatory

affirmative injunctive relief, Mr. Klayman must demonstrate an injury that is "both

certain and great, actual and not theoretical, beyond remediation, and of such

imminence that there is a clear and present need for equitable relief[.]" *Mexichem*

*Specialty Resins, Inc. v. Env't Prot. Agency*, 787 F.3d 544, 555 (D.C. Cir. 2015)

(internal quotation marks omitted). Because he failed to do so, injunctive relief is

inappropriate.

Thus in *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 U.S. App.

LEXIS 11952 (D.C. Cir. May 16, 2025), where a union challenged an Executive

Order stating that many federal agencies were now exempt from a collective

bargaining requirement, this Court held that the union failed to show irreparable

harm where it was relying on future uncertain events:

> [T]he Union asserts that without a preliminary injunction
> it will lose bargaining power and suffer reputational harm
> that will deter present and future membership. But those
> harms are speculative because they would materialize
> only *after* an agency terminates a collective-bargaining
> agreement, and the Government directed agencies
> to *refrain* from terminating collective-bargaining
> agreements or decertifying bargaining units until after the
> litigation concludes. . . . So the Union was not entitled to

equitable relief on this basis.

*Trump*, 2025 U.S. App. LEXIS 11952, at *2-3 (italics in original).

The same is true here. Mr. Klayman's speculation about what he believes the D.C. Court of Appeals will determine is the very definition of "theoretical," and thus insufficient. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) (irreparable harm must be "likely," not merely "possib[le]").

Mr. Klayman also argues that he is being irreparably harmed because the Bundy matter is evidence of the "stacking" of disciplinary proceedings against him. Motion at 12-13. There is no evidence supporting this accusation. The purpose of the attorney discipline system is to protect the public, the courts, and the legal profession from attorneys who do not meet their ethical responsibilities. *See In re Reback*, 513 A.2d 226, 231 (D.C. 1986) (en banc). The D.C. Court of Appeals has twice found that Mr. Klayman violated multiple D.C. Rules of Professional Conduct. *See In re Klayman*, 228 A.3d 713, 717 (D.C. 2020) (per curiam); *In re Klayman*, 282 A.3d 584, 589-90 (D.C. 2023) (per curiam). He is before that court for a third time to consider whether to impose discipline for his continued conduct.

Moreover, if Mr. Klayman is dissatisfied with the D.C. Court of Appeals' decision, he can seek review in the United States Supreme Court. *See* 28 U.S.C. § 1257 (providing for review by the Supreme Court of the constitutionality of final

judgments or decrees rendered by the highest court of a state, including the D.C.

Court of Appeals). In these circumstances, he is not entitled to mandatory

affirmative injunctive relief. *See, e.g., Klayman v. Rao*, 49 F.4th 550, 553 (D.C.

Cir. 2022) (holding that injunctive relief was properly denied because "Klayman's

right . . . to petition for review in the Supreme Court provided a remedy at law to

address any errors in the district courts' judgments. Because he had an adequate

remedy at law, Klayman was not entitled to the equitable relief he sought in this

case"). For these reasons, Mr. Klayman has not shown that he will suffer an

irreparable injury absent expedited review.

## II.     Mr. Klayman has not shown that the District Court's decision is subject to "substantial challenge"

In addition to failing to demonstrate an injury that is "both certain and great,

actual and not theoretical, beyond remediation, and of such imminence that there is

a clear and present need for equitable relief," Mr. Klayman's motion fails to show

that the District Court's decision is subject to "substantial challenge."

As the District Court correctly held, *Younger v. Harris*, 401 U.S. 37 (1971),

and its progeny hold that the federal courts should not interfere in a pending state

disciplinary proceeding. In *Younger*, the Supreme Court held that the abstention

doctrine precludes enforcement of a state criminal statute by a federal court when

state-court enforcement proceedings are pending in state court. *Id.* at 54. In

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), it

extended this doctrine, holding that "disciplinary proceedings, beginning with the

filings of a complaint with the local ethics committee . . . are of a character to

warrant federal-court deference." *Id.* at 433 (cleaned up).

Mr. Klayman's motion argues that *Younger* somehow does not apply here.

Motion at 10. But this Court has already held – in a prior case involving Mr.

Klayman – that *Younger* absolutely applies to disciplinary proceedings in the

District of Columbia:

> Federal-court abstention from interference with pending
> state proceedings (including D.C. proceedings) is
> appropriate if there is no showing of bad faith,
> harassment, or some other extraordinary circumstance on
> the part of the state "that would make abstention
> inappropriate.

*Klayman v. Porter*, 104 F.4th 298, 312 (D.C. Cir. 2024) (citations omitted). *See*

*also Eisenberg v. W. Va. Office of Disciplinary Counsel*, 856 Fed. Appx. 314, 315

(D.C. Cir. 2021) ("*Younger* abstention applies when, as here, the ongoing state

proceedings are state bar disciplinary proceedings" (citing *Middlesex Cnty Ethics*

*Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Next, Mr. Klayman's motion confusingly argues that *Younger* is

inapplicable here because he is seeking damages in the underlying lawsuit. Motion

at 11. But his motion, and this appeal, are only about whether the District Court

should enjoin the D.C. Court of Appeals from considering discipline in the Bundy matter. The fact that Mr. Klayman may be seeking damages in the underlying suit says nothing about whether the District Court should issue an injunction that interferes with the pending disciplinary proceeding. On that point, *Younger* and its progeny control.

Mr. Klayman next argues that the "bad faith" exception to *Younger* abstention should apply. Motion at 11-13. This Court has previously considered – and rejected – these same arguments by this same individual. *See Klayman*, 104 F.4th at 312 (holding that plaintiff's allegations of bad faith and retaliation by disciplinary authorities were unsupported by the facts); *Klayman v Lim*, No. 19-7099, 19-7100, 830 Fed. Appx. 660, 663 (D.C. Cir. Oct. 6, 2020) (holding that Mr. Klayman "made no 'substantial,' nonconclusory allegations that the Disciplinary Counsel defendants have pursued the matters 'with[out] any expectation of' sustaining the charges against him," as required to satisfy the "bad faith" exemption to *Younger* abstention).

Mr. Klayman has offered no evidence that disciplinary charges for the Bundy matter have been pursued in bad faith. To the contrary, as this Court previously held, "the Ninth Circuit's portrayal of the facts underlying the Bundy matter reinforces that Disciplinary Counsel's decision to proceed was reasonable and bore no indication of bad faith. We therefore conclude that no exception to

*Younger* abstention applies." *Klayman*, 830 Fed. Appx. at 663.

Next, while Mr. Klayman suggests he is likely to prevail on his claim that *his* disciplinary matter was not dismissed because of *his* conservative views, the D.C. Court of Appeals has repeatedly refused to dismiss disciplinary matters involving other attorneys where there was a delay in proceedings. *See, e.g., In re Morrell*, 684 A.2d 361, 370 (D.C. 1996) (refusing to dismiss disciplinary matter where the Hearing Committee failed to submit its report and recommendations within the time contemplated by the rules); *In re Thyden*, 877 A.2d 129, 139-40 (D.C. 2005) (although the Hearing Committee failed to submit its report within the time specified by Bar Rule XI, § 9(a), and the Board failed to issue its report in a timely manner, the court rejected argument that the charges should be dismissed due to the post-hearing delay because the Bar Rules are directory, rather than mandatory, and there was no prejudice from the delay); *In re Green*, 136 A.3d 699, 700 (D.C. 2016) (per curiam) (holding that the Board correctly rejected an attorney's argument that the disciplinary case should be dismissed because the Hearing Committee issued its report significantly beyond the 120-day timeframe); *In re Rachal*, 251 A.3d 1038, 1041 (D.C. 2021) (per curiam) (holding that Rule 12.2 is "directory, rather than mandatory" and denying the respondent's motion to dismiss on grounds of a delayed hearing committee report).

The District Court also found that the *Rooker-Feldman* doctrine precluded

Mr. Klayman from "seeking what in substance would be appellate review of the

state judgment in a United States district court, based on the losing party's claim

that the state judgment itself violates the loser's federal rights." *Johnson v. De

Grandy*, 512 U.S. 997, 1005-06 (1994) (citations omitted). It noted that he had

previously filed suit in the D.C. Superior Court, alleging the Hearing Committee's

Report and Recommendation in the Bundy matter was null and void because it was

issued beyond the timeframe in Board Rule 12.2 and seeking injunctive relief

enjoining any further consideration of the Bundy disciplinary matter. *See Klayman

v. Board on Professional Responsibility*, No. 2024-CAB-000048 (D.C. Sup. Ct.). It

noted that the Superior Court had denied that request and that the D.C. Court of

Appeals had affirmed dismissal of that lawsuit while acknowledging that Mr.

Klayman's arguments regarding Rule 12.2 had been raised in the Bundy matter:

> Mr. Klayman may challenge the Hearing Committee's
> failure to comply with Rule 12.2 when his disciplinary
> case reaches this court for review in the regular course.
> See D.C. Bar R. XI, § (9)(h)(1). And he has done so. Mr.
> Klayman filed a brief in 24-BG-0689 raising the same
> arguments he raised in his Superior Court complaint, and,
> as noted above, that case is scheduled for argument
> before this court in May.

*Klayman v. Bd. on Pro. Resp.*, No. 24-cv-0366, 2025 D.C. App. LEXIS 75, at *10

(D.C. Apr. 17, 2025). The District Court thus correctly concluded that this lawsuit

was an impermissible and improper attempt to appeal the state court's ruling to a

federal district court.

Finally, and fatally to Mr. Klayman's injunctive relief motion, he has no likelihood of success on his selective prosecution claims, which require him to demonstrate (1) he was similarly situated in material respects to other individuals against whom Rule 12.2 was enforced, and (2) the selective enforcement infringed a constitutional right. *Frederick Douglass Found., Inc. v. Dist. of Columbia*, 82 F.4th 1122, 1137 (D.C. Cir. 2023).

In *Frederick Douglass*, this Court held that the members of two pro-life organizations, who were arrested for violating the District's defacement ordinance after they chalked "Black Pre-Born Lives Matter," were similarly situated to protestors who were not arrested after covering streets, sidewalks and storefronts with paint and chalk during "Black Lives Matter" protests:

> [B]oth groups gathered about matters of public concern and sought to disseminate a political message, in one instance that "Black Lives Matter," and in the other that "Black Pre-Born Lives Matter." The locations of the gatherings were also the same: namely public streets and sidewalks in the District. And the events were proximate in time, held during the summer of 2020 when public attention focused on the problems of racial justice and police violence against black Americans.
>
> * * *
>
> There was also strong evidence that both groups violated the defacement ordinance. Black Lives Matter advocates painted streets, sidewalks, and storefronts with messages

-12-

> such as "Protect Black Youth," "Our Streets," and "Abolish the Police." The complaint includes photographs of the conspicuous defacements. Similarly, the Foundation sought to chalk the "Black Pre-Born Lives Matter" message conspicuously on a public sidewalk. Police officers were present and witnessed defacement by both groups.

*Id.* at 1138.

The Court held that, for all these reasons, the two groups were similarly situated. *Id.* Here, while the underlying complaint alleges that the Board is selectively refusing to enforce Rule 12.2 against Mr. Klayman because of his conservative views, it contains no facts making this claim plausible. It does not cite any facts plausibly showing that the Board has dismissed disciplinary charges brought against "leftist and Democratic attorneys" when Rule 12.2 was violated in those cases. Nor could he. As shown above, the Board has regularly and routinely refused to dismiss disciplinary charges when attorneys argue the timeframes were violated. Without any allegation showing differing treatment in the application of Rule 12.2 among others similarly situated, Mr. Klayman has not shown a substantial likelihood of success on each of his claims.

Even if Mr. Klayman had pleaded facts plausibly showing he was singled out for enforcement from among others similarly situated, "[t]he second element of a selective enforcement claim is the infringement of a constitutional right." 82 F.4th at 1140. In *Frederick Douglass Found.*, for example, the plaintiff alleged that

District of Columbia officials "arrested individuals who chalked 'Black Pre-Born Lives Matter' on the sidewalk," thus satisfying this requirement. *Id.* at 1143.

Mr. Klayman's complaint is devoid of any allegations of similar conduct. Although his complaint intones that "[t]he Defendants' selective and discriminatory prosecution of conservative and Republican activist attorneys" "chills, deters, and restricts Mr. Klayman from participating in activities organized around his conservative and Republican activist views," and "impermissibly infringes on Mr. Klayman's right to associate on the basis of his conservative and Republican activist beliefs," these are quintessential "'naked assertion[s]' devoid of 'further factual enhancement'" that are not credited by the Court. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Mr. Klayman also claims that the Board's alleged selective enforcement of Rule 12.2 violated his Fifth Amendment rights, which requires him to plead facts that the differing treatment was "motivated by invidious discrimination." 82 F.4th at 1147. In *Frederick Douglass Found*, this Court noted that "22 other arrests were made for violations of the defacement ordinance in the second half of 2020, and the Foundation does not allege those arrests were also, or predominantly, against pro-life speech." *Id.* at 1148. This evidence, the Court held, "suggests the District continued to enforce the defacement ordinance against a variety of groups," dooming the Fifth Amendment selective prosecution claim. *Id.*

Similarly here, as shown above, the Board (and the courts) have regularly and routinely rejected that a disciplinary complaint must be dismissed where a decision was not issued within the timeframes contemplated by the Bar Rules. The fact that the Board continues to interpret Rule 12.2 against a variety of attorneys dooms the Fifth Amendment claim.

## CONCLUSION

Mr. Klayman has not shown that he will suffer an irreparable injury or that the decision under review is subject to substantial challenge. To the contrary, the Board intends to file a motion for summary affirmance because Mr. Klayman: (1) failed to establish a substantial likelihood of success on the merits of his claims; (2) relied only on speculation and conjecture for his assertion of irreparable harm; and (3) failed to show that the balance of equities tips in his favor or that it is in the public interest to stop the D.C. Court of Appeals from considering whether an attorney violated myriad Rules of Professional Conduct.

Dated:  June 23, 2025                          Respectfully submitted,

*/s/Leslie Paul Machado*
Leslie Paul Machado
O'Hagan Meyer PLLC
2560 Huntington Avenue, Ste. 204
Alexandria, Virginia 22303
(703) 775-8607 (phone)
(804) 237-0250 (facsimile)
lmachado@ohaganmeyer.com

-15-

*Attorney for Board on Professional Responsibility, Robin Bell, Sara Blumenthal, Margaret Cassidy, Thomas Gilbertsen, William Hindle, Buffy Mims, Sharon Rice-Hicks, Bernadette Sargeant, Leslie Spiegel, Michael Tigar, Robert Walker, and Christian White*

## CERTIFICATE OF COMPLIANCE

I hereby certify, on June 23, 2025 that:

1.     This document complies with the word limit under Federal Rule of Appellate Procedure 27(d)(2) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 3,858 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word for Office 365 MSO in a 14-point Times New Roman font.

`/s/ Leslie Paul Machado*
Leslie Paul Machado

## CERTIFICATE OF SERVICE

I hereby certify that, on June 23, 2025, I filed the foregoing with the Court using the CM/ECF system, which will electronically serve all counsel of record who have entered an appearance in this case, and that I separately sent it to the following via electronic mail:

> Larry Klayman
> Klayman Law Group P.A.
> 7050 W. Palmetto Park Road
> Boca Raton, Florida 33433
> leklayman@gmail.com

> */s/ Leslie Paul Machado*
> Leslie Paul Machado