ORAL ARGUMENT NOT YET SCHEDULED
No. 25-7079

===

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

**LARRY KLAYMAN,**

*Plaintiff-Appellant,*

**v.**

**DISTRICT OF COLUMBIA COURT OF APPEALS, ET AL.,**

*Defendants-Appellees.*

———————————

On Appeal from the United States District Court for the District of Columbia,
No. 1:24-cv-2997 (Hon. Reggie B. Walton)

———————————

**BOARD ON PROFESSIONAL RESPONSIBILITY, ROBIN BELL, SARA
BLUMENTHAL, MARGARET CASSIDY, THOMAS GILBERTSEN,
WILLIAM HINDLE, BUFFY MIMS, SHARON RICE-HICKS,
BERNADETTE SARGEANT, LESLIE SPIEGEL, MICHAEL E. TIGAR,
ROBERT WALKER, AND CHRISTIAN WHITE'S MOTION FOR
SUMMARY AFFIRMANCE**

———————————

Leslie Paul Machado
O'Hagan Meyer PLLC
2560 Huntington Avenue, Ste. 204
Alexandria, Virginia 22303
(703) 775-8607 (phone)
(804) 403-7110 (facsimile)
lmachado@ohaganmeyer.com

This appeal arises out of the United States District Court's denial of Larry Klayman's motion for preliminary injunction. Mr. Klayman demanded that the District Court take the extraordinary step of ordering the D.C. Court of Appeals to stop its consideration of *In re Klayman*, No. 24-BG-689, involving whether he violated the D.C. Rules of Professional Conduct in connection with his efforts to become admitted *pro hac vice* in another federal district court ("the Bundy matter").

He claimed the District Court should grant this unprecedented relief because a Hearing Committee of the Board on Professional Responsibility issued its Report and Recommendation in the Bundy matter beyond the timeframe contemplated by Board Rule 12.2. Mr. Klayman argued that the tardy submission required dismissal of his discipline case.

Following a hearing on May 27, 2025, the District Court denied Mr. Klayman's motion for preliminary injunction. It found that Mr. Klayman failed to establish "that there is *any* likelihood that he will succeed on the merits of the claims for which he seeks an injunction." *See Klayman v. D.C. Ct. of Appeals*, No. 24-cv-2997, 2025 U.S. Dist. LEXIS 101168, at *2 (D.D.C. May 28, 2025) (emphasis in original).

The District Court noted that Mr. Klayman had not properly served the D.C. Court of Appeals, which was the entity he effectively wanted to enjoin. *Id.* at *14-

15. Even if he had, the District Court held that *Younger v. Harris* and its progeny dictated that the federal district court should not interfere with the ongoing disciplinary proceeding. *Id.* at *17-21. And it concluded his federal lawsuit was effectively an attempt to relitigate the issues that were – or could have been – decided by the courts in the District of Columbia in a prior lawsuit brought by Mr. Klayman. *Id.*

Mr. Klayman did not move this Court for injunctive relief. So, on May 29, 2025, the D.C. Court of Appeals held extended oral argument on whether Mr. Klayman should be disciplined for his conduct and statements in the Bundy matter. *See* https://www.youtube.com/watch?v=orUj0SbbSQY (starting at 45:30). The D.C. Court of Appeals took the Bundy matter under advisement. To date, it has not issued an opinion.

Because the record is clear that Mr. Klayman failed to establish a likelihood of success on the merits of his claims, relied only on speculation and conjecture for his assertion of irreparable harm, and failed to show that the balance of equities tips in his favor or that it is in the public interest to stop the D.C. Court of Appeals from considering whether an attorney violated myriad Rules of Professional Conduct, the Court should summarily affirm the District Court's order denying his motion for preliminary injunction.

-2-

## BACKGROUND

### I.     Disciplinary process overview

The purpose of the attorney discipline system is to protect the public, the courts, and the legal profession from attorneys who do not meet their ethical responsibilities. *See In re Reback*, 513 A.2d 226, 231 (D.C. 1986) (en banc). The D.C. Court of Appeals established the Board as that court's disciplinary arm for administering the attorney discipline system and supporting the court in adjudicating disciplinary cases in the District of Columbia. The Office of Disciplinary Counsel (ODC), in turn, investigates attorney misconduct and prosecutes those cases before Board-appointed Hearing Committees, the Board, and the D.C. Court of Appeals. D.C. Bar R. XI, §§ 5(a), 6(a).

When ODC concludes that charges are warranted, it institutes a formal disciplinary proceeding before a Hearing Committee. *Id.* at § 8(c). Following a hearing, that Hearing Committee issues a Report and Recommendation with findings of fact, conclusions of law, and a sanction recommendation (if ODC proves a Rule violation). *Id.* at § 9(a). Parties can then file exceptions with the Board, which issues its own Report and Recommendation. *Id.* at § 9(d). Either party can then seek review in the D.C. Court of Appeals. *Id.* at §§ 9(e), (h).

### II.     The D.C. Court of Appeals twice disciplines Mr. Klayman for violating multiple provisions of the D.C. Rules of Professional Conduct

In 2020, the D.C. Court of Appeals concluded that "Disciplinary Counsel

proved that Mr. Klayman flagrantly violated Rule 1.9 on three occasions" when he represented parties in multiple suits brought against Judicial Watch, where he previously served as general counsel, that "his misconduct was intentional rather than inadvertent or innocent," and that he "deserve[d] the serious sanction of a ninety-day suspension." *In re Klayman*, 228 A.3d 713, 717 (D.C. 2020) (per curiam).

Two years later, the D.C. Court of Appeals again found that Mr. Klayman violated multiple D.C. Rules of Professional Conduct during his representation of a client, including operating under a conflict of interest, failing to abide by his client's wishes, revealing and using client secrets, failing to consult with the client before taking important steps in the litigation, and failing to cease representation. *In re Klayman*, 282 A.3d 584, 594-97 (D.C. 2022) (per curiam). It imposed an 18-month suspension and conditioned reinstatement on demonstrating fitness to practice law. *Id.* at 598.

## III. The D.C. Court of Appeals is currently considering whether Mr. Klayman should be disciplined for alleged misconduct in a third matter (Bundy)

While the Judicial Watch matter was pending, Mr. Klayman was charged with multiple violations of the D.C. Rules of Professional Conduct arising from his unsuccessful application to be admitted pro hac vice as counsel for Cliven Bundy in a federal case in Nevada. ECF No. 1 at ¶ 44. After receiving post-hearing briefs,

the Hearing Committee made a preliminary determination, on January 16, 2020, that Mr. Klayman had violated at least one of the rules charged. *See* Board Report and Recommendation at 36.[1] The parties appeared for a penalty phase of the hearing on September 14-15, 2020. *Id.*

In a Report and Recommendation issued on September 11, 2023, the Hearing Committee found by clear and convincing evidence that Mr. Klayman violated multiple D.C. Rules of Professional Conduct, and that he "engaged in conduct unbecoming a member of the Bar." *See* Hearing Committee Report and Recommendation at 2.[2]

Mr. Klayman then argued the Board must declare the Hearing Committee's Report and Recommendation null and void, because it was issued beyond the timeframe in Board Rule 12.2, which states "[t]he Hearing Committee's report shall be filed with the Board not later than 120 days following the conclusion of the hearing." Board Report and Recommendation at 34-35.

---

[1]     The Board's 73-page Report and Recommendation is here: https://www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=LarryEKlayman18BD070.pdf

[2]     The Hearing Committee's 90-page Report & Recommendation is here: https://www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=HCLarryEKlayman18BD070.pdf

The Board rejected this argument, explaining that the D.C. Court of Appeals had repeatedly denied motions to dismiss on grounds of a delayed hearing report, unless the movant could show prejudice. *Id.* at 35 (citations omitted). The Board concluded that Mr. Klayman had not shown any prejudice from the delay. *Id*. It ultimately recommended an 18-month suspension with a fitness requirement prior to reinstatement. *Id.* at 73.

**IV.    Proceedings in the District of Columbia courts**

On October 6, 2023, while the Board was considering Mr. Klayman's exceptions to the Hearing Committee's Report and Recommendation, he filed a Petition for a Writ of Mandamus with the D.C. Court of Appeals, asking it to dismiss his disciplinary case because of Rule 12.2. That court denied his mandamus petition, because he insufficiently substantiated his need for such extraordinary relief, while noting he could raise his arguments when it considered the Bundy matter.

Mr. Klayman instead sued the Board in the D.C. Superior Court, alleging the Hearing Committee's Report and Recommendation was null and void because it was issued in violation of Rule 12.2, but that the Board refused to apply Rule 12.2 because of Mr. Klayman's political views. Mr. Bundy asked that court to terminate any consideration of discipline in the Bundy matter.

After the Superior Court dismissed Mr. Klayman's lawsuit over Rule 12.2.

Mr. Klayman appealed that dismissal to the D.C. Court of Appeals, which affirmed. *See Klayman v. Board on Professional Responsibility*, 333 A.3d 1157 (D.C. 2025). It reiterated that Mr. Klayman's arguments regarding Rule 12.2 would be addressed when the court considered discipline in the Bundy matter:

> Mr. Klayman may challenge the Hearing Committee's failure to comply with Rule 12.2 when his disciplinary case reaches this court for review in the regular course. See D.C. Bar R. XI, § (9)(h)(1). And he has done so. Mr. Klayman filed a brief in 24-BG-0689 raising the same arguments he raised in his Superior Court complaint, and, as noted above, that case is scheduled for argument before this court in May.

*Id.* at 1161.[3]

## V.    Mr. Klayman files suit in the District Court over Rule 12.2

On October 22, 2024, which was after the Superior Court dismissed his lawsuit seeking an Order stopping any consideration of discipline for the Bundy matter and while he was appealing that dismissal to the D.C. Court of Appeals, Mr. Klayman filed this lawsuit in the District Court. The Board defendants moved to dismiss the complaint. ECF No. 7. In their accompanying memorandum of law, they showed that the complaint failed as a matter of law for at least six reasons.

---

[3]    In his opening brief to the D.C. Court of Appeals in the Bundy matter, Mr. Klayman argued, *inter alia*, that the Bundy discipline matter was "plainly time-barred pursuant to Board on Professional Responsibility ('Board') Rule 12.2" and "is a textbook example of First Amendment viewpoint and selective prosecution discrimination found to be illegal in *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122 (D.C. Cir. 2023) . . .".

ECF No. 7-1. That motion is fully briefed and pending in the District Court.

## VI.    Mr. Klayman moves for injunctive relief in the District Court

On May 14, 2025, which was shortly after the D.C. Court of Appeals

affirmed dismissal of *Klayman v. Board on Professional Responsibility*, Mr.

Klayman filed a motion for injunctive relief in the District Court, asking it to find

the Hearing Committee Report and Recommendation in the Bundy matter is "void

*ab initio* and vacated and thus preliminarily enjoined from further consideration"

because of Rule 12.2 ECF No. 11. He claimed that affirmative injunctive relief was

required because the D.C. Court of Appeals was "likely" to issue "a decision that is

not likely to be favorable to" him in the Bundy matter. *Id.* at 6. He urged the

District Court to act with dispatch because the D.C. Court of Appeals was

scheduled to hear argument in the Bundy matter on May 29, 2025. *Id.* at 4.

Following a hearing on May 27, 2025, the District Court denied Mr.

Klayman's motion for preliminary injunction because he failed to establish "that

there is *any* likelihood that he will succeed on the merits of the claims for which he

seeks an injunction." *See Klayman v. D.C. Ct. of Appeals*, No. 24-cv-2997, 2025

U.S. Dist. LEXIS 101168, at *2 (D.D.C. May 28, 2025) (emphasis in original).

It noted that Mr. Klayman had not properly served the D.C. Court of

Appeals, which was the entity he wanted to enjoin. *Id.* at *14-15. It further held

that *Younger v. Harris* and its progeny dictated that the federal district court should

not interfere with the ongoing disciplinary proceeding. *Id.* at *17-21. And it concluded that he could not show a likelihood that he was going to prevail on his claims because this lawsuit was effectively an attempt to relitigate the issues that were – or could have been – decided by the courts in the District of Columbia. *Id.*[4]

Mr. Klayman did not move this Court for injunctive relief. So, on May 29, 2025, the D.C. Court of Appeals held oral argument on whether Mr. Klayman should be disciplined for his conduct and statements in the Bundy matter. During his extended oral argument, Mr. Klayman argued, *inter alia*, that Rule 12.2 was incorrectly applied by the Board, that Rule 12.2 required dismissal of the Bundy matter, and that it was being selectively enforced against him because of his conservative views. The D.C. Court of Appeals took the matter under advisement.

## APPLICABLE STANDARD

"To summarily affirm an order of the district court, this court must conclude that no benefit will be gained from further briefing and argument of the issues presented." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297-98 (D.C. Cir. 1987) (citing *Sills v. Bureau of Prisons*, 761 F.2d 792, 793-94 (D.C. Cir. 1985).

---

[4]    The District Court added that "given the speculative nature of the harm proposed by the plaintiff and the important state interest in overseeing the ethical conduct of members of the District of Columbia bar, the Court would likely still deny the plaintiff's motion based on those factors as well." *Klayman*, 2025 U.S. Dist. LEXIS 101168, at *13-14. And it noted that there were "several other grounds for denying plaintiff's motion." *Id.* at *22.

**ARGUMENT**

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.' To get a preliminary injunction the movant must show: (1) 'he is likely to succeed on the merits,' (2) 'he is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in his favor,' and (4) issuing 'an injunction is in the public interest.'" *Hanson v. Smith*, 120 F.4th 223, 231 (D.C. Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20, 22 (2008)).

The District Court correctly denied Mr. Klayman's motion for preliminary injunction. He failed to establish a likelihood of success on the merits of his claims, relied only on speculation and conjecture for his assertion of irreparable harm, and failed to show that the balance of equities tips in his favor or that it is in the public interest to stop the D.C. Court of Appeals from considering whether an attorney violated myriad Rules of Professional Conduct.

## I.    Mr. Klayman cannot show a likelihood of success on the merits of his claims

The District Court correctly applied *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny to abstain from the pending state disciplinary proceeding. In *Younger*, the Supreme Court held that the abstention doctrine precludes enforcement of a state criminal statute by a federal court when enforcement proceedings are pending in state court. *Id.* at 54. In *Middlesex Cty. Ethics Comm. v.*

*Garden State Bar Ass'n*, 457 U.S. 423 (1982), the Court extended this doctrine, holding that "disciplinary proceedings, beginning with the filings of a complaint with the local ethics committee . . . are of a character to warrant federal-court deference." *Id.* at 433 (cleaned up).

"*Younger* abstention is called for when three conditions are satisfied: 'first, . . . there are ongoing state proceedings that are judicial in nature; second, the state proceedings must implicate important state interests; third, the proceedings must afford an adequate opportunity in which to raise the federal claims.'" *Eisenberg v. W. Va. Office of Disciplinary Counsel*, 856 Fed. Appx. 315 (D.C. Cir. 2021) (citation omitted). All three conditions are satisfied here.

First, it is beyond cavil that the pending disciplinary proceedings are judicial in nature. Second, this Court has regularly applied *Younger* to abstain from pending attorney disciplinary matters. *See, e.g., Stanton v. D.C. Court of Appeals*, No. 04-7065, 2004 U.S. App. LEXIS 24142 (D.C. Cir. Nov. 17, 2004) (granting motion for summary affirmance and holding that district court properly dismissed attorney's complaint pursuant to *Younger* "in light of the ongoing proceedings in the District of Columbia Court of Appeals"); *Lawrence v. Carlin*, No. 13-7107, 2013 U.S. App. LEXIS 24673 (D.C. Cir. Dec. 11, 2013) (granting motion for summary affirmance because *Younger* dictated abstention from pending disciplinary proceedings in the D.C. Court of Appeals).

Third, a party to proceedings in the District of Columbia courts can raise constitutional claims as defenses. *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1121 (D.C. Cir. 2004) (citations omitted). And, in fact, multiple attorneys have raised constitutional claims during discipline matters in the D.C. Court of Appeals. *See, e.g., In re Doman*, 314 A.3d 1219, 1228 (D.C. 2024) (per curiam) (analyzing attorney's Fourth and Fifth Amendment arguments); *In re Clark*, 311 A.3d 882, 890 (D.C. 2024) (per curiam) (denying Office of Disciplinary counsel's motion to enforce subpoena to attorney in discipline case because of Fifth Amendment); *In re Barber*, 128 A.3d 637, 640 (D.C. 2015) (per curiam) (analyzing attorney's Fifth Amendment argument).

In fact, during the extended oral argument in the D.C. Court of Appeals in the Bundy matter, Mr. Klayman argued, *inter alia*, that Rule 12.2 was incorrectly applied by the Board, that it required dismissal of the Bundy matter, and that it was being selectively enforced against him because of his conservative views, in violation of *Frederick Douglass Found., Inc. v. Dist. of Columbia*, 82 F.4th 1122 (D.C. Cir. 2023), and his First and Fifth Amendment rights. Because those ongoing proceedings implicate important state interests and afford an adequate opportunity to raise the federal claims, the District Court correctly held that *Younger* abstention was appropriate.

Although Mr. Klayman argued in the District Court that the "bad faith"

exception to *Younger* abstention should apply, this Court has already rejected that argument. In *Klayman v Lim*, Nos. 19-7099, 19-7100, 830 Fed. Appx. 660 (D.C. Cir. Oct. 6, 2020), Mr. Klayman argued the District Court wrongly abstained from interfering with the Bundy disciplinary matter because it was being pursued in bad faith. *Id.* at 662-663. This Court rejected that argument: "the Ninth Circuit's portrayal of the facts underlying the Bundy matter reinforces that Disciplinary Counsel's decision to proceed was reasonable and bore no indication of bad faith. We therefore conclude that no exception to *Younger* abstention applies." *Id.* at 663.

The District Court here also correctly held that the *Rooker-Feldman* doctrine applies here. As shown above, Mr. Klayman has repeatedly raised these issues below, before the Board and in the District of Columbia courts. The District Court correctly held this lawsuit is an impermissible and improper attempt to effectively appeal those rulings to a federal district court. *See, e.g., Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 75-76 (D.C. Cir. 1997) (attorney's allegation that Board was recommending denial of reinstatement because of attorney's opinions and beliefs, in violation of his First Amendment rights, barred by *Rooker-Feldman* doctrine).[5]

---

[5]     The only decision cited by Mr. Klayman, *D.C. Healthcare Sys. v. D.C.*, 925 F.3d 481 (D.C. Cir. 2019), is inapposite. There, after a company was found to be in financial distress, and was placed into receivership by a D.C. agency via a Superior Court action, its only shareholder sued in federal court, alleging that, over a period of years, the District of Columbia essentially engaged in a fraudulent scheme.

Finally, and fatally to Mr. Klayman's injunctive relief motion, he has not shown a likelihood of success on his selective prosecution claims, which require him to demonstrate: (1) he was similarly situated in material respects to other individuals against whom the law was not enforced, and (2) the selective enforcement infringed a constitutional right. *Frederick Douglass Found., Inc. v. Dist. of Columbia*, 82 F.4th 1122, 1137 (D.C. Cir. 2023).

Mr. Klayman's complaint here contains no facts showing that the Board interpreted Rule 12.2 differently from others similarly situated. *See Frederick Douglass Found.*, 82 F.4th at 1137 (to avoid dismissal, a plaintiff must first plead facts plausibly showing "he was singled out for enforcement 'from among others similarly situated'"). Nor could he. Because the record shows that numerous disciplinary matters have proceeded even where the Report and Recommendation was issued beyond the timeframes contemplated by the rules. *See, e.g., In re Morrell*, 684 A.2d 361, 370 (D.C. 1996) (refusing to dismiss disciplinary matter despite the fact the Hearing Committee failed to submit its report and recommendation within the time contemplated by the rules); *In re Green*, 136 A.3d

---

Because the relief sought in the two cases was different – the Superior Court proceeding was intended to save the failing company while the federal court lawsuit sought relief for the alleged fraud – the D.C. Circuit held that the *Rooker-Feldman* doctrine was inapplicable. *Id.* at 489. Here, however, the relief Mr. Klayman is seeking is identical to what he wanted in his Superior Court suit: a termination of discipline in the Bundy matter. That effort is foreclosed by the *Rooker-Feldman* doctrine.

699, 700 (D.C. 2016) (per curiam) (holding that the Board correctly rejected an attorney's argument that the disciplinary case should be dismissed because the Hearing Committee issued its report significantly beyond the 120-day timeframe); *In re Rachal*, 251 A.3d 1038, 1041 (D.C. 2021) (per curiam) (holding that Rule 12.2 is "directory, rather than mandatory" and denying the respondent's motion to dismiss on grounds of a delayed hearing committee report).

And even if Mr. Klayman had pleaded facts plausibly showing he was singled out for enforcement from among others similarly situated, "[t]he second element of a selective enforcement claim is the infringement of a constitutional right." *Frederick Douglass Found.*, 82 F.4th at 1140. But Mr. Klayman's complaint contains no factual allegations that his speech or assembly rights have been violated by the Board's interpretation of Rule 12.2.

Mr. Klayman also alleges that the Board's alleged selective enforcement of Rule 12.2 violated his Fifth Amendment rights. ECF No. 1 at ¶¶ 83-90. This claim requires him to additionally plead facts showing that the differing treatment was "motivated by invidious discrimination." *Frederick Douglass Found.*, 82 F.4th at 1147.

Where the record does not show differing treatment, there can be no inference of invidious discrimination. Thus, in *Frederick Douglass Found.*, this Court noted that "22 other arrests were made for violations of the defacement

-15-

ordinance in the second half of 2020, and the Foundation does not allege those arrests were also, or predominantly, against pro-life speech." *Id.* at 1148. This evidence, the court held, "suggests the District continued to enforce the defacement ordinance against a variety of groups," dooming the Fifth Amendment selective prosecution claim. *Id.*

The same is true here. The fact that the Board continues to interpret Rule 12.2 against a variety of attorneys, as shown above, dooms the Fifth Amendment claim. Because Mr. Klayman has not shown a likelihood of success on the merits, the Court should summarily affirm the District Court's Order denying his motion for preliminary injunction. *Ark. Dairy Coop. Ass'n v. U.S. Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009) (affirming denial of preliminary injunction motion where plaintiff failed to show a likelihood of success on the merits).

## II.    Mr. Klayman has not shown that he will suffer irreparable harm if an injunction does not issue

To obtain the "extraordinary remedy" of a preliminary injunction, a plaintiff must make a "clear showing that," among other factors, ''he is likely to suffer irreparable harm in the absence of preliminary relief." *Hanson*, 120 F.4th at 231 (citation omitted). Here, Mr. Klayman argued he might suffer irreparable harm if injunctive relief is not granted because he fears the D.C. Court of Appeals will soon issue a decision in the Bundy matter "that is not likely to be favorable to Mr. Klayman."

The primary problem with Mr. Klayman's argument is that he offered no facts, documents, testimony, or evidence to support his speculation that the D.C. Court of Appeals has prejudged the outcome of the Bundy matter. Instead, the D.C. Court of Appeals stated that it was prepared to address Mr. Klayman's arguments regarding the Board's interpretation of Rule 12.2. *Klayman*, 333 A.3d at 1161. And the judges did so, questioning both Mr. Klayman and ODC counsel about Rule 12.2.

As this Court has recently reiterated, a party seeking injunctive relief must come forward with more than speculation. Thus in *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 U.S. App. LEXIS 11952 (D.C. Cir. May 16, 2025), where a union challenged an Executive Order stating that many federal agencies were now exempt from a collective bargaining requirement, this Court held that the union failed to show irreparable harm where it was relying on future uncertain events:

> [T]he Union asserts that without a preliminary injunction it will lose bargaining power and suffer reputational harm that will deter present and future membership. But those harms are speculative because they would materialize only *after* an agency terminates a collective-bargaining agreement, and the Government directed agencies to *refrain* from terminating collective-bargaining agreements or decertifying bargaining units until after the litigation concludes. . . . So the Union was not entitled to equitable relief on this basis.

*Trump*, 2025 U.S. App. LEXIS 11952, at *2-3 (italics in original).

The same is true here. Mr. Klayman's speculation about what he believes the D.C. Court of Appeals will determine is the very definition of "theoretical," and thus insufficient. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) (irreparable harm must be "likely," not merely "possib[le]").

Mr. Klayman also argues that he is being irreparably harmed because the Hearing Committee delayed issuing the report in the Bundy matter to "stack" disciplinary proceedings against him. ECF No. 11 at 12-13.[6] But the record shows that these matters sometimes take longer than 120 days to resolve. Mr. Klayman has offered no facts supporting his allegation the Hearing Committee intentionally delayed issuing the report.

Moreover, if Mr. Klayman is dissatisfied with the D.C. Court of Appeals' decision, he can seek review in the United States Supreme Court. *See* 28 U.S.C. § 1257. In these circumstances, he is not entitled to mandatory affirmative injunctive relief. *See, e.g., Klayman v. Rao*, 49 F.4th 550, 553 (D.C. Cir. 2022) (holding that injunctive relief was properly denied because "Klayman's right . . . to petition for review in the Supreme Court provided a remedy at law to address any errors in the

---

[6]    In *Fla. Bar v. Rubin*, 362 So. 2d 12 (Fla. 1978), upon which Mr. Klayman entirely relies, the court stated the Bar may not withhold a referee's report which it finds too lenient until additional cases can be developed against the affected attorney, in an effort to justify the more severe discipline which might be warranted by cumulative misconduct. *Id.* at 15. Those are not our facts.

district courts' judgments").

## III.    Mr. Klayman has not shown that the balance of equities tips in his favor and that issuing an injunction is in the public interest

Nothing in the law or the facts suggests that the balance of equities warrants this Court taking the extraordinary and unprecedented step of preventing the D.C. Court of Appeals from reviewing Mr. Klayman's conduct in the Bundy matter, especially where that Court is already considering his arguments regarding Rule 12.2, selective prosecution, and viewpoint discrimination. To the contrary, the public interest is best served by allowing the D.C. Court of Appeals to consider whether Mr. Klayman's conduct warrants the recommended discipline or whether the Hearing Committee's delay in issuing its report warrants dismissal.

## CONCLUSION

For the foregoing reasons, this Court should summarily affirm the District Court's Order denying Mr. Klayman's request for preliminary injunction.

Dated:  July 14, 2025                    Respectfully submitted,


                    */s/Leslie Paul Machado*
                    Leslie Paul Machado (Bar No. 472395)
                    O'Hagan Meyer PLLC
                    2560 Huntington Avenue, Ste. 204
                    Alexandria, Virginia 22303
                    (703) 775-8607 (phone)
                    (804) 237-0250 (facsimile)
                    lmachado@ohaganmeyer.com

-19-

*Attorney for Board on Professional Responsibility, Robin Bell, Sara Blumenthal, Margaret Cassidy, Thomas Gilbertsen, William Hindle, Buffy Mims, Sharon Rice-Hicks, Bernadette Sargeant, Leslie Spiegel, Michael Tigar, Robert Walker, and Christian White*

## CERTIFICATION OF COMPLIANCE WITH
## TYPEFACE AND LENGTH LIMITATIONS

This document complies with the word limit under Federal Rule of

Appellate Procedure 27(d)(2) because this document contains 4807 words.

This document complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because this document was prepared in a

proportionally spaced typeface using Microsoft Word for Office 365 MSO in a 14-

point Times New Roman font.

*/s/Leslie Paul Machado*
Leslie Paul Machado

## CERTIFICATE OF SERVICE

I hereby certify that, on July 14, 2025, I filed the foregoing with the Court using the CM/ECF system, which will electronically serve all counsel of record who have entered an appearance in this case, and that I separately sent it to the following via electronic mail:

> Larry Klayman
> Klayman Law Group P.A.
> 7050 W. Palmetto Park Road
> Boca Raton, Florida 33433
> leklayman@gmail.com

*/s/ Leslie Paul Machado*
Leslie Paul Machado