NOT YET SCHEDULED FOR ORAL ARGUMENT

———————————

No. 25-7079

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

LARRY KLAYMAN,

Plaintiff-Appellant,

v.

DISTRICT OF COLUMBIA COURT OF APPEALS, *et al.*,

Defendants-Appellees.

———————————

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————————

**APPELLEE THE DISTRICT OF COLUMBIA COURT OF APPEALS'
SUPPLEMENT TO ITS MOTION FOR SUMMARY AFFIRMANCE**

———————————

Consistent with D.C. Circuit Rule 27(f)(2), appellee the District of Columbia Court of Appeals supplements its dispositive motion with the district court's memorandum opinion and preliminary injunction hearing transcript.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE
Bar Number 1017942
Solicitor General
Office of the Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

CARL J. SCHIFFERLE
Deputy Solicitor General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
(202) 741-0649 (fax)
caroline.vanzile@dc.gov

July 2025

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
LARRY KLAYMAN,                          )
                                        )
                    Plaintiff,          )
        v.                              )
                                        )          Civil Action No. 24-2997 (RBW)
DISTRICT OF COLUMBIA                     )
COURT OF APPEALS, <u>et al.</u>         )
                                        )
                    Defendants.         )
_____ )


## <u>MEMORANDUM OPINION</u>

Upon consideration of the parties' submissions, and in accordance with the oral rulings issued by the Court during the preliminary injunction hearing held on May 27, 2025, the Court concludes that it must deny the plaintiff's motion for a preliminary injunction because the plaintiff has failed to establish a likelihood that the Court has subject matter jurisdiction over the claims he raises in his motion.[1]  <u>See</u> Plaintiff's Motion for Preliminary Injunction ("Pl.'s Mot.") at 1, ECF No. 11.  After careful review of the plaintiff's motion, and both taking as true his factual allegations and liberally construing his claims, the Court nonetheless concludes that he has not established that there is <u>any</u> likelihood that he will succeed on the merits of the claims for which he seeks an injunction.  The plaintiff's claims in this motion constitute a challenge to (1) the judgment against him in the Superior Court of the District of Columbia ("Superior Court"), in which the plaintiff sued District of Columbia Board on Professional Responsibility (the "Board")

---

[1] Because the Court concludes that the plaintiff has failed to establish a likelihood that the Court has jurisdiction over the claims he raises in his motion for a preliminary injunction, it also concludes that it need not engage in a full preliminary injunction analysis here.

seeking injunctive relief in the form of an order declaring that District of Columbia Board on

Professional Responsibility Rule 12.2 ("Rule 12.2") was violated because the Board failed to

render a decision in his disciplinary proceeding within the time designated in the Rule; and (2)

the ongoing disciplinary proceeding against him scheduled for a hearing before the District of

Columbia Court of Appeals. Specifically, the plaintiff, in his motion, is seeking to have the

Court void two reports issued in relation to his ongoing disciplinary proceeding—the AHHC

Report due to a timeliness issue and the Board Report due to his representations that distribution

of the Report will cause reciprocal disciplinary proceedings in other jurisdictions in which he has

been admitted to practice law—in advance of the oral arguments in his disciplinary proceeding

currently scheduled for May 29, 2025. And, by requesting that the Court void the two contested

reports, the plaintiff ultimately seeks to have this court effectively enjoin the upcoming oral

arguments because the disciplinary reports are central to that proceeding. However, to the extent

that the relief the plaintiff seeks is the invalidation of the judgment rendered by the Superior

Court and subsequently affirmed by the District of Columbia Court of Appeals ("Court of

Appeals"), these claims are barred by the Rooker–Feldman doctrine. And, to the extent that the

plaintiff seeks relief that effectively amounts to intervention by this federal court in ongoing

state-court proceedings, those claims are barred by Younger abstention. See JMM Corp. v.

District of Columbia, 378 F.3d 1117, 1120 (D.C. Cir. 2004) ("In Younger v. Harris and its

progeny, the Supreme Court held that, except in extraordinary circumstances, a federal court

should not enjoin a pending state proceeding (including an administrative proceeding) that is

judicial in nature and involves important state interests.") (citing Younger v. Harris, 401 U.S. 37

(1971)).

# I.  BACKGROUND

The plaintiff, Larry Klayman—an attorney and resident of Florida who is currently facing disciplinary proceedings before the District of Columbia Bar and is proceeding pro se in this case—brings this civil action against the defendants—the Court of Appeals, which is responsible for adjudicating disciplinary matters involving attorneys licensed to practice law in the District of Columbia; the Board; the members of the Board (the "Board Defendants"), specifically, Sara Blumenthal, Margaret Cassidy, Thomas Gilbertsen, William Hindle, Sharon Rice-Hicks, Bernadette Sargeant, Leslie Spiegel, Michael E. Tigar, and Robert Walker; and the members of the Ad Hoc Hearing Committee (the "AHHC"), which the plaintiff represents, "preside[s] over disciplinary hearings [and is] appointed by the Board[,]" specifically, Robin Bell, Buffy Mims, and Christian White.  Complaint ("Compl.") ¶¶ 3–17, ECF No. 1.

In his motion for a preliminary injunction, the plaintiff seeks "relief in the form of an order finding that the AHHC Report and Board Report in [the disciplinary proceeding against him that the plaintiff identifies as] the Bundy matter are void ab initio[,] vacated[,] and thus preliminarily enjoined from further consideration."  Pl.'s Mot. at 2.  The plaintiff represents that "[t]his matter is urgent and ripe for immediate consideration because of the irreparable harm that will follow immediately from the [Court of Appeals] having currently scheduled oral argument [on] the subject [of] ongoing disciplinary action against [the plaintiff] . . . for May 2[9],[2] 2025[,] and the likely adverse events harming [the p]laintiff that will flow shortly therefrom."  Id. at 1. The plaintiff alleges that, if the Court of Appeals is allowed to proceed with oral arguments on May 29, 2025, based at least in part upon the contested AHHC and Board Reports, the Court of

---

[2] The plaintiff indicated in his motion that the hearing is scheduled for May 28, 2025, but during the May 27, 2025, hearing clarified that the hearing is actually scheduled for May 29, 2025.

Appeals will likely issue a decision that the plaintiff speculates will be unfavorable. And, the plaintiff argues that a decision to that effect would "effectively remove" him "from the practice of law in the District of Columbia as well as severely affect his practice of law in other . . . jurisdictions and courts where he is licensed to practice," because, he contends, the decision would "likely trigger reciprocal disciplinary proceedings[,]" which are "extremely time consuming, very costly, [and] also prevent[ the plaintiff] from fully representing" his clients. Id. at 15–16.

     As support for his motion for a preliminary injunction, the plaintiff contends that "the Board Defendants have refused to apply Board on Professional Responsibility Rule 12.2 ('Rule 12.2') . . . to dismiss the" disciplinary proceeding against him. Id. at 3. He represents that the AHHC Defendants violated Rule 12.2 by failing to issue their Report regarding the Bundy disciplinary matter for over four years, which the plaintiff asserts, is "hugely past the . . . 120 days" set forth in Rule 12.2. Id. The plaintiff alleges that this delay "forced" him to sue the Board in Superior Court (in a lawsuit that the plaintiff calls "the Bundy Litigation"), seeking "injunctive relief in the form of an order requiring that Rule 12.2 be enforced[,]" which would have essentially voided the AHHC Report and blocked its foundational use in the disciplinary proceeding against him—likely mooting the disciplinary proceeding as a result. Id. Simultaneously, the plaintiff asked the Court of Appeals, in its capacity overseeing the disciplinary proceeding, "to either dismiss the disciplinary action on the basis of [the] Rule 12.2 [violation] or to stay th[e] disciplinary proceeding pending the outcome of the Bundy Litigation," in which the plaintiff was seeking an injunction based on the Rule 12.2 violation, but the Court of Appeals declined to dismiss or stay the disciplinary proceeding. Id. The Superior Court subsequently dismissed the Bundy Litigation, denying the plaintiff's request for injunctive relief,

and the Court of Appeals affirmed the Lower Court's dismissal.  See id.  Then, the plaintiff filed

a petition for rehearing en banc in the Bundy Litigation that "is currently pending" before the

Court of Appeals.  Id. (emphasis added).

The plaintiff also represents that "the Board Defendants . . . issued a Report and

Recommendation while the Bundy Litigation was still pending," presumably prior to when the

plaintiff filed his motion for rehearing en banc.  The plaintiff represents that the Board Report

concerns the ongoing disciplinary proceeding against him and creates "the likelihood of a

'temporary suspension' condition for [the plaintiff], which in and of itself will cause him, his

colleagues, his clients, and his family irreparable harm."  Id. at 4.  He further represents that the

Office of Disciplinary Counsel ("ODC") has distributed copies of the Board Report "in order to

maliciously harm [the plaintiff's] standing in foreign jurisdictions and courts."  Id. at 19.

At bottom, the plaintiff's ongoing state-court lawsuit, requesting that the Court of

Appeals enjoin the plaintiff's ongoing disciplinary proceeding on the grounds that the delayed

issuance of the AHHC Report violated Rule 12.2, is still underway, and the Board Report, with

which the plaintiff also takes issue, was presumably issued as part of the plaintiff's ongoing

disciplinary proceeding.  However, the plaintiff, as the basis for his motion for a preliminary

injunction from this federal court, represents that "[u]rgent action is required now to avoid

irreparable harm to [the plaintiff] because . . . a decision that is not likely to be favorable to

[the plaintiff] will likely come down shortly after the currently scheduled May 2[9], 2025[,] oral

argument" in the disciplinary matter before the Court of Appeals.  Id. at 3–4.  In other words, the

plaintiff is now seeking to have this Court void the AHHC Report that is currently under

consideration for the same reason in state court and the Board Report that was issued as part of

an ongoing disciplinary proceeding within the jurisdiction of the District of Columbia court

system, with the ultimate goal of having this Court intervene in both a state court lawsuit and a state-court-governed disciplinary proceeding—effectively halting both proceedings in their tracks. Thus, in an apparent attempt to prevent oral arguments in the plaintiff's disciplinary proceeding from taking place on May 29, 2025, as currently scheduled, the plaintiff presently seeks to have this federal court preliminarily enjoin the two reports that form the basis for that state-conducted proceeding.

In opposition, the Board Defendants assert that the plaintiff "has presented these same arguments to the D.C. Court of Appeals[, and t]hat court is scheduled to hear oral argument on May 29, 2025." See Board on Professional Responsibility, Robin Bell, Sara Blumenthal, Margaret Cassidy, Thomas Gilbertsen, William Hindle, Buffy Mims, Sharon Rice-Hicks, Bernadette Sargeant, Leslie Spiegel, Michael E. Tigar, Robert Walker, and Christian White's Opposition to Larry Klayman's Motion for a Preliminary Injunction ("Board Defs.' Opp'n") at 1, ECF No. 17. These defendants further represent that the Court of Appeals "has recognized that [the] plaintiff's arguments 'implicate a number of interpretative questions' regarding Rule 12.2, including 'whether the timing requirement of Rule 12.2 is mandatory or permissive, whether any exception is allowed under the rule, and what the consequences are of an untimely filed report.'" Id. However, they contend that "[d]espite this, [the] plaintiff has now filed a motion for preliminary injunction in which he asks this Court to issue a ruling on the merits . . . . In other words, [the] plaintiff wants this Court to decide the very issue the D.C. Court of Appeals is poised to decide, and to prevent that court from discharging its duty to determine discipline over attorneys practicing in the District of Columbia." Id. (emphasis added). Ultimately, the Board Defendants make the following arguments in opposition to the plaintiff's motion for a preliminary injunction: (1) "although the D.C. Court of Appeals scheduled oral argument in the

Bundy matter in March, [the] plaintiff waited until May 14 before filing his motion[, which] belies his assertion of exigency and emergency warranting injunctive relief[,]" id. at 2;[3] (2) the plaintiff has failed to show a substantial likelihood of success on the merits because "this Court lacks jurisdiction over this lawsuit because of the <u>Rooker-Feldman</u> doctrine[,] the D.C. Court of Appeals has repeatedly held that a delay in attorney disciplinary proceedings does not require dismissal of the disciplinary matter[, a]nd [the] plaintiff has pleaded no facts making his selective prosecution claims plausible[,]" id.; (3) the plaintiff "relies only on speculation and conjecture for his assertion of irreparable harm[,]" id.; and (4) the plaintiff "cannot show that the balance of equities tips in his favor or that it is in the public interest to stop the D.C. Court of Appeals from considering whether an attorney violated myriad Rules of Professional Conduct[,]" id.

## II.  STANDARD OF REVIEW

### A.  Motion for Preliminary Injunction

Preliminary injunctions are "extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." <u>Cobell v. Norton</u>, 391 F.3d 251, 258 (D.C. Cir. 2004).  A party moving for a preliminary injunction must show "(1) a substantial likelihood of success on the merits,[[4]] (2) that [he] would suffer

---

[3] Specifically, the Board Defendants represent that "when the D.C. Court of Appeals scheduled the case for oral argument on March 27, 2025, . . . [the] plaintiff did not seek any injunctive relief from this Court.  Instead[,] he waited more than six weeks before filing his motion for preliminary injunction . . . . [Therefore, h]is claim of exigency and emergency thus rings hollow."  Board Defs.' Opp'n at 11 (internal citation omitted).

[4] And, "[i]n this context, the 'merits' on which [the] plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction."  <u>Obama v. Klayman</u>, 800 F.3d 559, 565 (D.C. Cir. 2015).  "Federal district courts are courts of limited jurisdiction[,]" <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994), and therefore, the Court is ultimately obligated to dismiss a claim if it "lack[s] . . . subject matter jurisdiction[.]"  Fed. R. Civ. P. 12(b)(1).  Because "it is to be presumed that a cause lies outside [the Court's] limited jurisdiction," <u>Kokkonen</u>, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction.  <u>See</u> <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561

(continued . . .)

7

irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction."  Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006).  In "seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction."  Abdullah v. Obama, 753 F.3d 193, 197 (D.C. Cir. 2014) (internal quotation marks omitted).  However, "[w]hen the defendant is the government, factors (3) and (4) merge."  Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv., 64 F.4th 1354, 1364 (D.C. Cir. 2023).

Although previously "[t]he four factors [were] typically [ ] evaluated on a 'sliding scale[]'" in this Circuit, Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009), the Supreme Court's decision in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), cast doubt on the propriety of that approach, see Save Jobs USA v. U.S. Dep't of Homeland Sec., 105 F. Supp. 3d 108, 112 (D.D.C. 2015) (noting that "[i]t is not clear whether th[e sliding scale] approach survives after Winter, which suggested that a likelihood of success on the merits must always be shown").  Indeed, "the [District of Columbia] Circuit has suggested that a positive showing on all four preliminary injunction factors may be required."  Holmes v. Fed. Election Comm'n, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014).  And at least some Circuit judges have "read Winter at least to suggest[—]if not to hold[—]'that a likelihood of success is

_____

(. . . continued)

(1992).  The appropriate disposition where the moving party has not shown a substantial likelihood of jurisdiction I to deny the motion.  See Church v. Biden, 573 F. Supp. 3d 118, 133 (D.D.C. 2021) ("A plaintiff who fails to show a substantial likelihood of jurisdiction is 'not entitled to any relief, let alone the extraordinary remedy of a preliminary injunction.'") (quoting Schindler Elevator Corp. v. WMATA, 514 F. Supp. 3d 197, 212 (D.D.C. 2020), aff'd 16 F.4th 294 (D.C. Cir. 2021)).

an independent, freestanding requirement for a preliminary injunction[.]'" Sherley v. Sebelius, 644 F.3d 388, 393 (D.C. Cir. 2011) (citing Davis, 571 F.3d at 1296 (Kavanaugh, J., concurring)).

Similarly, Winter "makes clear[] [that] a mere 'possibility' of irreparable harm will not suffice." Cal. Ass'n of Private Postsecondary Schs. v. DeVos, 344 F. Supp. 3d 158, 167 (D.D.C. 2018) (quoting Winter, 555 U.S. at 22). Indeed, "a showing that irreparable injury is 'likely' is the sine qua non for obtaining a preliminary injunction—it is what justifies the extraordinary remedy of granting relief before the parties have had the opportunity fully to develop the evidence and fully to present their respective cases." Achagzai v. Broad. Bd. of Governors, No. 14-cv-768 (RDM), 2016 WL 471274, at *3–4 (D.D.C. Feb. 8, 2016). Therefore, "[a] movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." Chaplaincy of Full Gospel Churches, 454 F.3d at 297.

In order to establish a likelihood of success on the merits, a party moving for a preliminary injunction must also establish subject-matter jurisdiction. See, e.g., Uranga v. U.S. Citizenship & Immigr. Servs., 527 F. Supp. 3d 10, 18 (D.D.C. 2020); Climate United Fund v. Citibank, N.A., No. 25-cv-698 (TSC), 2025 WL 1131412, at *8 (D.D.C. Apr. 16, 2025); Church, 573 F. Supp. 3d at 133. And, failure to establish likelihood of success on the merits is a bar to relief for a party seeking a preliminary injunction. Here, for the reasons outlined below, the Court concludes that the plaintiff has failed to establish a likelihood that the Court has jurisdiction over the claims he raises in his motion for a preliminary injunction. Because likelihood of success appears to be a freestanding requirement for a preliminary injunction, the Court need not engage in the remaining factors. However, given the speculative nature of the harm proposed by the plaintiff and the important state interest in overseeing the ethical conduct

of members of the District of Columbia Bar, the Court would likely still deny the plaintiff's

motion based on those factors, as well.

## III.  ANALYSIS

The Court begins its analysis by addressing two related issues that are not central to its

decision regarding the plaintiff's motion for a preliminary injunction.  First, the Court concludes

that the plaintiff has not properly served the Court of Appeals and therefore the Court lacks

jurisdiction over that defendant.[5]  The Court of Appeals, in its opposition to the plaintiff's

motion, notes that "[a]t the outset, proper service has not been effectuated on the [ ] Court of

Appeals as required by [Federal Rule of Civil Procedure] 4.  Failure to effectuate service is a

jurisdictional defect[, and t]he [Court of Appeals] does not waive proper service."  Defendant

District of Columbia Court of Appeals's Opposition to Plaintiff's Motion for Preliminary

Injunction ("Def. DCCA's Opp'n") at 1, ECF No. 19 (internal citation omitted).  During the May

27, 2025, hearing, counsel for the Court of Appeals referenced the District of Columbia Superior

Court Rules of Civil Procedure (the "D.C. Rules") in making her argument that the plaintiff had

not properly effectuated service on the Court of Appeals.  However, it is not clear to the Court

whether the D.C. Rules or the Federal Rules of Civil Procedure (the "Federal Rules") govern

---

[5] The Court acknowledges that "at least two circuits have held in published opinions that service is not required before a Court may rule on a motion for a preliminary injunction."  Padgett v. Vilsack, No. 24-cv-02954 (CRC), 2024 WL 5283897, at *3 (D.D.C. Nov. 8, 2024) (citing Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., 80 F.4th 536, 542–43 (5th Cir. 2023); H-D Michigan, LLC v. Hellenic Duty Free Shops S.A., 694 F.3d 827, 842, 846 (7th Cir. 2012)).  This issue remains an open question by the District of Columbia Circuit.  However, another member of this district recently held, in alignment with the Fifth and Seventh Circuits, that "Federal Rule of Civil Procedure 65(a) permits a court to 'issue a preliminary injunction only on notice to the adverse party.'  Fed. R. Civ. P. 65(a)(1).  [And therefore, a]s the Fifth Circuit put it, the rule's text 'does not require service of process, but rather requires notice to the adverse party.'"  Padgett, 2024 WL 5283897, at *3 (quoting Whirlpool, 80 F.4th at 542).  In any event, the Court concludes that it need not wade into this open question because the Court of Appeals appears to have been provided notice by the plaintiff.

how to affect service on the Court of Appeals.[6]  Nonetheless, the Court does not need to reach a

conclusion on the issue of whether the Court of Appeals was properly served in order to issue its

ruling denying the plaintiff's motion for a preliminary injunction because, even assuming

<u>arguendo</u> that the plaintiff has properly served the Court of Appeals, the Court nonetheless

concludes that the plaintiff has failed to show a likelihood of jurisdiction for the Court to grant

the plaintiff's motion for a preliminary injunction as to this defendant for the reasons set forth

below.

　　　　Second, the Court did not permit the plaintiff to take the witness stand and testify during

the preliminary injunction hearing on May 27, 2025.  This decision was within the Court's

discretion, and the Court did not permit the presentation of evidence, both because of its

conclusion that it lacks jurisdiction to consider the plaintiff's motion and also because the

plaintiff failed to comply with the United States District Court for the District of Columbia Local

Civil Rules ("LCvR"), which provide that:

---

[6] Pursuant to Federal Rule of Civil Procedure 4(j)(2), which governs service of a state or local government, "[a] state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."  Fed. R. Civ. P. 4(j)(2).  Should the Court determine that Federal Rule 4(j)(2)(A) governs service by the plaintiff on the Court of Appeals in this case, the Court concludes that the Executive Officer of the District of Columbia Courts—a position presently held by Herbert Rouson Jr.—would be the appropriate recipient.  And, the plaintiff does not contend that he served the Executive Officer of the District of Columbia Courts, so he has failed to satisfy Federal Rule 4(j)(2)(A).  However, should the Court determine that Federal Rule 4(j)(2)(B) governs, then the plaintiff would presumably be subject to the D.C. Rules.  During the May 27, 2025, hearing, the Court of Appeals referenced D.C. Rule 4(j), which is entitled Serving the District of Columbia, an Agency or Officer of the District of Columbia, or Other Government Entities Subject to Suit.  <u>See</u> D.C. Super. Ct. R. Civ. P. 4(j).  Because the Court of Appeals is a component of the District of Columbia, the Court concludes that subsection three, which governs serving the District of Columbia, would be most applicable to proper service of process on the Court of Appeals.  <u>See</u> D.C. Super. Ct. R. Civ. P. 4(j)(3).  That subsection mandates that "[t]he District of Columbia must be served by delivering . . . a copy of the summons, Complaint, [or any other document] directed by the court to the parties at the time of filing to the Mayor of the District of Columbia (or designee) and the Attorney General of the District of Columbia (or designee)."  D.C. Super Ct. R. Civ. P. 4(j)(3)(A).  The plaintiff has not served the Mayor of the District of Columbia, the Attorney General of the District of Columbia, or a designee of either official.  Therefore, the plaintiff also appears to have failed to satisfy both Federal Rule 4(j)(2)(B) and D.C. Rule 4(j)(3).

> The practice in this jurisdiction is to decide preliminary injunction motions without live testimony where possible. Accordingly, any party who wishes to offer live testimony or cross-examine an affiant at the hearing shall so request in writing 72 hours before the hearing and shall provide the Court and all other parties a list of the witnesses to be examined and an estimate of the time required. The Court may decline to hear witnesses at the hearing where the need for live testimony is outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. If practicable, the Court shall notify all parties of its ruling on the request to adduce live testimony one business day before the hearing.

LCvR 65.1. The plaintiff, who emphasizes his extensive history of practicing law in the District of Columbia and before this Court, did not file a request to offer live testimony, even though he filed this motion on May 14, 2025, seeking emergency intervention before oral arguments that are scheduled for May 29, 2025, before the Court of Appeals. Accordingly, the Court determined that admission of live testimony and the proffer of exhibits by the plaintiff was not compliant with LCvR 65.1 and therefore was not permitted. In addition, the Court concluded that it was unnecessary to hear testimony or consider exhibits in order to resolve the plaintiff's motion.

The Court next turns to its analysis of the plaintiff's likelihood of success on the merits and, in particular, whether it has jurisdiction to grant the plaintiff's motion for a preliminary injunction. Federal courts have established multiple doctrines to ensure that they avoid conflicts with state court proceedings. Two of the primary doctrines in this area are Younger abstention and the Rooker-Feldman doctrine. These doctrines are premised upon the principle that abstention or deference by federal courts is necessary where (1) there is an ongoing state court proceeding; or (2) a challenge by a federal court would improperly go against the judgment of a state court. "In Younger v. Harris and its progeny, the Supreme Court held that, except in extraordinary circumstances, a federal court should not enjoin a pending state proceeding (including an administrative proceeding) that is judicial in nature and involves important state

interests." JMM Corp., 378 F.3d at 1120 (concluding that the District of Columbia qualifies as a

state for the purposes of Younger abstention). Exceptions to the Younger abstention doctrine

only apply in a very narrow set of circumstances. "Such extraordinary circumstances include

situations in which there is a showing of bad faith or harassment by state officials responsible for

the prosecution, or where the state law to be applied . . . is flagrantly and patently violative of

express constitutional prohibitions." Id. at 1122 (internal quotation marks omitted).

Moreover, the Rooker–Feldman doctrine[7] establishes that "'a party losing in state court is

barred from seeking what in substance would be appellate review of the state judgment in a

United States district court, based on the losing party's claim that the state judgment itself

violates the loser's federal rights." Laverpool v. Taylor Bean & Whitaker Reo LLC, 229 F.

Supp. 3d 5, 15–16 (D.D.C. 2017) (quoting Johnson v. De Grandy, 512 U.S. 997, 1005–06

(1994)). "The Rooker–Feldman doctrine is based on the jurisdictional grant codified in 28

U.S.C. § 1257, which authorizes only the Supreme Court to exercise appellate jurisdiction over

state court judgments." Laverpool, 229 F. Supp. 3d at 16.[8] However, the District of Columbia

Circuit has established limitations on the applicability of the Rooker-Feldman doctrine. See,

e.g., D.C. Healthcare Sys., Inc. v. District of Columbia, 925 F.3d 481, 487 (D.C. Cir. 2019)

(concluding that "the Rooker-Feldman doctrine does not deprive the district court of jurisdiction

to decide" a case in which a party's "federal lawsuit does not 'invit[e] district court review and

---

[7] This doctrine derives its name from Rooker v. Fidelity Trust Company, 263 U.S. 413 (1923) and District of
Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[8] In Laverpool, the Court concluded that "[e]ven where a federal district court might have had subject-matter
jurisdiction over a matter had the claims first been brought in that court, the Rooker–Feldman doctrine bars the court
from hearing the matter if the claim was already adjudicated in state court when the action subsequently brought in
federal court asks the 'District Court to overturn an injurious state-court judgment.'" 229 F. Supp. 3d at 16 (quoting
Exxon Mobil Corp., 544 U.S. at 291–92) (emphasis in original).

rejection of [a state court's] judgments[,]'[ but instead] presents claims that are 'independent' of and distinct from those adjudicated by the [state court]" (quoting <u>Skinner v. Switzer</u>, 562 U.S. 521, 532 (2011) (first and second alterations in original) (internal quotation marks omitted)). However, those limitations do not apply to the plaintiff's arguments regarding the instant motion for a preliminary injunction.[9]

Here, the plaintiff takes issue with the Reports of the AHHC and the Board and argues that "there is absolutely no prejudice or harm to the [d]efendants if the [preliminary injunction] is granted. This would simply result in the [d]efendants following and applying the [District of Columbia Board on Professional Responsibility] Rules as written, and therefore an order in that regard would simply maintain the status quo." Pl.'s Mot. at 20 (emphasis omitted). The <u>Rooker-Feldman</u> doctrine bars this court from overriding the decision by the Superior Court and Court of Appeals concerning the AHHC report, and <u>Younger</u> abstention bars this court from intervening in ongoing state-court proceedings—whether judicial (<u>i.e.</u>, the plaintiff's petition for rehearing <u>en banc</u>, regarding the timeliness of the AHHC Report, that is currently under consideration by the

---

[9] The Court acknowledges that the District of Columbia Circuit, in <u>D.C. Healthcare Systems</u>, emphasized that the plaintiff's constitutional claims, among others, were not barred by the <u>Rooker-Feldman</u> doctrine, noting the distinction between that doctrine and the doctrine of preclusion:

> [T]he defendants maintain that, even if [the plaintiff] did not raise its constitutional and other claims in the Superior Court proceedings, it "had every opportunity to litigate" them there . . . . [W]e doubt that [the plaintiff] could have fully litigated all of the claims contained in its federal complaint in those proceedings. But even if it could have, this argument mistakes the doctrine of preclusion for that of <u>Rooker-Feldman</u>. As the Supreme Court explained . . . in <u>Skinner</u>: ["]Switzer asserts that Skinner could have raised his federal claim in the [state] proceeding. Even if that were so, <u>Rooker–Feldman</u> is not simply preclusion by another name, and questions of preclusion unresolved below are best left for full airing and decision on remand.["]  562 U.S. at 533 n.11 (citations and internal quotation marks omitted).

925 F.3d at 489–90 (quoting <u>Skinner</u>, 562 U.S. at 533 n.11 (citations and internal quotation marks omitted)). While the Court will consider this distinction upon consideration of the pending motion to dismiss in this case, the plaintiff's motion for a preliminary injunction only challenges the AHHC and Board Reports in the Bundy matter. <u>See generally</u> Pl.'s Mot.

Court of Appeals) or administrative (i.e., the disciplinary proceeding currently scheduled for oral argument on May 29, 2025, which apparently relies at least in part upon both the AHHC and Board Reports).  Therefore, the Court lacks subject-matter jurisdiction to grant the plaintiff the relief he has requested in his motion for a preliminary injunction, and therefore the plaintiff has failed to demonstrate substantial likelihood of success on the merits—a bar to relief on a motion for a preliminary injunction.  See Church, 573 F. Supp. 3d at 133.

While the plaintiff raises constitutional claims in his Complaint, and reference was made to those claims by the Court during the May 27, 2025, hearing regarding its concern about this case being brought in this Court, the Court will not address those claims at this stage because those claims do not form the basis for the plaintiff's motion for a preliminary injunction.  See generally Pl.'s Mot.  Indeed, the plaintiff's motion for a preliminary injunction is focused solely on matters that are being adjudicated in the District of Columbia court system and will be the subject of the upcoming oral arguments currently scheduled for May 29, 2025.  Instead, the Court will assess issues concerning the plaintiff's constitutional claims when it addresses the pending motion to dismiss that has been filed in this case.

## IV. CONCLUSION

To summarize, the Court concludes that the plaintiff has not adequately established a likelihood of success on the merits because he has not shown any likelihood that the Court has subject matter jurisdiction over the plaintiff's claims that are the basis for his motion for a preliminary injunction, and thus, the Court must deny his motion for a preliminary injunction. See Church, 573 F. Supp. 3d at 133.  Because the Court concludes that it must deny the plaintiff's motion on those grounds, it need not consider what appear to be several other grounds for denying the plaintiff's motion, namely: (1) that the plaintiff has already challenged the

15

timeliness of the AHHC and Board Reports in the District of Columbia Court system; (2) the D.C. Court of Appeals appears to acknowledge the plaintiff's concerns in anticipation of the oral arguments scheduled for May 29, 2025; (3) the plaintiff's representation that a petition for rehearing en banc in the Bundy litigation is currently pending before the D.C. Court of Appeals; (4) the plaintiff can further pursue his challenge to the state court's decision in the Supreme Court of the United States—rendering unnecessary review by a federal court of the state court proceedings at issue; and (5) the outcome of the upcoming oral arguments is not a foregone conclusion as the plaintiff opines.

For the foregoing reasons, the Court concludes that it must deny the plaintiff's motion for a preliminary injunction.

**SO ORDERED** this 28th day of May, 2025.[10]


REGGIE B. WALTON
United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

```
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2
                                 ---
 3
      LARRY ELLIOT KLAYMAN,          )
 4                                   )
                                     )
 5          Plaintiff,               )  CIVIL ACTION 24-2997
                                     )
 6      v.                           )
                                     )  Tuesday, May 27, 2025
 7      DISTRICT OF COLUMBIA COURT   )
        OF APPEALS, et al.,          )
 8                                   )
                                     )
 9          Defendants.              )
      _____ )
10

11          TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING

12          BEFORE THE HONORABLE REGGIE B. WALTON
                    UNITED STATES DISTRICT JUDGE
13

14
      APPEARANCES:        KLAYMAN LAW GROUP P.A.
15                        BY:  LARRY ELLIOT KLAYMAN
                          7050 W. Palmetto Park Road
16                        Boca Raton, Florida 33433
                          310-595-0800
17                        Email:  Leklayman@gmail.com

18                        For the Plaintiff

19                                 ---

20

21

22

23

24      COURT REPORTER:   CHANDRA R. KEAN, RMR
                          Official Court Reporter
24                        333 Constitution Avenue, NW
25                        Washington, DC 20001
```

```
1    APPEARANCES (CONT'D):

2
                        OFFICE OF ATTORNEY GENERAL FOR DC
3                       BY:  JESSICA N. KRUPKE
                        400 6th Street NW, Suite 10100
4                       Washington, DC 20001
                        202-727-2125
5                       Email:  Jessica.krupke@dc.gov

6                       For DCCA

7                       O'HAGAN MEYER, PLLC
                        BY:  LESLIE PAUL MACHADO
8                       2560 Huntington Avenue, Suite 204
                        Alexandria, Virginia 22303
9                       703-775-8607
                        Email:  Lmachado@ohaganmeyer.com
10
                        For the Defendants BPR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

|   | **PROCEEDINGS** |
|---|---|
| 1 | |
| 2 | (Court called to order at 10:06 a.m.) |

10:06:13 3      DEPUTY COURTROOM CLERK:  This is civil action

10:06:15 4  24-2997, *Larry Elliot Klayman v. District of Columbia*

10:06:22 5  *Court of Appeals, et al.*

10:06:23 6      May I have the parties approach the lectern, state

10:06:26 7  your appearance for the record, beginning with the

10:06:28 8  plaintiff.

10:06:29 9      MR. KLAYMAN:  Good morning, Your Honor.  Larry

10:06:31 10  Klayman for myself, pro se.

10:06:37 11      THE COURT:  Good morning.

10:06:39 12      MR. MACHADO:  Good morning, Your Honor.  Les

10:06:41 13  Machado on behalf of the Board on Profession

10:06:44 14  Responsibility, the nine board members, and the three

10:06:46 15  Hearing Committee members who have been sued as

10:06:49 16  defendants.

10:06:49 17      THE COURT:  Good morning.

10:06:52 18      MS. KRUPKE:  Good morning.  Jessica Krupke on

10:06:54 19  behalf of the District of Columbia Court of Appeals in a

10:07:00 20  limited capacity as the District of Columbia Court of

10:07:02 21  Appeals has not been served properly.

10:07:03 22      Thank you.

10:07:03 23      THE COURT:  Good morning.  Mr. Klayman, this

10:07:06 24  matter is before the Court today on your motion for a

10:07:08 25  preliminary injunction.  You may proceed.

10:07:11  1          MR. KLAYMAN:  Your Honor, may I address some

10:07:13  2      preliminary matters --

10:07:14  3          THE COURT:  Yes.

        4          MR. KLAYMAN:  -- with you?

10:07:35  5      Your Honor, first of all, it's my intention to take

10:07:37  6      the witness stand to testify here today.  There are

10:07:40  7      factual issues involved in this case with regard to

10:07:46  8      viewpoint discrimination and selective prosecution.

10:07:48  9      I do note that I submitted an affidavit.  There was

10:07:52 10      no contrary affidavit.  It was not -- anything that I

10:07:57 11      said rebutted, consequently it's admitted.  But there

10:08:00 12      are other factual issues that I want to bring in front

10:08:03 13      of the Court.  The pattern and practice of

10:08:06 14      discriminatory viewpoint discrimination against

10:08:08 15      conservative and Republican activist lawyers such as

10:08:13 16      myself, and of course, those issues in terms of

10:08:16 17      substantial similarity of what's been going on.  So it's

10:08:20 18      absolutely required that I be able to testify and

10:08:22 19      present evidence to this Court.

10:08:25 20      The briefs are very thorough, and I wanted to point

10:08:29 21      out, because Your Honor didn't pick up on it the first

10:08:34 22      time, is that attached to the preliminary injunction

10:08:36 23      motion is also our motion -- excuse me, our opposition

10:08:41 24      to the motion to dismiss in this case.  And that lays

10:08:44 25      out specifically a lot of the legal arguments, and it's

10:08:50  1    incorporated into the preliminary injunction motion by

10:08:52  2    reference.  And I'm going to make reference to some of

10:08:54  3    them today.

10:08:55  4        The issues in this case are very, very important

10:08:58  5    because this Court in particular and others throughout

10:09:03  6    the country have been enforcing the First and Fifth

10:09:09  7    Amendment with regard to discriminatory viewpoint

10:09:12  8    discrimination.

10:09:12  9        The *Douglass* case, of course, is a good example,

10:09:15  10   and I'm sure Your Honor is familiar with that, but also

10:09:18  11   we have recent cases that came down by Judge McFadden,

10:09:24  12   Judge Bates, and others with regards to viewpoint

10:09:27  13   discrimination as allegedly practiced by President Trump

10:09:30  14   and his administration.  And in those cases, actions

10:09:33  15   were enjoined as a result.

10:09:38  16       So the case law cuts both ways.  And although

10:09:41  17   *Douglass* deals with Black Lives Matter and a Black Lives

10:09:46  18   Matter pro-life group, it equally applies to

10:09:47  19   conservatives and Republican activist lawyers under our

10:09:50  20   Constitution.  So it's extremely important that we go

10:09:52  21   through these various issues with the Court.

10:09:54  22       I might also add, in *Douglass*, there was a motion

10:09:57  23   to dismiss that had been filed by the government at the

10:10:06  24   time and it was denied ultimately.  It was granted by

10:10:10  25   Judge Boasberg, but it went up to the D.C. Circuit.  And

10:10:15  1    there's a very strong opinion in *Douglass* that reversed

10:10:18  2    that, and it came back.  And that case is currently in

10:10:22  3    discovery.

10:10:22  4        In terms of the motion to dismiss which is in front

10:10:24  5    of you, Your Honor, it's 12(b)(6).  And it's not a high

10:10:30  6    standard to get over a 12(b)(6); there just has to be

10:10:33  7    some plausibility under the *Twombly* case and its progeny

10:10:38  8    and to what's being alleged here.  So this case is going

10:10:42  9    to have to go into discovery just like *Douglass*, but

10:10:46  10   today, for purposes of a preliminary injunction, it's

10:10:50  11   important that I be able to testify and go through

10:10:53  12   various factual matters for Your Honor.

10:10:56  13       At the end of this proceeding, under our local

10:11:01  14   rules and the Rules of Civil Procedure, Your Honor has

10:11:04  15   to do findings of fact and conclusions of law.  We had a

10:11:09  16   previous case in front of Your Honor where that didn't

10:11:11  17   occur, and -- respectfully, the D.C. Circuit reversed

10:11:16  18   you on that, found that there were not adequate grounds

10:11:18  19   for you to declare me a vexatious litigant, not being

10:11:23  20   able to pursue my constitutional rights, particularly

10:11:25  21   under the Sixth Amendment.

10:11:27  22       So consequently, I just ask Your Honor,

10:11:30  23   respectfully, to weigh the evidence very carefully, as

10:11:34  24   well as the law, and issue findings of fact and

10:11:37  25   conclusions of law, because that is very important,

10:11:41  1    because this preliminary injunction proceeding,

10:11:42  2    whichever which way it goes, and I'm confident it will

10:11:46  3    go in my behalf, is appealable to the D.C. Circuit.  And

10:11:51  4    of course the D.C. Circuit has set this precedent in the

10:11:54  5    *Douglass* case.

10:11:56  6         So it's important that it have a record of how Your

10:11:59  7    Honor is making the decision, not the cursory proposed

10:12:02  8    order that was given to you by the defendants.

10:12:07  9         This is important, Your Honor, for --

10:12:09  10         THE COURT:  Well, you know, Mr. Klayman, there

10:12:11  11    are some matters I think we have to address before we

10:12:14  12    even get to where you want to go.  And that is, first of

10:12:17  13    all, that D.C. Court of Appeals says it has not been

10:12:22  14    appropriately served, so they're saying I don't have

10:12:24  15    jurisdiction because of that.  And then there's the

10:12:27  16    other issue regarding the fact that this issue, as I

10:12:32  17    understand it, has already been litigated over in

10:12:34  18    Superior Court, went up to the Court of Appeals, and the

10:12:38  19    appeal was denied.

10:12:40  20         And, you know, with the current state of the law,

10:12:43  21    what would be the basis for this Court to, in a sense,

10:12:47  22    act as an appellate court regarding a decision made by

10:12:53  23    the equivalent of a state court system?

10:12:57  24         MR. KLAYMAN:  You're not acting as an appellate

10:12:59  25    court, Your Honor, because as we pointed out in the

10:13:03 1    briefs, under the *Rooker* case and also under the *Younger*

10:13:06 2    case, the remedies which are being sought here, in

10:13:08 3    particular, are different than what were being sought

10:13:11 4    before the Superior Court and before the D.C. Court of

10:13:15 5    Appeals.  We're asking --

10:13:15 6           THE COURT:  The legal issue is the same.

10:13:18 7           MR. KLAYMAN:  -- for damages --

10:13:19 8           THE COURT:  You're asking me to take a position

10:13:21 9    contrary to what's already been ruled over in Superior

10:13:28 10   Court.

10:13:28 11          MR. KLAYMAN:  I'm not, because this is a

10:13:30 12   constitutional issue.  We did not litigate the

10:13:34 13   constitutional issues in front of the Superior Court or

10:13:37 14   the D.C. Court of Appeals.  This is a serious

10:13:43 15   constitutional issue that Your Honor must address.  And,

10:13:46 16   you know, whether you do it or not is another question,

10:13:48 17   but it's going to go up to the D.C. Circuit again --

10:13:50 18          THE COURT:  I'm not afraid of that, sir.  You

10:13:53 19   keep raising that.  I mean, I've been a judge for

10:13:56 20   43 years, and that comes with the territory.

10:13:58 21          MR. KLAYMAN:  Your Honor, I don't think you

10:13:59 22   need to take that personally.  I'm just making arguments

10:14:01 23   here --

10:14:01 24          THE COURT:  I'm not taking it personally.  I'm

10:14:03 25   just saying you don't have to bring up the fact that

10:14:07  1      it's going to go to the Court of Appeals.  I assume

10:14:09  2      every case I rule on is going to go to the Court of

10:14:11  3      Appeals --

10:14:11  4          MR. KLAYMAN:  Well, of course, but here's the

10:14:13  5      problem, Your Honor, is that by making your ruling as

10:14:15  6      you make it, you delay what's going on here.  What in

10:14:17  7      effect happened was that this is a stacking proceeding.

10:14:23  8      As Your Honor is aware, I was challenging a prior

10:14:28  9      disciplinary order, and that was in front of Your Honor,

10:14:30  10     in part.  And in that matter, there was a motion for

10:14:35  11     clarification.  There was a delay of nine months.  It

10:14:40  12     virtually mooted out the entire case.

10:14:42  13         When you were reversed by the D.C. Circuit, it went

10:14:45  14     back to you, and you have sat on that for 11 months,

10:14:47  15     okay.  As the same thing happened again in this context,

10:14:51  16     the D.C. Office of Disciplinary Counsel sent out the

10:14:56  17     Board's recommendation -- it wasn't a final order -- to

10:14:59  18     my other -- courts where I'm a member of those courts

10:15:04  19     and those jurisdictions.  They sent it out in a

10:15:08  20     retaliatory, vindictive way.

10:15:11  21         This has taken up time and expense.  It has created

10:15:14  22     uncertainty with my clients, being able to practice law.

10:15:19  23     So time is of the essence.  It's important that we get

10:15:22  24     to the decisions quickly and to make a reasoned

10:15:25  25     decision.  I mean no disrespect for you, Your Honor.  I

10:15:29  1    do not.  But I have to protect myself.

10:15:31  2        And when I'm talking about stacking, as they waited

10:15:34  3    for the *Sataki* order to come off, to no longer be in

10:15:39  4    effect, and they held back for over four years in

10:15:43  5    issuing a recommendation.  While that case over there in

10:15:48  6    the Superior Court and the Court of Appeals was pending,

10:15:51  7    they didn't have to do that.  They rushed to do that.

10:15:53  8    Because they wanted to institute temporary suspension

10:15:56  9    against me to make sure that I wouldn't have any ability

10:15:58 10    to continue to practice in the District of Columbia, so

10:16:05 11    they stacked it.

10:16:05 12        In a landmark case by the Florida Supreme Court,

10:16:09 13    which is a well-respected bar -- it wins the award every

10:16:11 14    year along with Texas for the way it administers the

10:16:14 15    cases -- *Florida Bar v. Rubin*, they held that that is

10:16:18 16    unethical, illegal, and unfair to a bar -- to a lawyer

10:16:23 17    as a member of the bar.

10:16:25 18        So they're stacking here.  And what they're

10:16:29 19    attempting to do is not only to continue to exclude me

10:16:33 20    in the District of Columbia but to trigger reciprocal

10:16:35 21    proceedings in other courts and jurisdictions where I'm

10:16:38 22    a member of the court and the bar.  That's extremely

10:16:42 23    costly and time-consuming, and it, again, prevents me

10:16:48 24    from practicing law.  Given what the D.C. Bar has done

10:16:52 25    over these years, it takes up -- and I'm going to

```
10:16:55   1      testify to this -- approximately 60 percent of my time

10:16:58   2      and my associate's time -- and I'm a sole practitioner

10:17:03   3      with one associate -- in dealing with these issues to

10:17:08   4      preserve my right to practice law.

10:17:09   5           I have been a member in good standing of the

10:17:11   6      Florida Bar for well over 48 years -- going on 48 years.

10:17:18   7      I was a member in good standing of this bar for many,

10:17:22   8      many years as well, and still am a member of this bar,

10:17:26   9      and I deserve to have my rights fully litigated and

10:17:30  10      respected.

10:17:31  11           And this is why I want to be able to take the

10:17:35  12      witness stand, and I deserve and have the right to take

10:17:38  13      the witness stand to take Your Honor through those facts

10:17:46  14      and law which apply to this case.

10:17:48  15           Now, let me deal with something specifically that

10:17:50  16      you're mentioning.  It's not, again, in all due respect,

10:17:58  17      a way out, to shorten this proceeding.  However, it

10:18:00  18      needs -- it would need to proceed expeditiously by

10:18:04  19      saying the issue was decided in another court.  That

10:18:07  20      issue was dealing with Rule 1.2, which is --

10:18:12  21           THE COURT:  You had the opportunity to raise

10:18:13  22      the issue that you seek to raise here in that proceeding

10:18:17  23      also.

10:18:19  24           MR. KLAYMAN:  Well, I raised it here because

10:18:21  25      this Court is under the jurisdiction of the D.C.
```

| | | |
|---|---|---|
| 10:18:23 | 1 | Circuit. |
| 10:18:23 | 2 | THE COURT:  Yeah, but you could have raised it |
| 10:18:25 | 3 | over there. |
| 10:18:26 | 4 | MR. KLAYMAN:  The fact that I could have done |
| 10:18:27 | 5 | something -- |
| 10:18:28 | 6 | THE COURT:  It seems to me you can't piecemeal |
| 10:18:30 | 7 | your litigation by only raising certain issues before a |
| 10:18:34 | 8 | state court and then -- when you had the ability to |
| 10:18:36 | 9 | raise those issues in that court also, and then come |
| 10:18:40 | 10 | over here after you don't prevail in state court and |
| 10:18:43 | 11 | then raise an issue that you could have raised over |
| 10:18:46 | 12 | there. |
| 10:18:46 | 13 | MR. KLAYMAN:  No, that's not accurate, Your |
| 10:18:48 | 14 | Honor.  I have the right to be in front of this Court. |
| 10:18:50 | 15 | I have an absolute right to be in front of this Court. |
| 10:18:53 | 16 | And I did it timely.  And -- let me give you the |
| 10:18:55 | 17 | timeline for that. |
| 10:18:57 | 18 | This Court is under the jurisdiction of D.C. |
| 10:18:59 | 19 | Circuit.  Over there, they're dealing with a court |
| 10:19:03 | 20 | system which is inherently compromised because you're |
| 10:19:07 | 21 | asking the D.C. Court of Appeals to rule on its own |
| 10:19:10 | 22 | conduct, which has already refused to stay this action |
| 10:19:15 | 23 | pending the other case in state court.  They would not |
| 10:19:19 | 24 | stay it.  And they wouldn't stay it with regard to this |
| 10:19:21 | 25 | case either.  I asked them to stay it.  They wouldn't. |

| | | |
|---|---|---|
| 10:19:25 | 1 | They predetermined their decision.  They don't |
| 10:19:27 | 2 | believe that their rules need to be enforced.  Their |
| 10:19:34 | 3 | rules are enforced depending on who the litigant is in |
| 10:19:38 | 4 | front of them.  We're talking about almost half a |
| 10:19:41 | 5 | decade.  And the prejudice to me constitutionally is |
| 10:19:45 | 6 | that I have now been subjected to this proceeding when |
| 10:19:50 | 7 | in fact the statute is clear. |
| 10:19:54 | 8 | The statute is clear because it states the Hearing |
| 10:19:58 | 9 | Committee's report should be filed with the Board not |
| 10:20:00 | 10 | later than 120 days following the conclusion of this |
| 10:20:04 | 11 | hearing. |
| 10:20:05 | 12 | "Shall," not "may."  Shall, not may. |
| 10:20:08 | 13 | And we cite a number of cases in our briefs, and I |
| 10:20:11 | 14 | hope Your Honor has an opportunity to look -- |
| 10:20:14 | 15 | THE COURT:  I have looked at it.  The Court of |
| 10:20:17 | 16 | Appeals said that -- contrary to your position, that |
| 10:20:18 | 17 | that is not a mandatory requirement.  That's what |
| 10:20:21 | 18 | they -- |
| 10:20:23 | 19 | MR. KLAYMAN:  They said that in other cases. |
| 10:20:25 | 20 | First of all, the first case -- |
| 10:20:25 | 21 | THE COURT:  Those other cases are still |
| 10:20:27 | 22 | controlling. |
| 10:20:27 | 23 | MR. KLAYMAN:  They're not controlling at all. |
| 10:20:29 | 24 | Let me tell you why.  *Morrell*, which was only a |
| 10:20:33 | 25 | four-month delay, occurred with a rule that was |

10:20:35  1    promulgated by the Board itself.

10:20:39  2         Then, the Court of Appeals, to allow for more time,

10:20:44  3    changed the rule and promulgated itself and made it

10:20:47  4    120 days.  Didn't say "may."  It said "shall."  Under

10:20:52  5    the rules of statutory construction, and we cite a lot

10:20:54  6    of cases, that governs when the language is clear.

10:20:58  7    There was no ambiguity to that.

10:21:00  8         And that's also true of the other cases.  They were

10:21:03  9    all under the old rule, not the new rule of the D.C.

10:21:07  10   Court of Appeals.

10:21:08  11        You're not telling me, Your Honor, that the D.C.

10:21:10  12   Court of Appeals doesn't have to enforce its own rules.

10:21:13  13   And the fact that it won't --

10:21:15  14             THE COURT:  I'm not saying that, but what I'm

10:21:17  15   saying is that I don't see how I, as a federal judge,

10:21:21  16   have authority to usurp the authority of the local court

10:21:30  17   system to control the practice of law in the District of

10:21:36  18   Columbia.

10:21:36  19             MR. KLAYMAN:  You're not controlling -- you're

10:21:40  20   not --

10:21:40  21             THE COURT:  I mean, I don't know of any

10:21:42  22   situation where a federal court has basically taken over

10:21:47  23   and -- the responsibility of policing lawyers who

10:21:52  24   practice and who are authorized to practice in a

10:21:57  25   particular jurisdiction.

| | | |
|---|---|---|
| 10:21:58 | 1 | MR. KLAYMAN:  When there's a constitutional |
| 10:22:00 | 2 | violation involved -- |
| 10:22:00 | 3 | THE COURT:  But you had the opportunity -- |
| | 4 | MR. KLAYMAN:  -- the *Rooker* -- |
| 10:22:01 | 5 | THE COURT:  -- to raise that constitutional |
| 10:22:04 | 6 | violation over there.  And a state court is just as |
| 10:22:08 | 7 | classified to address constitutional issues as are |
| 10:22:10 | 8 | appellate -- |
| 10:22:12 | 9 | MR. KLAYMAN:  And I have the right to |
| 10:22:14 | 10 | exhaust -- I have the right to exhaust my remedies over |
| 10:22:16 | 11 | there, but this Court is -- the D.C. Court of Appeals is |
| 10:22:20 | 12 | conflicted in this case because -- and it's evidenced by |
| 10:22:22 | 13 | the fact that they wouldn't even grant a stay while |
| 10:22:26 | 14 | litigation over in the state court was pending. |
| 10:22:29 | 15 | Why not?  What was the harm to the Court, Your |
| 10:22:32 | 16 | Honor?  There was no harm in that. |
| 10:22:34 | 17 | Here's the hard fact, Your Honor, and I'll just be |
| 10:22:37 | 18 | blunt, okay?  The District of Columbia -- and you can |
| 10:22:40 | 19 | look at the composition of the Board on Professional |
| 10:22:45 | 20 | Responsibility.  You can look at the composition of the |
| 10:22:48 | 21 | Court.  They are all of a political and ideological |
| 10:22:51 | 22 | bent, which is 180 degrees from mine and many other |
| 10:22:55 | 23 | lawyers that have been subject to disciplinary |
| 10:22:57 | 24 | proceedings. |
| 10:22:57 | 25 | And I'm going to present evidence to that effect. |

10:23:00   1          I'm talking about Kellyanne Conway.  I'm talking

10:23:02   2      about former Attorney General Bill Barr.  I'm talking

10:23:06   3      about former Deputy Attorney General and Mayor of New

10:23:12   4      York City, Rudy Giuliani, who has been disbarred.  I'm

10:23:13   5      talking about Jeffrey Clark.  I'm talking about Senators

10:23:17   6      Josh Hawley and Ted Cruz.

10:23:20   7          This system here, to be direct, has been

10:23:24   8      weaponized, which is exactly why now there's a new

10:23:26   9      division created at the Department of Justice to look

10:23:29   10      into that, which will be headed by Ed Martin in that

10:23:34   11      regard.  And he, himself, has been retaliated against

10:23:39   12      with two bar complaints by this disciplinary counsel.

10:23:44   13          Let me also be direct.  This used to be a fair

10:23:46   14      disciplinary counsel when it was under Wallace "Gene"

10:23:51   15      Shipp.  Everything changed when Hamilton Fox became the

10:23:55   16      Bar counsel; highly partisan.  There is not one person

10:23:59   17      in the D.C. Bar disciplinary apparatus -- not that they

10:24:04   18      have to -- has given one cent to a Republican candidate

10:24:10   19      yet.

10:24:11   20          Most of them had given -- in fact, all of them have

10:24:13   21      given -- nearly all of them have given to Democrat

10:24:17   22      candidates, including people that I have sued in my

10:24:20   23      public interest capacity, including President Clinton,

10:24:23   24      President Obama, and President Biden.

10:24:26   25          This is a weaponized system, Your Honor.  And when

10:24:30  1    that happens and when there's selective prosecution and

10:24:34  2    viewpoint discrimination, I have a right to come to a

10:24:37  3    federal court.  A federal court is in control in

10:24:41  4    determining what the Constitution requires, particularly

10:24:44  5    when it's under and you are under, Your Honor, the arm

10:24:46  6    of the D.C. Circuit, which has made it clear in *Douglass*

10:24:49  7    that this is not tolerated.

10:24:51  8        So while I was timely in coming to this Court

10:24:53  9    because I tried to exhaust remedies at the lower court,

10:24:56  10   but that wasn't possible, I couldn't even get a stay, I

10:24:59  11   have a right to be here now.  And there's about ready to

10:25:03  12   be damage -- significant damage done to me.

10:25:06  13       I have shown a likelihood of success with regard to

10:25:12  14   Rule 1.2, going over by half a decade, causing prejudice

10:25:21  15   to me, which is not just the stacking, but what's going

10:25:25  16   to happen in terms of cascading effect and what has

10:25:28  17   happened to damage my law practice, my colleagues, and

10:25:30  18   my family, is significant irreparable injury.  But even

10:25:35  19   more important than that, you have *United States v.*

10:25:37  20   *Mills* [sic], which says when there's an abridgement of

10:25:41  21   constitutional rights for even one minute, that is

10:25:43  22   irreparable harm per se, in and of itself.  So I've

10:25:47  23   demonstrated that.

10:25:49  24       Public interest, there's a public interest here

10:25:50  25   because members of this Bar, of which I remain a proud

| | | |
|---|---|---|
| 10:25:55 | 1 | member, notwithstanding my views about disciplinary |
| 10:25:59 | 2 | counsel and the way they have behaved is -- public |
| 10:26:04 | 3 | interest is ripe for Bar members to feel that the rules |
| 10:26:08 | 4 | promulgated by the Court of Appeals have meaning, that |
| 10:26:12 | 5 | they just can't be changed depending on who you are. |
| 10:26:15 | 6 | They have a right to rely on them. |
| 10:26:17 | 7 | There's no harm to the Bar in terms of granting the |
| 10:26:20 | 8 | preliminary injunction allowing this matter to be fully |
| 10:26:23 | 9 | litigated, but there's significant harm to me, not just |
| 10:26:26 | 10 | under *Mills* but actual harm. |
| 10:26:29 | 11 | And they rest on the *Rooker-Feldman* doctrine, which |
| 10:26:33 | 12 | is a very, very limited doctrine and does not preclude |
| 10:26:37 | 13 | an action by a federal court to enjoin a state court if |
| 10:26:42 | 14 | it's violating a federal court order. |
| 10:26:44 | 15 | And here's the bottom line: *Douglass* is a federal |
| 10:26:47 | 16 | court order. *Douglass* comes from the D.C. Circuit. You |
| 10:26:52 | 17 | have a duty to enforce what the D.C. Circuit has said |
| 10:26:57 | 18 | and has ruled. And that duty cannot be shirked. That |
| 10:27:03 | 19 | duty has to be addressed. |
| 10:27:04 | 20 | So that is a very, very important aspect of what's |
| 10:27:08 | 21 | going on. And I would ask -- it's not just me -- yes, |
| 10:27:15 | 22 | I've submitted an affidavit. I want to testify. I want |
| 10:27:18 | 23 | to put forth on the record the facts as to why there's |
| 10:27:22 | 24 | viewpoint discrimination here, but I would also ask for |
| 10:27:24 | 25 | leave to submit an affidavit from Professor Alan |

| | | |
|---|---|---|
| 08:40:48 | 1 | Dershowitz, who is a constitutional scholar, as Your |
| 10:27:31 | 2 | Honor knows.  He's not of the same ideological bent as |
| 10:27:33 | 3 | me, but he has a high degree of integrity and honesty, |
| 10:27:37 | 4 | so I would ask to be able to submit that affidavit as |
| 10:27:39 | 5 | well. |
| 10:27:39 | 6 | I had hoped that he could be here today, but he |
| 10:27:42 | 7 | could not for various reasons.  But that's what I'm |
| 10:27:47 | 8 | seeking to do, Your Honor. |
| 10:27:48 | 9 | What happened to me and is happening to me is |
| 10:27:51 | 10 | substantially similar to what happened to others in |
| 10:27:56 | 11 | front of this Court who are not in my ideological and |
| 10:28:00 | 12 | political bent.  Let me give you three examples.  It's |
| 10:28:03 | 13 | in the pleadings. |
| 10:28:05 | 14 | Number one, Kevin Clinesmith.  Kevin Clinesmith, |
| 10:28:09 | 15 | who just happened to be represented cleverly by the |
| 10:28:12 | 16 | former member of the board, Board on Professional |
| 10:28:17 | 17 | Responsibility, was able to not even be sanctioned to |
| 10:28:24 | 18 | any great degree -- time served, seven months.  Having |
| 10:28:27 | 19 | been convicted of a felony, of lying in an affidavit |
| 10:28:31 | 20 | which triggered the Russian collusion investigation in |
| 10:28:34 | 21 | large part, he gets off with a slap of a wrist. |
| 10:28:39 | 22 | No reinstatement provision.  Seven months.  Time |
| 10:28:42 | 23 | served.  He didn't even file an affidavit.  They gave |
| 10:28:45 | 24 | him the right to be -- not to be temporarily suspended. |
| 10:28:49 | 25 | That's a fact. |

10:28:50  1       Then we have the situation with Marc Elias.  Marc

10:28:56  2    Elias, who is found by Special Counsel Durham to have

10:29:03  3    participated in a money laundering scheme to money

10:29:08  4    launder to Christopher Steele, which also -- on behalf

10:29:10  5    of Hillary Clinton, and then lying about it.  He lied

10:29:14  6    about it.

10:29:15  7       The D.C. Bar doesn't take that up at all.  It was

10:29:18  8    all over the news.  But that's fine because he's a

10:29:21  9    Democrat and a leftist.  It's okay for them.  They can

10:29:24  10   do whatever they want.  No consequence.

10:29:26  11       Then you have the situation of David Kendall, who

10:29:33  12   admittedly helped Hillary Clinton destroy 33,000 emails

10:29:39  13   on her private server.

10:29:40  14       A lawyer, Ty Clevinger, files a complaint, a public

10:29:45  15   advocate, and that's thrown in the trash, literally.  No

10:29:48  16   action at all.  Kendall happens to represent the

10:29:51  17   Clintons and Democrats and leftist clients.

10:29:55  18       So there is a huge dichotomy here, Your Honor, in

10:29:58  19   the way the law is enforced, and Your Honor has to

10:30:02  20   address it.  And you can't just say, okay, it was in

10:30:05  21   front of another court because Your Honor has a duty to

10:30:09  22   seriously review this matter here.

10:30:13  23       THE COURT:  Okay.  I think I understand your

10:30:14  24   position.  Let me --

10:30:14  25       MR. KLAYMAN:  I would like to take the witness

```
10:30:16   1    stand.

10:30:16   2              THE COURT:  Let me hear from the defendants.

10:30:22   3              MR. KLAYMAN:  By the way, let me give you

10:30:24   4    this --

10:30:24   5              THE COURT:  First I'll hear from counsel for --

10:30:28   6              MR. KLAYMAN:  They were served, and I'll

10:30:30   7    present that as evidence.

10:30:31   8              THE COURT:  -- counsel for the Court of Appeals

10:30:32   9    who says that --

10:30:34   10             MR. KLAYMAN:  And that was the --

10:30:35   11             THE COURT:  Counsel, I'm talking, please.  I

10:30:37   12   gave you the respect of listening to you.  When I start

10:30:40   13   talking, please.

10:30:41   14        I'll hear from counsel for the Court of Appeals who

10:30:45   15   says that the Court was not appropriately served with

10:30:48   16   process.

10:30:49   17             MS. KRUPKE:  Good morning, Your Honor.

10:30:54   18        Plaintiff Klayman has filed an affidavit of service

10:30:58   19   stating that an A. Jefferson was served on May 15, 2025.

10:31:05   20   It's my understanding that the attempted service in this

10:31:09   21   case was brought to the public office of the D.C. Court

10:31:13   22   of Appeals.

10:31:13   23             THE COURT:  Who is that person?

10:31:16   24             MS. KRUPKE:  A. Jefferson.  I don't actually

10:31:18   25   know this person's first name, but it's my understanding
```

| | | |
|---|---|---|
| 10:31:20 | 1 | they work in the public office of the District of |
| 10:31:24 | 2 | Columbia Court of Appeals.  And that this person is not |
| 10:31:26 | 3 | authorized to accept service, that the Office of -- |
| 10:31:28 | 4 | THE COURT:  Who is authorized to accept service |
| 10:31:30 | 5 | on behalf of the Court? |
| 10:31:32 | 6 | MS. KRUPKE:  The Office of General Counsel at |
| 10:31:33 | 7 | the Court. |
| 10:31:35 | 8 | THE COURT:  And is there something in writing |
| 10:31:37 | 9 | to that effect? |
| 10:31:39 | 10 | MS. KRUPKE:  Not that I have in front of me. |
| 10:31:42 | 11 | I've -- that's my understanding -- |
| 10:31:43 | 12 | THE COURT:  How would I know that that's the |
| 10:31:45 | 13 | appropriate -- that that's the person who has to be |
| 10:31:48 | 14 | served? |
| 10:31:49 | 15 | MS. KRUPKE:  I don't have anything to submit, |
| 10:31:51 | 16 | Your Honor, on that regard. |
| 10:31:55 | 17 | THE COURT:  Then I don't know how I can rule in |
| 10:31:57 | 18 | your favor, then.  I mean, if it was given to somebody |
| 10:31:59 | 19 | at the Court and you can't tell me that there's somebody |
| 10:32:02 | 20 | else who it should have been given to because they're |
| 10:32:04 | 21 | the person who appropriately has to be served, I don't |
| 10:32:08 | 22 | see how I conclude that there was an appropriate |
| 10:32:11 | 23 | service. |
| 10:32:11 | 24 | MS. KRUPKE:  Well, here, Your Honor, it's not |
| 10:32:13 | 25 | even an entire time.  As Your Honor has just stated, |

| | | |
|---|---|---|
| 10:32:15 | 1 | it's just A. Jefferson, and so I'm at this hour trying |
| 10:32:19 | 2 | to determine who A. Jefferson is and -- |
| 10:32:21 | 3 | THE COURT:  I thought you said somebody by that |
| 10:32:24 | 4 | name does work somewhere in the Court of Appeals. |
| 10:32:27 | 5 | MS. KRUPKE:  I have been in contact with the |
| 10:32:29 | 6 | Court of Appeals, and there does appear to be someone |
| 10:32:32 | 7 | who has that initial and last name who works at the |
| 10:32:35 | 8 | Court of Appeals but that that person -- that the actual |
| 10:32:39 | 9 | document was received by the public office rather than |
| 10:32:43 | 10 | the general counsel. |
| 10:32:45 | 11 | THE COURT:  Yeah, but you're not showing me |
| 10:32:47 | 12 | anything that says it has to be the general counsel who |
| 10:32:50 | 13 | has to be served in order for the Court to be |
| 10:32:52 | 14 | appropriately served. |
| 10:32:54 | 15 | MS. KRUPKE:  No, Your Honor, I don't at this |
| 10:32:56 | 16 | time.  When we filed the opposition, this affidavit of |
| 10:32:59 | 17 | service had not been on the record, and so we didn't |
| 10:33:01 | 18 | have the opportunity to explore and -- then it was filed |
| 10:33:03 | 19 | after the close of business on Friday. |
| 10:33:05 | 20 | So this morning we've been trying to explore this |
| 10:33:07 | 21 | affidavit of service, but given that it was just filed |
| 10:33:11 | 22 | on a holiday weekend, we were not able to do so before |
| 10:33:15 | 23 | coming before Your Honor other than to confirm, as best |
| 10:33:19 | 24 | I could, that this person appears to work in the public |
| 10:33:22 | 25 | office. |

```
10:33:23   1              I do also want to note, Your Honor --

10:33:25   2              THE COURT:  There's some discrepancy as to when

10:33:28   3    the Court of Appeals is going to hear Mr. Klayman's

10:33:32   4    case, whether it's the 28th or the 29th.

10:33:35   5         Which day is it?

10:33:37   6              MS. KRUPKE:  I believe it was the 28th, but --

10:33:40   7              THE COURT:  Mr. Klayman, which --

10:33:41   8              MR. KLAYMAN:  The 29th, Your Honor.  Initially,

10:33:43   9    it was the 28th.

           10              THE COURT:  Okay.

10:33:44  11              MR. KLAYMAN:  And they changed it to the 29th.

10:33:46  12              MS. KRUPKE:  I do also want to note, Your

10:33:48  13    Honor, that the Court of Appeals is non sui juris, so at

10:33:51  14    this point even if service was effective, that has been

10:33:54  15    brought against a party that is not able to be served.

10:33:57  16              THE COURT:  So it should have been the City.

10:34:00  17              MS. KRUPKE:  The District of Columbia --

10:34:01  18              THE COURT:  Right.

10:34:04  19              MS. KRUPKE:  -- should not be substituted here.

10:34:07  20    That is our position.  But that would be the

10:34:08  21    appropriate -- at least an appropriate party to sue.

10:34:11  22         The District of Columbia Court of Appeals just

10:34:14  23    cannot be sued in its individual capacity as a

10:34:17  24    corporation.

10:34:19  25              THE COURT:  But if the Court of Appeals
```

| | | |
|---|---|---|
| 10:34:21 | 1 | theoretically was found liable for damages, for example, |
| 10:34:25 | 2 | would it be the city that would pay those damages? |
| 10:34:28 | 3 | MS. KRUPKE:  So the Court of Appeals typically |
| 10:34:32 | 4 | would be dismissed as a party if there was proper |
| 10:34:35 | 5 | service.  And the District of Columbia is an appropriate |
| 10:34:39 | 6 | entity to sue here, but in order to do that, to make out |
| 10:34:43 | 7 | a Section 1983 violation, the plaintiff would have to |
| 10:34:46 | 8 | make a Monell claim for liability because, of course, |
| 10:34:49 | 9 | the District of Columbia cannot just generally be sued |
| 10:34:53 | 10 | for its actions. |
| 10:34:57 | 11 | THE COURT:  Okay. |
| 10:34:58 | 12 | MR. KLAYMAN:  May I address that briefly, Your |
| 10:35:00 | 13 | Honor? |
| 10:35:00 | 14 | THE COURT:  One moment.  Let me -- is that your |
| 10:35:02 | 15 | argument?  You're finished, on the issue of service? |
| 10:35:05 | 16 | MS. KRUPKE:  On the issue of service, yes. |
| 10:35:08 | 17 | THE COURT:  Yes. |
| 10:35:09 | 18 | MR. KLAYMAN:  If I may.  I made several |
| 10:35:14 | 19 | attempts prior to that to get the Court to accept |
| 10:35:17 | 20 | service of process.  In any event -- and I'm going to |
| 10:35:23 | 21 | ask that this be admitted as Exhibit 1. |
| 10:35:26 | 22 | May I approach the bench and give it to you, or |
| 10:35:29 | 23 | give it to your assistant? |
| | 24 | (Document tendered) |
| 10:35:39 | 25 | MR. KLAYMAN:  Attached is an affidavit of |

10:35:40  1    service and emails showing attempted service amicably by

10:35:44  2    accepting service, which the Court wouldn't do -- or

10:35:47  3    couldn't do, or whatever their excuse was at the time.

10:35:50  4        And it's hard to understand that a Court would not

10:35:52  5    accept responsibility to accept service of process.  But

10:35:56  6    in any event, Michael Weaver, the private process

10:36:02  7    server, his affidavit, states that:

10:36:04  8        "Being duly sworn, deposed, and say that I have

10:36:06  9    been duly authorized to make service of the summons,

10:36:09  10   notice, consent, and reference of the civil action to a

10:36:12  11   magistrate judge, notice of right to consent to trial

10:36:15  12   before a United States magistrate judge.  And also

10:36:18  13   importantly, plaintiff's motion for preliminary

10:36:21  14   injunction and exhibits and complaint and exhibits in

10:36:23  15   the above-entitled case, that I am over 18 years of age,

10:36:27  16   and not a party or otherwise interested in this action;

10:36:30  17       "That on May 15th, 2025 -- that's a week ago -- I

10:36:35  18   served District of Columbia Court of Appeals at 430 E

10:36:39  19   Street Northwest, Washington, D.C., with a summons,

10:36:41  20   notice, consent in reference of a civil action to a

10:36:45  21   magistrate judge, notice of right to consent to trial

10:36:48  22   before a United States magistrate judge, and

10:36:51  23   importantly, plaintiff's motion for preliminary

10:36:53  24   injunction with exhibits and complaint by serving A.

10:36:57  25   Jefferson, Clerk -- Clerk -- authorized to accept

```
10:37:00   1    service" --
10:37:01   2         THE COURT:  Counsel for the government wasn't
10:37:03   3    able to tell me what authority says who has to be served
10:37:08   4    in order for the Court of Appeals to be appropriately
10:37:12   5    served.
10:37:12   6         Do you know something in the law that says where
10:37:16   7    service has to be effected in order to appropriately --
10:37:19   8         MR. KLAYMAN:  Not with regard to the Court, no.
10:37:21   9    And, again, this says that the Clerk of the Court -- she
10:37:26  10    obviously had to get permission to accept service -- was
10:37:29  11    authorized to accept service; the Clerk of the Court.
10:37:29  12         That can't -- you can't get better than that.
10:37:31  13         THE COURT:  Was the Clerk served?
10:37:33  14         MR. KLAYMAN:  Yes, that's what it says.
10:37:35  15         "A. Jefferson, Clerk, authorized to accept
10:37:40  16    service."
10:37:40  17         You can't get more direct than that, Your Honor.
10:37:46  18         Right at the bottom.  And then he describes the
10:37:50  19    physical appearance of Ms. Jefferson, "signed under
10:37:55  20    penalty of perjury."
10:38:15  21         THE COURT:  I'm sorry, but I'm missing where
10:38:18  22    you're saying somebody in the Clerk's Office was served.
10:38:21  23         MR. KLAYMAN:  Yeah, look at the fourth -- where
10:38:23  24    it says Michael Weaver up top:  "I, Michael Weaver,"
10:38:27  25    second paragraph.  Third paragraph, "I'm over the age of
```

| | | |
|---|---|---|
| 10:38:30 | 1 | 18."  And, Your Honor, please read the third paragraph |
| 10:38:32 | 2 | there, that "on May 15th, 2025." |
| 10:38:40 | 3 | THE COURT:  Michael Weaver is the process |
| 10:38:43 | 4 | server. |
| 10:38:45 | 5 | MR. KLAYMAN:  Correct. |
| 10:38:45 | 6 | THE COURT:  I'm asking about who in the Clerk's |
| 10:38:49 | 7 | Office, if you're saying it was somebody in the Clerk's |
| | 8 | Office -- |
| | 9 | MR. KLAYMAN:  Yes. |
| 10:38:51 | 10 | THE COURT:  -- was served. |
| 10:38:52 | 11 | MR. KLAYMAN:  Yes, in the third paragraph. |
| 10:38:53 | 12 | The Clerk -- "A. Jefferson, Clerk, was authorized |
| 10:38:56 | 13 | to accept service."  That says that in the next |
| 10:38:59 | 14 | paragraph.  I'll read it again. |
| 10:39:00 | 15 | "That on May 15th, 2025, at 2:59 p.m., I served the |
| 10:39:06 | 16 | District of Columbia Court of Appeals at 430 E Street |
| 10:39:10 | 17 | Northwest, Washington, D.C., 20001, with a summons, |
| 10:39:14 | 18 | notice, consent in reference of the civil action to -- |
| 10:39:17 | 19 | THE COURT:  How do I know that this A. |
| 10:39:19 | 20 | Jefferson was in fact authorized to accept service on |
| 10:39:23 | 21 | behalf of the Court? |
| 10:39:25 | 22 | MR. KLAYMAN:  Because she told the process |
| 10:39:27 | 23 | server to that effect, and he's saying he went to the |
| 10:39:30 | 24 | Court and he served it upon her, and she told him that |
| 10:39:33 | 25 | she was authorized to accept service. |

| | | |
|---|---|---|
| 10:39:36 | 1 | THE COURT:  Where does it say that? |
| 10:39:38 | 2 | MR. KLAYMAN:  At the bottom. |
| 10:39:41 | 3 | It says served with all these things, including the |
| 10:39:44 | 4 | preliminary injunction motion by serving -- last line of |
| 10:39:47 | 5 | that paragraph -- "A. Jefferson, Clerk, authorized to |
| 10:39:50 | 6 | accept service." |
| 10:39:57 | 7 | THE COURT:  How do I know that she was |
| 10:39:58 | 8 | authorized to accept service? |
| 10:40:01 | 9 | MR. KLAYMAN:  Because she told the process |
| 10:40:03 | 10 | server that. |
| 10:40:03 | 11 | THE COURT:  This doesn't say that. |
| 10:40:05 | 12 | MR. KLAYMAN:  Yes, it does. |
| 10:40:10 | 13 | THE COURT:  It says -- it doesn't say that she |
| 10:40:14 | 14 | was authorized to accept. |
| 10:40:15 | 15 | MR. KLAYMAN:  Your Honor, we can play semantics |
| 10:40:17 | 16 | here but the fact is -- |
| 10:40:19 | 17 | THE COURT:  I'm not trying to play semantics, |
| 10:40:21 | 18 | sir.  I'm just saying there's nothing here that says |
| 10:40:24 | 19 | that she said that she was authorized to accept service |
| 10:40:27 | 20 | on behalf of the Court.  That doesn't say that here. |
| 10:40:30 | 21 | MR. KLAYMAN:  What it says is -- well, process |
| 10:40:32 | 22 | servers in the ordinary course ask if you're able to |
| 10:40:36 | 23 | accept service.  He went there -- |
| 10:40:37 | 24 | THE COURT:  That doesn't say that. |
| 10:40:38 | 25 | MR. KLAYMAN:  And he didn't -- |

10:40:40  1                    THE COURT:  That does not say that here.

10:40:42  2       You're asking me to read something into the document

10:40:45  3       that's not here.

10:40:46  4                    MR. KLAYMAN:  Well, two reasons why, Your

10:40:48  5       Honor.  With or without acceptance of service, the Court

10:40:50  6       was served.  And that's clear right here, that he went

10:40:52  7       to the courthouse and went to the Clerk's Office --

10:40:54  8                    THE COURT:  He just can't serve anybody.  You

10:40:55  9       couldn't go there, for example, and serve a janitor and

10:40:58  10      say that the Court was appropriately served.

10:41:00  11           I have no idea who this person --

10:41:02  12                   MR. KLAYMAN:  One way or the other, whether

10:41:04  13      authorization or not -- and I would disagree with you on

10:41:06  14      that -- the Clerk was served.  There's the name of the

10:41:08  15      person, she was given the complaint, and importantly,

10:41:10  16      she was given the preliminary injunction motion.  The

10:41:12  17      Clerk was given the preliminary injunction motion

10:41:15  18      because -- and they had notice of it.  And that's all

10:41:19  19      that's required at this stage is notice, to be here and

10:41:22  20      to argue.

10:41:23  21           But let me also point out in terms of the relief.

10:41:25  22      The relief is requesting you, in addition to enjoining

10:41:29  23      the Court, which you have the authority to do, by the

10:41:31  24      way, if you look at the *Douglass* case --

10:41:34  25                   THE COURT:  That's -- you're going off on a --

10:41:36  1    I've already heard this.  I'm only asking about --

10:41:38  2         MR. KLAYMAN:  We're asking you for --

10:41:39  3         THE COURT:  I'm only asking about whether the

10:41:41  4    Court was appropriately served.  That has nothing to do

10:41:44  5    with service.

10:41:46  6         MR. KLAYMAN:  If I may just add one thing, is

10:41:48  7    that we're asking you to vacate the report and

10:41:50  8    recommendation of the Board and also of the Ad Hoc

10:41:53  9    Hearing Committee because it's unconstitutional.

10:41:56  10         THE COURT:  Counsel, I've heard that.  You can

10:41:57  11    be seated.

10:41:58  12         MR. KLAYMAN:  I wanted to get it on the record,

10:42:00  13    Your Honor.  You know, we can --

10:42:01  14         THE COURT:  I don't know who this person is.

10:42:03  15    The government doesn't seem to know who this person is.

10:42:05  16    So I don't know how I can make a determination that

10:42:08  17    there was appropriate service.

10:42:09  18      The government can't even tell me who can accept

10:42:15  19    service.

10:42:16  20         MR. KLAYMAN:  What I would suggest, Your Honor,

10:42:18  21    as a matter of due process and equity, is that we allow

10:42:21  22    the matter to proceed with the Court right now and Your

10:42:23  23    Honor can order that this issue be clarified to your --

10:42:27  24         THE COURT:  Well, we've got some time.  I

10:42:31  25    mean -- so we could do this later today, but I think I

10:42:34　1　　　need to know, because I don't have anything before me.

10:42:37　2　　　I don't know who has to be appropriately served in order

10:42:41　3　　　for there to be appropriate service.  And clearly, there

10:42:43　4　　　has to be someone authorized to receive service who

10:42:45　5　　　received it in order for me to have jurisdiction.

10:42:48　6　　　　　So --

10:42:49　7　　　　　MR. KLAYMAN:  We made an attempt before that to

10:42:51　8　　　do that and they just bobbed and weaved and wouldn't

10:42:55　9　　　accept earlier --

10:42:56　10　　　　　THE COURT:  I understand.

10:42:57　11　　　　　MR. KLAYMAN:  -- so I had to send the process

10:42:59　12　　　server.

10:42:59　13　　　　　THE COURT:  I understand, but I'm going to be

10:43:01　14　　　instructing counsel to find out who it is who has to be

10:43:03　15　　　appropriately served.  I don't know.

10:43:07　16　　　　　MR. KLAYMAN:  I think you have to instruct them

10:43:09　17　　　as well as to whether Ms. Jefferson told the process

10:43:14　18　　　server that she was authorized to accept.

10:43:16　19　　　　　THE COURT:  Well, merely because she says that

10:43:17　20　　　doesn't make it so.

10:43:19　21　　　　　MR. KLAYMAN:  She's not going to do that

10:43:20　22　　　without getting authorization.  She's the Clerk.

10:43:23　23　　　　　THE COURT:  I don't know if that's -- I don't

10:43:24　24　　　know if she's the Clerk or not.

10:43:26　25　　　　　Is she the Clerk?

10:43:28  1                MR. KLAYMAN:  That's what it says.

10:43:29  2                THE COURT:  Well, the government -- I mean,

10:43:30  3     counsel for the -- did you check and see whether this A.

10:43:33  4     Jefferson is the Clerk for the Court of Appeals?

10:43:36  5                MS. KRUPKE:  Your Honor, I --

10:43:39  6                THE COURT:  Come up.  You have to talk from the

10:43:42  7     podium.

10:43:43  8                MS. KRUPKE:  Your Honor, I've made inquiries,

10:43:46  9     and I apologize.  That's why I've been checking my phone

10:43:49  10    so much to see if I've received a response yet as to who

10:43:53  11    A. Jefferson is and if that person would have been

10:43:55  12    authorized to accept service, notwithstanding my prior

10:43:58  13    understanding that the Office of General Counsel is the

10:43:59  14    appropriate entity to serve in order to have service

10:44:02  15    effectuated on the Court of Appeals.

10:44:04  16         And so I --

10:44:05  17                THE COURT:  Is there a general counsel?  Again,

10:44:07  18    I don't know what the structure is for the Court of

10:44:11  19    Appeals.

10:44:11  20                MS. KRUPKE:  Yes --

10:44:11  21                THE COURT:  But there's a general counsel who

10:44:14  22    is a part of the Court of Appeals?

10:44:16  23                MS. KRUPKE:  Yes, there's an Office of General

10:44:18  24    Counsel at the Court that is authorized to accept

10:44:20  25    service.

10:44:20   1          So I have made inquiries, specifically as to A.

10:44:23   2     Jefferson, and I've only been told by one person that

10:44:27   3     that person is not authorized to accept service, but

10:44:29   4     they were going to make additional inquiries to make

10:44:32   5     sure that we weren't making misrepresentations to the

10:44:34   6     Court.

10:44:34   7          I do also just want to point out, though, that

10:44:37   8     under Rule 4(m) of -- I'm sorry, 4(j) of how service is

10:44:41   9     to be effectuated on a state or local government, that

10:44:45  10     the two provisions that it has are 4(j)(A) delivering to

10:44:49  11     the chief executive, which obviously this affidavit of

10:44:53  12     service does not allege that has been done, or 4(j)(B),

10:44:57  13     serving in a manner consistent with the state's local

10:44:59  14     law.

10:45:00  15          Now, under the Superior Court Rules of Procedure of

10:45:02  16     how service would be effectuated on an entity within the

10:45:07  17     District of Columbia government, the entity would need

10:45:10  18     to be served and the Office of the Attorney General

10:45:12  19     would need to be served.  There's been no representation

10:45:14  20     that that service has been made.

10:45:16  21          And so under this kind of amalgamation of the two

10:45:22  22     Rules of Civil Procedure, service would not be proper

10:45:25  23     even if the Clerk was authorized to accept service.

10:45:33  24               THE COURT:  What provision of the D.C. rules

10:45:35  25     are you referencing -- or the rules?

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
| 10:45:38 | 1  | MS. KRUPKE:  I believe it's also 4(j).                   |
|          | 2  | THE COURT:  Of the local --                              |
| 10:45:42 | 3  | MS. KRUPKE:  Of the Superior Court Rules of              |
|          | 4  | Civil Procedure.                                         |
| 10:45:46 | 5  | THE COURT:  Okay.  We'll look at that.                   |
| 10:45:46 | 6  | MR. KLAYMAN:  May I add one thing, Your Honor?           |
| 10:45:48 | 7  | THE COURT:  Yes.                                          |
| 10:45:52 | 8  | MR. KLAYMAN:  Your Honor, I've listened to that          |
| 10:45:52 | 9  | argument, and I would submit that does not apply to the  |
| 10:45:54 | 10 | Court.  The Court is an independent entity, is that      |
| 10:45:56 | 11 | they've had notice of this for a long time.  And we      |
| 10:45:59 | 12 | attempted service before; they wouldn't accept.  They    |
| 10:46:03 | 13 | were served with a preliminary injunction motion.  They  |
| 10:46:06 | 14 | had a duty to come forward with their argument.  They    |
| 10:46:09 | 15 | can make their argument today.  Nobody is preventing     |
| 10:46:11 | 16 | them from doing it.                                       |
| 10:46:12 | 17 | THE COURT:  Well, do you have authority that             |
| 10:46:14 | 18 | supports what you said, that it's a separate entity and  |
| 10:46:18 | 19 | therefore all you need do is serve somebody at the       |
| 10:46:22 | 20 | Court?                                                    |
| 10:46:24 | 21 | MR. KLAYMAN:  I'm making the argument that what          |
| 10:46:25 | 22 | she cited was dealing mostly with cases against the      |
| 10:46:28 | 23 | government itself, not the Court.  And I'm making an      |
| 10:46:31 | 24 | argument that they had notice -- they had notice of      |
| 10:46:33 | 25 | this.  So they can certainly defend -- you know, they're |

10:46:35 1    a public agency that owes a duty to everybody in the

10:46:38 2    District of Columbia and elsewhere.  And the fact that

10:46:41 3    they would make an issue even with service of process

10:46:46 4    frankly underscores my point --

10:46:48 5         THE COURT:  I don't -- Counsel, come on.  I

10:46:50 6    don't buy that.  I mean, the rules are the rules.  And

10:46:51 7    you can't say that just because of the circumstances of

10:46:54 8    a particular case that you can abdicate the rules and do

10:46:57 9    whatever you want.  I mean, if service has to be

10:47:00 10   effected in a certain way, it has to be done in the

10:47:02 11   context of this case just like any other case.

10:47:04 12        So we'll check the rules and we'll get back on that

10:47:08 13   in a minute.

10:47:09 14        Other counsel?

10:47:20 15        MR. MACHADO:  Good morning, Your Honor.  Again,

10:47:21 16   Les Machado on behalf of the Board defendants.

10:47:24 17        I'm just going to be very brief because I think

10:47:26 18   this has been fully fleshed out in the papers.

10:47:29 19        Your Honor has picked up on exactly the right issue

10:47:33 20   from the *Rooker-Feldman* doctrine.  Mr. Klayman went to

10:47:36 21   the Superior Court and he asked that Superior Court for

10:47:38 22   the exact relief that he's seeking from this Court.

10:47:40 23        He said to that court, the Board issued -- the

10:47:42 24   Board Hearing Committee issued the report and

10:47:45 25   recommendation beyond the time frames required by the

| | | |
|---|---|---|
| 10:47:47 | 1 | rules and therefore you need to sort of set it aside. |
| 10:47:50 | 2 | THE COURT:  But he says the issue he wants to |
| 10:47:51 | 3 | raise here is a constitutional issue based upon the |
| 10:47:54 | 4 | First Amendment.  He did not raise it over there, but |
| 10:47:58 | 5 | he's saying he should have a right to raise it here even |
| 10:48:01 | 6 | though he clearly could have raised it there because |
| 10:48:04 | 7 | case authority clearly says that a constitutional issue |
| 10:48:07 | 8 | can be raised both in state court and in the federal |
| 10:48:11 | 9 | court. |
| 10:48:12 | 10 | MR. MACHADO:  I understand his argument, Your |
| 10:48:14 | 11 | Honor, but you're exactly right, which is that is an |
| 10:48:16 | 12 | argument that could have been raised in the federal |
| 10:48:18 | 13 | court and should have been raised in the federal court. |
| 10:48:21 | 14 | THE COURT:  You mean in the -- |
| 10:48:23 | 15 | MR. MACHADO:  Excuse me, in the state court.  I |
| | 16 | apologize. |
| 10:48:26 | 17 | And in fact, the *Rooker-Feldman* doctrine speaks |
| 10:48:29 | 18 | exactly to this topic.  It says, essentially -- and let |
| 10:48:32 | 19 | me find the right citation here, Your Honor -- "it |
| 10:48:36 | 20 | precludes a party in state court from seeking what is in |
| 10:48:39 | 21 | substance an appellate review of the state court |
| 10:48:42 | 22 | judgment in a United States District Court based on the |
| 10:48:45 | 23 | losing party's claim that the state judgment itself |
| 10:48:48 | 24 | violates the loser's federal rights. |
| 10:48:51 | 25 | That's *Johnson v. De Grande*, Supreme Court case |

| | | |
|---|---|---|
| 10:48:56 | 1 | from 1994 that we cited in our motion to dismiss. |
| 10:48:58 | 2 | It prevents courts from hearing suits, quote, |
| 10:49:00 | 3 | "brought by state court losers complaining of injuries |
| 10:49:05 | 4 | caused by state court judgments rendered before the |
| 10:49:06 | 5 | District Court proceedings commenced and inviting the |
| 10:49:09 | 6 | District Court review and rejection of those |
| 10:49:11 | 7 | judgments." That's the *Exxon Mobile* case from 2005, |
| 10:49:14 | 8 | Supreme Court. |
| 10:49:14 | 9 | It's exactly what's going on here. He went to the |
| 10:49:18 | 10 | Superior Court, he said set aside the Board's Hearing |
| 10:49:21 | 11 | Committee because it was issued beyond these time |
| 10:49:23 | 12 | frames. He lost that. He appealed that. He lost |
| 10:49:26 | 13 | again. And in the interim, he came to this court |
| 10:49:29 | 14 | repackaging it as a violation of my federal rights. |
| 10:49:32 | 15 | You can't do that. It would mean every plaintiff |
| 10:49:35 | 16 | who lost in state court could come to federal court and |
| 10:49:38 | 17 | say, "My First Amendment rights are being violated," and |
| 10:49:41 | 18 | "My Fifth Amendment rights are being violated," and you |
| 10:49:43 | 19 | get another bite of the apple. |
| 10:49:45 | 20 | And so whether you look at it as claim spinning, |
| 10:49:47 | 21 | which is I think what Your Honor was alluding to, which |
| 10:49:49 | 22 | is, you know, I'm going to bring some arguments there |
| 10:49:51 | 23 | and preserve other arguments for federal court -- |
| 10:49:53 | 24 | whether you look at it as a second bite of the apple, |
| 10:49:56 | 25 | the fact at the end of the day is that the |

| 10:49:59 | 1 | *Rooker-Feldman* doctrine prevents him from doing exactly |
| 10:50:02 | 2 | what he wants to do here.  And try as he might to say, |
| 10:50:05 | 3 | well, this is really about my federal constitutional |
| 10:50:07 | 4 | rights, we're here today because he's seeking the |
| 10:50:10 | 5 | identical relief he sought in the state court. |
| 10:50:13 | 6 | He said to the state court, "Stop the disciplinary |
| 10:50:17 | 7 | proceeding from -- the *Bundy* disciplinary proceeding |
| 10:50:21 | 8 | from going on because the Hearing Committee report and |
| 10:50:23 | 9 | recommendation was issued beyond the 120 days.  It is |
| 10:50:27 | 10 | exactly the same relief he is seeking from you.  And try |
| 10:50:30 | 11 | as he might to dance around the topic, *Rooker-Feldman* |
| 10:50:33 | 12 | bars that. |
| 10:50:34 | 13 | Setting that -- |
| 10:50:34 | 14 | THE COURT:  As I understand, that issue did go |
| 10:50:37 | 15 | up to the Court of Appeals? |
| 10:50:38 | 16 | MR. MACHADO:  It did, Your Honor.  It was |
| 10:50:40 | 17 | appealed to the D.C. Court of Appeals.  And then last |
| 10:50:42 | 18 | month they issued an order affirming the dismissal of |
| 10:50:44 | 19 | the Superior Court decision.  But, notably, for purpose |
| 10:50:47 | 20 | of what we're doing today, acknowledging that |
| 10:50:50 | 21 | Mr. Klayman has raised issues about that 12(b)(2) rule. |
| 10:50:55 | 22 | Is it mandatory?  Is it discretionary?  What |
| 10:50:58 | 23 | happens if it's violated? |
| 10:50:59 | 24 | And they essentially said, "We're going to take |
| 10:51:01 | 25 | these up when we -- when we take up the Bundy |

10:51:07  1    disciplinary matter."  They acknowledged he had brought

10:51:09  2    up these arguments.  They acknowledged that those

10:51:10  3    arguments had been fully fleshed out in the briefing at

10:51:13  4    that disciplinary matter.

10:51:14  5        He's regurgitated all of those arguments in his

10:51:18  6    briefing to the D.C. Court of Appeals, and they

10:51:19  7    essentially said, this is all going to be a part of the

10:51:21  8    argument that's going to happen on the 29th.

10:51:23  9        And so for him to come to this Court and say,

10:51:26  10   without any factual support, "Well, the D.C. Court of

10:51:29  11   Appeals has prejudged the outcome," it just -- he has

10:51:35  12   not come close to satisfying the standard for a

10:51:37  13   preliminary injunction.

10:51:37  14       THE COURT:  What did -- the Court of Appeals,

10:51:42  15   you're saying, said that they were going to consider the

10:51:44  16   rule and whether that was violated by the delay in a

10:51:47  17   proceeding with his disciplinary matter, but I assume

10:51:51  18   they didn't because it wasn't raised, say that they were

10:51:53  19   going to take up the constitutional issue.

10:51:56  20       MR. MACHADO:  I don't -- I don't -- they

10:52:00  21   certainly did not say that in the opinion affirming the

10:52:03  22   Superior Court's denial.  So I don't know how broad that

10:52:08  23   consideration of that issue is going to be.  What I know

10:52:10  24   is what the -- what I know is what the D.C. Court of

10:52:16  25   Appeals' opinion said, and -- what the D.C. Court of

10:52:24 1    Appeals' opinion said.

10:52:27 2           THE COURT:  Okay.  Anything else?  I'm going to

10:52:30 3    go look at this rule that was referenced.

10:52:32 4           MR. MACHADO:  Yeah, I understand, Your Honor,

10:52:33 5    that, you know, there's obviously four factors.  We

10:52:35 6    know -- there's a likelihood of success.  We don't think

10:52:38 7    he can satisfy that.  There's the irreparable harm.  We

10:52:40 8    don't think they can satisfy that.

10:52:41 9        Again, just briefly on that, Mr. Klayman is

10:52:43 10   essentially saying without any factual support, the D.C.

10:52:48 11   Court of Appeals has prejudged his arguments.  They've

10:52:51 12   not.  There's no evidence of that.

10:52:52 13       He said, Well, it's going to cause me time and

10:52:57 14   energy and money to have to deal with this discipline in

10:53:00 15   other jurisdictions.  In our opposition to his motion

10:53:03 16   for a PI we, of course, cited cases saying that's not

10:53:07 17   enough to show irreparable harm.

10:53:08 18       And then finally, those final two factors, Your

10:53:10 19   Honor:  The balancing of the equities and the public

10:53:13 20   interest.  There's nothing that would suggest that this

10:53:15 21   Court stopping a state court -- as Your Honor said, a

10:53:19 22   state court that is responsible for overseeing

10:53:24 23   discipline of attorneys in the jurisdiction, for this

10:53:26 24   Court to sort of say to that state court, "You should

10:53:29 25   stop what you're doing."  Again, we don't think the

10:53:31    1    public interest supports that dramatic and extraordinary

10:53:33    2    remedy.

10:53:36    3            THE COURT:  Okay.

10:53:37    4            MR. KLAYMAN:  Your Honor, in all due respect,

10:53:43    5    that was a shell game argument.  What I mean by that is

10:53:47    6    that the only issue in front of the D.C. Superior Court

10:53:51    7    and the Court of Appeals was whether 12.2 was violated.

10:53:56    8            THE COURT:  Yeah, but you did have the

10:53:59    9    opportunity to raise the constitutional challenge that

10:54:02    10   you're making here in that court, right?

10:54:05    11       You could have raised that.

10:54:07    12           MR. KLAYMAN:  I have -- yes, I could have, but

10:54:09    13   I have also the option to exercise my rights in front of

10:54:13    14   this Court.

10:54:13    15           THE COURT:  I don't agree with that.  I don't

10:54:15    16   think a litigant can go to state court, raise issues

10:54:19    17   before the state court, omit some issues, lose, and then

10:54:22    18   come to federal court and raise issues that they could

10:54:25    19   have raised in the state court before the federal --

10:54:28    20           MR. KLAYMAN:  I respectfully disagree with

10:54:30    21   that, Your Honor.

10:54:30    22           THE COURT:  What authority --

10:54:31    23           MR. KLAYMAN:  Let me --

10:54:32    24           THE COURT:  Hold -- Mr. Klayman, please, I'm

10:54:35    25   trying to be understanding that you're upset about this.

| | | |
|---|---|---|
| 10:54:38 | 1 | But when I talk, you have to -- I let you talk.  When I |
| 10:54:41 | 2 | talk, you have to be quiet, okay? |
| 10:54:43 | 3 | Can we agree on that? |
| 10:54:44 | 4 | MR. KLAYMAN:  Yes. |
| 10:54:45 | 5 | THE COURT:  Okay.  What authority says that you |
| 10:54:48 | 6 | can piecemeal your litigation by pursuing only some |
| 10:54:51 | 7 | claims in the state court, which you could have raised |
| 10:54:54 | 8 | but didn't, and then when you lose, come to federal |
| 10:54:57 | 9 | court and raise those issues that you didn't raise in |
| 10:55:00 | 10 | state court that you could have? |
| 10:55:02 | 11 | MR. KLAYMAN:  Number one, the D.C. Court of |
| 10:55:04 | 12 | Appeals is conflicted, okay?  It's making rulings that |
| 10:55:07 | 13 | would pertain against itself.  It refused to do that, |
| 10:55:12 | 14 | refused to even stay.  So there's a huge conflict of |
| 10:55:14 | 15 | interest there. |
| 10:55:15 | 16 | They have taken the position consistently that it |
| 10:55:18 | 17 | doesn't matter what they promulgated as a rule, that the |
| 10:55:21 | 18 | Board can do whatever it wants.  As long as the litigant |
| 10:55:24 | 19 | is someone like Larry Klayman, we'll let it proceed. |
| 10:55:28 | 20 | In our briefs we set forth with particularity how |
| 10:55:32 | 21 | that was under a prior rule of the Board, okay?  The new |
| 10:55:35 | 22 | rule of the Court gave it 120 days.  "Shall," not "may." |
| 10:55:40 | 23 | That's not discretionary. |
| 10:55:41 | 24 | We set forth a number of cases -- |
| 10:55:43 | 25 | THE COURT:  But isn't your remedy -- if you're |

10:55:45  1    saying that the Court -- that the Superior Court and the

10:55:47  2    Court of Appeals both got it wrong, isn't it your remedy

10:55:50  3    to go to the Supreme Court?

10:55:52  4          MR. KLAYMAN:  You know how hard it is to go up

10:55:54  5    to the Supreme Court, Your Honor?

10:55:55  6          THE COURT:  Yeah, but I mean -- again, I don't

10:55:57  7    know of any authority that says because it's difficult

10:55:59  8    to get before the Supreme Court that you can circumvent

10:56:02  9    that and therefore bring it to a lower federal court.

10:56:06  10         MR. KLAYMAN:  That's our right, Your Honor.

10:56:07  11    But let me read to you why the *Rooker-Feldman* doctrine

10:56:10  12    does not apply, and it's a short but succinct portion of

10:56:14  13    our brief on the preliminary injunction.

10:56:17  14         Defendant's attempt to argue that the District of

10:56:20  15    Columbia Superior Court dismissal of the Bundy

10:56:23  16    litigation bars Mr. Klayman from seeking relief for a

10:56:27  17    violation of his First Amendment rights under the

10:56:29  18    *Rooker-Feldman* doctrine.  This argument has no merit.

10:56:33  19         Quote, "the Supreme Court has explained that the

10:56:35  20    purpose of the *Rooker-Feldman* doctrine is to effectuate

10:56:39  21    28 U.S.C. Section 1257," which, quote, "vests authority

10:56:45  22    to review a state court's judgment solely in the Supreme

10:56:49  23    Court," unquote.

10:56:50  24         *D.C. Healthcare Systems v. District of Columbia*,

10:56:54  25    441, U.S. Appeals, D.C., 126, 131, 2019.  Quote, "the

10:57:03  1    Supreme Court has repeatedly described the

10:57:05  2    *Rooker-Feldman* doctrine as a narrow one," unquote.

10:57:09  3        Quote, "Indeed the Court has found it applicable

10:57:12  4    only twice," unquote.

10:57:14  5        Importantly, quote, "if," unquote, the federal

10:57:18  6    plaintiff presents an independent claim, it is not an

10:57:22  7    impediment to exercise -- to the exercise of federal

10:57:25  8    jurisdiction that the same or related question was

10:57:28  9    earlier aired between the parties in the state court; id

10:57:33  10   at 132.  There you go.

10:57:35  11       The *Bundy* litigation was a state court action that

10:57:38  12   solely sought injunctive relief and declaratory relief

10:57:42  13   that the Board must enforce under Rule 12.2.

10:57:46  14       The instant matter brings claims under 42 U.S.C.

10:57:49  15   1920 -- 1983 -- I'll repeat that -- 42 U.S.C. 1983, for

10:57:55  16   violation of Mr. Klayman's First and Fifth Amendment

10:57:58  17   rights and seeks damages from the defendants in that

10:58:01  18   regard, in addition to seeking injunctive and equitable

10:58:04  19   relief.  These claims could not be more different, and

10:58:08  20   this instant matter clearly presents the Court with an

10:58:11  21   independent claim, quote-unquote, "that falls outside of

10:58:15  22   the *Bundy* litigation," citing *D.C. Healthcare Systems*

10:58:19  23   441 U.S. Appeals D.C., at 131.

10:58:24  24       "Thus, particularly given the extremely narrow

10:58:27  25   application of the *Rooker-Feldman* doctrine, id, it is

10:58:32  1    clear that the *Rooker-Feldman* doctrine does not preclude

10:58:35  2    this instant action."

10:58:37  3         THE COURT:  I have an 11:00 motions hearing I

10:58:41  4    have to hear, so I'm going to have to take a recess in

10:58:44  5    this case.  We'll look at the rule that was referenced

10:58:46  6    regarding service of process, and I'll get back with

10:58:49  7    this matter as soon as I can deal with this other

10:58:53  8    matter.

10:58:53  9         And counsel for the Court needs to try and find out

10:58:58  10   who this person is and find out some authority as to

10:59:02  11   what it says about who has to be served in order for the

10:59:06  12   Court to be appropriately served with process.

10:59:09  13        MR. KLAYMAN:  Is there some time frame, Your

10:59:12  14   Honor, that you think you'll need for this other motion?

10:59:14  15        THE COURT:  I have no idea.  It shouldn't take

10:59:17  16   too long, but we'll get back to this as soon as we can.

10:59:22  17        I'll give the court reporter a five-minute recess.

10:59:27  18        (Court in recess from 10:59 a.m. to 11:20 a.m.)

11:20:01  19        THE COURT:  We can recall the case.

11:20:03  20        DEPUTY COURTROOM CLERK:  Yes, Your Honor.

11:20:05  21        Recalling civil action 24-2997, *Larry Elliot*

11:20:11  22   *Klayman v. District of Columbia Court of Appeals, et*

11:20:15  23   *al.*  All parties are present.

11:20:17  24        THE COURT:  Okay.  We have looked at the

11:20:20  25   Superior Court rule regarding service of process on a

11:20:25  1    component of the City, and the rule seemingly

11:20:30  2    provides -- or requires that the chief executive officer

11:20:33  3    of the component itself has to be served.  And I would

11:20:40  4    conclude that that would be the Clerk of the Court, who

11:20:45  5    I assume would be the chief executive officer of the

11:20:48  6    Court of Appeals for D.C.

11:20:49  7         And it also does require, as counsel indicated,

11:20:54  8    that the Attorney General Office also be served since,

11:21:01  9    if there was some type of financial liability that would

11:21:06  10   lie, obviously it would be the City since the Court of

11:21:09  11   Appeals for D.C. is a part of the City, would be the

11:21:11  12   entity that would be responsible.

11:21:14  13        So besides the fact that -- I think it's

11:21:17  14   questionable as to whether the Court of Appeals itself

11:21:19  15   can be sued as compared to the City being sued.  As far

11:21:23  16   as service of process is concerned on the Court of

11:21:25  17   Appeals, I would have to conclude that the rule does

11:21:27  18   require that there be dual service both on the chief

11:21:30  19   executive officer of the Court but also on the Attorney

11:21:35  20   General's Office.  And there's no indication that there

11:21:38  21   was service on the Attorney General's Office, so I would

11:21:39  22   have to conclude that at this -- at least at this point,

11:21:43  23   without proper service, I don't have jurisdiction over

11:21:46  24   the Court of Appeals.

11:21:49  25        Anything?

11:21:55 1          MR. KLAYMAN:  Assuming that that applies, Your

11:21:58 2   Honor, we would ask that the matter proceed in any

11:22:00 3   event.  They adopted the arguments of the court -- of

11:22:03 4   the Board, so the same arguments --

11:22:04 5          THE COURT:  How can I proceed if there hasn't

11:22:06 6   been appropriate service?  If there hasn't been

11:22:08 7   appropriate service, I don't have jurisdiction.

11:22:11 8          MR. KLAYMAN:  Well, you certainly can proceed

11:22:12 9   with the Board, okay?  They were served and they

11:22:14 10  accepted service.

11:22:15 11         THE COURT:  What good would that do?  Because

11:22:19 12  the Board can't tell the Court of Appeals not to act.

11:22:25 13  And now the case is before the Court of Appeals, so the

11:22:27 14  Court of Appeals will either go forward or not go

11:22:29 15  forward.  And if the Board is restrained, that would

11:22:34 16  have no impact on whether the Court of Appeals --

11:22:37 17         MR. KLAYMAN:  The relief I requested, Your

11:22:39 18  Honor, was that Your Honor order that for purposes of

11:22:45 19  preliminary injunction that the Board's report is void

11:22:51 20  ab initio and cannot be enforced by the Court.  The

11:22:54 21  Board is a defendant here, and they have been served.

11:22:58 22  We can go forward at least to that extent with regard to

11:23:01 23  the equitable relief.

11:23:02 24      The other relief with regard to damages -- we're

11:23:04 25  not having a trial here today on damages.  We're having

11:23:08  1    a hearing with regard to equitable relief and an

11:23:11  2    injunctive relief and a declaratory ruling, and

11:23:15  3    therefore, you can make a ruling that the Board's ruling

11:23:18  4    here -- the Board's report and recommendation is of no

11:23:21  5    force and effect because of viewpoint discrimination.

11:23:25  6         So I would respectfully request that I be able to

11:23:29  7    testify here today and put evidence on the record to

11:23:31  8    that effect because this issue will go up to the D.C.

11:23:35  9    Circuit right away.

11:23:36  10         THE COURT:  Well, I'm prepared to rule.  And as

11:23:41  11    I was indicating when we were here previously, before we

11:23:44  12    took the recess, I just don't see how a litigant can

11:23:51  13    pursue a matter before the equivalent of a state court,

11:23:55  14    raise some issues before the state court, lose before

11:24:00  15    that court, could have raised other arguments before

11:24:03  16    that court but did not, but then seek to raise those

11:24:07  17    same issues before a federal court.  I just don't see

11:24:12  18    how you can do that.  And I think that's the problem.

11:24:16  19         And I think the *Rooker-Feldman* doctrine also is an

11:24:24  20    impediment to me addressing this matter in light of the

11:24:30  21    fact that the Court of Appeals -- I mean, the Superior

11:24:33  22    Court made its ruling.

11:24:36  23         Subsequently, that was appealed to the Court of

11:24:38  24    Appeals.  The Court of Appeals affirmed the Superior

11:24:41  25    Court.  And I just don't see how I have the authority to

11:24:44  1    make a decision now inconsistent with issues that were

11:24:49  2    raised before the Court of Appeals, at least in

11:24:52  3    reference to the rule issue.  But as I said, in

11:24:54  4    reference to the constitutional issue that's being

11:24:57  5    raised, that could have been raised before, before the

11:25:00  6    state court.  It was not raised.  And I don't see how it

11:25:03  7    can now be raised in the first instance before this

11:25:06  8    Court.

11:25:08  9            MR. KLAYMAN:  Your Honor, I gave you the

11:25:09  10   authority when I read --

11:25:10  11            THE COURT:  And if I'm wrong, the Court of

11:25:12  12   Appeals will tell me that.

11:25:13  13            MR. KLAYMAN:  I would like to -- I would

11:25:14  14   respectfully request that I be able to proffer my

11:25:16  15   exhibits into evidence and authenticate them.  They're

11:25:22  16   self-authenticating, in any event.  I would like them on

11:25:27  17   the record before I take this up.

11:25:27  18            THE COURT:  Very well.

11:25:30  19            MR. KLAYMAN:  Thank you.

11:25:30  20       Can I take the stand, please?

11:25:34  21            THE COURT:  Yes?

          22            MR. MACHADO:  Your Honor --

11:25:41  23            THE COURT:  What exhibits are you seeking to

11:25:43  24   try and present?

11:25:47  25            MR. KLAYMAN:  I'm seeking to present exhibits

11:25:48  1    that show the pattern and practice of viewpoint

11:25:52  2    discrimination against me and against other

11:25:54  3    conservative --

11:25:54  4         THE COURT:  But if I don't have the authority

11:25:56  5    to entertain the issue because of the current state of

11:25:58  6    the law, i.e., you had the opportunity to raise the

11:26:01  7    issue previously and you didn't, how can I then let you

11:26:05  8    introduce that into the record?

11:26:06  9         MR. KLAYMAN:  Well, I'm proffering it, Your

11:26:08  10   Honor, proffering it so the Court of Appeals will have

11:26:10  11   it as part of its record.  It's a proffer.

11:26:16  12        THE COURT:  Yes.

11:26:18  13        MR. MACHADO:  Your Honor, just briefly --

11:26:22  14        THE COURT:  Number one -- I mean, I just don't

11:26:24  15   see how I get to the issue of whether there was a First

11:26:30  16   Amendment violation, and I don't see how the Court of

11:26:33  17   Appeals gets that issue.  They may see it differently in

11:26:38  18   light of the fact that, as I said, this was an issue

11:26:41  19   that could have been raised in the Superior Court.  It

11:26:44  20   was not raised, and therefore, I don't see how in the

11:26:47  21   first instance it can be raised here.

11:26:50  22        If I'm right on that, then all of these exhibits

11:26:52  23   are really irrelevant to the issue as to whether you had

11:26:56  24   a right to proceed before this Court.

11:26:59  25        MR. MACHADO:  We understand, Your Honor, and we

11:27:01  1    absolutely agree.  I just want to make one point because

11:27:04  2    Mr. Klayman has been very clear about his intent to take

11:27:08  3    this up.

11:27:08  4        If he's going to get on the stand for the pure and

11:27:11  5    narrow purpose of introducing these exhibits, and we

11:27:15  6    share the Court's concern or wonderment as to how -- why

11:27:21  7    it would even be relevant.  But if he's going to get on

11:27:23  8    the stand for that limited purpose, you know, that's one

11:27:26  9    issue.

11:27:26  10       If, on the other hand, he's going to get on the

11:27:29  11   stand and provide testimony, which is what he started

11:27:31  12   off this morning saying his intent was, we do note that

11:27:33  13   the local rules of which Mr. Klayman has repeatedly

11:27:40  14   cited to this Court and referenced in court -- in the

11:27:41  15   course of his 40 years of practice before this court

11:27:45  16   provide that the practice is to decide preliminary

11:27:48  17   injunction motions without live testimony.  And that if

11:27:50  18   a party intends to provide live testimony, they need to

11:27:54  19   give 72 hours' notice, which did not happen here.  And

11:27:57  20   that the Court may decline witnesses where the need for

11:27:59  21   live testimony is outweighed by considerations of undue

11:28:02  22   delay, waste of time, or needless presentation of

11:28:08  23   cumulative evidence.

11:28:08  24       I know the Court -- I know several judges on this

11:28:11  25   court.  I know the D.C. Circuit is intimately familiar

11:28:12  1    with Mr. Klayman's views about viewpoint discrimination.

11:28:16  2    And so if he's going to get on the stand and just

11:28:18  3    regurgitate that again, we would object for these

11:28:22  4    reasons, Your Honor.

11:28:28  5         MR. KLAYMAN:  Well, first of all, I don't need

11:28:29  6    to regurgitate that at this phase.  I can regurgitate

11:28:32  7    that when -- so to speak, when this case comes back to

11:28:34  8    this Court.

          9         Secondly --

11:28:36  10         THE COURT:  That's presumptuous on your part,

11:28:38  11    but go ahead.

11:28:41  12         MR. KLAYMAN:  Well, it's happened before.

11:28:41  13         THE COURT:  But I don't get reversed that

          14    much --

          15         MR. KLAYMAN:  So --

11:28:42  16         THE COURT:  I've been a judge for 43 years.

11:28:43  17    I've probably been reversed ten times in my history.

          18         MR. KLAYMAN:  No, but you can --

11:28:46  19         THE COURT:  But -- it does happen, but I don't

11:28:47  20    think it's going to happen here --

11:28:47  21         MR. KLAYMAN:  Secondly --

11:28:48  22         THE COURT:  -- but go ahead.

11:28:49  23         MR. KLAYMAN:  Secondly, I submitted a detailed

11:28:52  24    affidavit, which also incorporated by reference in the

11:28:55  25    brief that I filed in opposition to the motion to

| 11:28:57 | 1 | dismiss as well as other documents, I submitted |
| 11:29:01 | 2 | testimony.  They submitted none.  They've therefore |
| 11:29:05 | 3 | conceded -- |
| 11:29:07 | 4 | THE COURT:  But you see, Mr. Klayman, what |
| 11:29:09 | 5 | you're raising doesn't deal with the reason that I |
| 11:29:12 | 6 | conclude I can't go forward in this case.  And that is |
| 11:29:15 | 7 | because, as I said before, you could have raised this |
| 11:29:18 | 8 | issue in the Superior Court.  You didn't.  And I don't |
| 11:29:21 | 9 | think you can piecemeal your litigation, as I said, by |
| 11:29:24 | 10 | raising some issues over there, had the opportunity to |
| 11:29:26 | 11 | raise it there but didn't, and then come to this Court |
| 11:29:28 | 12 | and ask this Court to consider an issue that you could |
| 11:29:30 | 13 | have raised there. |
| 11:29:33 | 14 | Maybe I'm wrong.  If I'm wrong, the Court of |
| 11:29:35 | 15 | Appeals will tell me. |
| 11:29:37 | 16 | MR. KLAYMAN:  Respectfully, you're wrong, Your |
| 11:29:39 | 17 | Honor. |
| 11:29:39 | 18 | THE COURT:  Okay. |
| 11:29:40 | 19 | MR. KLAYMAN:  In any event, I'm just proffering |
| 11:29:42 | 20 | these documents into the record.  That's all I'm doing |
| 11:29:44 | 21 | right now. |
|  | 22 | THE COURT:  What relevance do they have at this |
|  | 23 | point? |
| 11:29:45 | 24 | MR. KLAYMAN:  You're preventing me from doing |
| 11:29:46 | 25 | that? |

| 11:29:46 | 1 | THE COURT: If the Court of Appeals tells me |
| 11:29:47 | 2 | that you have a right to proceed, yes, then I'll let -- |
| 11:29:50 | 3 | MR. KLAYMAN: Well, you're -- you're just |
| 11:29:51 | 4 | trying to slow this thing down -- |
|  | 5 | THE COURT: I'm not trying to slow -- |
|  | 6 | MR. KLAYMAN: -- is what you're doing. Then I |
|  | 7 | ask again -- |
| 11:29:53 | 8 | THE COURT: Don't make allegations against me |
| 11:29:54 | 9 | that aren't fact-based. I've not done anything to slow |
| 11:29:58 | 10 | this matter down. In fact, I've speeded it up so we can |
| 11:30:01 | 11 | do this matter today before your hearing is scheduled |
| 11:30:04 | 12 | before the Court of Appeals. |
| 11:30:05 | 13 | MR. KLAYMAN: You speeded it up after we lost |
| 11:30:07 | 14 | seven days because Your Honor erroneously, for whatever |
| 11:30:10 | 15 | reason, and I believe it was not unintentional, found |
| 11:30:12 | 16 | that I had not complied with the rule for the -- |
| 11:30:16 | 17 | THE COURT: And I still am of the opinion that |
| 11:30:18 | 18 | you didn't comply with the rule, for the reason I |
| 11:30:20 | 19 | indicated in the order. But nonetheless, giving you the |
| 11:30:23 | 20 | benefit of the doubt, I overlooked that and held this |
| 11:30:26 | 21 | hearing. |
| 11:30:26 | 22 | MR. KLAYMAN: I disagree, Your Honor, and I |
| 11:30:28 | 23 | respectfully request -- |
| 11:30:28 | 24 | THE COURT: You have a right to disagree, but I |
| 11:30:30 | 25 | think I was still right. |

| | | |
|---|---|---|
| 11:30:31 | 1 | MR. KLAYMAN:  We've asked for your |
| 11:30:33 | 2 | disqualification before.  I renew that motion -- |
| 11:30:34 | 3 | THE COURT:  And that was denied previously by |
| 11:30:36 | 4 | the Court of Appeals. |
| | 5 | MR. KLAYMAN:  Not in this context. |
| 11:30:37 | 6 | THE COURT:  I have nothing against you, sir.  I |
| 11:30:39 | 7 | don't know of -- I don't know you.  I have nothing |
| 11:30:42 | 8 | against you whatsoever.  My ruling is based upon my |
| 11:30:45 | 9 | impression of what the law says. |
| 11:30:48 | 10 | MR. KLAYMAN:  Well, I -- can I make a proffer |
| 11:30:50 | 11 | of these documents? |
| 11:30:51 | 12 | THE COURT:  Briefly, sir. |
| 11:30:52 | 13 | MR. KLAYMAN:  Well, I want to go through them. |
| 11:30:54 | 14 | I have 20 -- |
| 11:30:54 | 15 | THE COURT:  No, I'm not going to entertain all |
| 11:30:56 | 16 | those documents because, as I said, until I'm told by |
| 11:30:59 | 17 | the Court of Appeals that you have a right to appear |
| 11:31:01 | 18 | before me and raise these issues, which in my view you |
| 11:31:05 | 19 | don't because of the reasons I previously indicated, and |
| 11:31:08 | 20 | until I'm told otherwise, that information, in my view, |
| 11:31:11 | 21 | is irrelevant. |
| 11:31:14 | 22 | MR. KLAYMAN:  Can I identify what these |
| 11:31:16 | 23 | exhibits are? |
| 11:31:16 | 24 | THE COURT:  Why?  If I don't have the authority |
| 11:31:18 | 25 | to hear about what you want to raise regarding the First |

| | | |
|---|---|---|
| 11:31:22 | 1 | Amendment, how is that relevant? |
| 11:31:25 | 2 | MR. KLAYMAN:  Because a proffer is a normal way |
| 11:31:27 | 3 | to see what it is that you fail to consider, Your |
| | 4 | Honor -- |
| | 5 | THE COURT:  Because I -- |
| 11:31:29 | 6 | MR. KLAYMAN:  -- which would be a ground for |
| 11:31:30 | 7 | reversal. |
| 11:31:31 | 8 | THE COURT:  It has nothing to do with the |
| 11:31:32 | 9 | merits of your First Amendment claim.  My position is |
| 11:31:35 | 10 | that, as I said before -- maybe you don't understand |
| 11:31:37 | 11 | what I'm saying -- you had a right to raise it over in |
| 11:31:40 | 12 | the Superior Court.  You didn't raise it. |
| 11:31:43 | 13 | MR. KLAYMAN:  Do you have any authority for |
| 11:31:44 | 14 | that? |
| 11:31:45 | 15 | THE COURT:  Yes, there's plenty of authority |
| 11:31:47 | 16 | that says -- |
| 11:31:47 | 17 | MR. KLAYMAN:  What authority do you have?  You |
| 11:31:47 | 18 | haven't cited any. |
| | 19 | THE COURT:  -- I can't tell you -- |
| 11:31:49 | 20 | MR. KLAYMAN:  Other than you felt like making |
| 11:31:50 | 21 | that ruling, because you have no authority to cite that. |
| 11:31:53 | 22 | THE COURT:  There is clear authority that says |
| 11:31:54 | 23 | you can't raise certain issues in one court which you |
| 11:31:58 | 24 | had the opportunity to raise and then raise it in |
| 11:32:00 | 25 | another court. |

11:32:01  1          MR. KLAYMAN:  I suggest, Your Honor, that you

11:32:02  2     read --

11:32:03  3          THE COURT:  Sir, if I'm wrong, the Court of

11:32:05  4     Appeals will tell me.  Thank you.

11:32:11  5          (Court adjourned, 11:32 a.m.)

11:32:24  6                         - - -

          7

          8

          9

          10                      CERTIFICATE

          11

          12      I, Chandra Kean, RMR, hereby certify that the

          13     foregoing transcript is a true and correct transcription

          14     of the proceedings held in the above-titled matter.

          15

          16     _____      May 27, 2025

          17       Chandra Kean, RMR              DATE

          18

          19

          20

          21

          22

          23

          24

          25

## 1

**1** [1] - 25:21
**1.2** [2] - 11:20, 17:14
**10100** [1] - 2:3
**10:06** [1] - 3:2
**10:59** [1] - 46:18
**11** [1] - 9:14
**11:00** [1] - 46:3
**11:20** [1] - 46:18
**11:32** [1] - 58:5
**12(b)(2** [1] - 39:21
**12(b)(6** [1] - 6:14
**12(b)(6)** [1] - 6:5
**12.2** [2] - 42:7, 45:13
**120** [4] - 13:10, 14:4, 39:9, 43:22
**1257** [1] - 44:21
**126** [1] - 44:25
**131** [2] - 44:25, 45:23
**132** [1] - 45:10
**15** [1] - 21:19
**15th** [3] - 26:17, 28:2, 28:15
**18** [2] - 26:15, 28:1
**180** [1] - 15:22
**1920** [1] - 45:15
**1983** [3] - 37:5, 45:15
**1994** [1] - 38:1

## 2

**20** [1] - 56:14
**20001** [2] - 2:4, 28:17
**2005** [1] - 38:7
**2019** [1] - 44:25
**202-727-2125** [1] - 2:4
**2025** [5] - 21:19, 26:17, 28:2, 28:15, 58:16
**204** [1] - 2:8
**22303** [1] - 2:8
**24-2997** [2] - 3:4, 46:21
**2560** [1] - 2:8
**27** [1] - 58:16
**28** [1] - 44:21
**28th** [3] - 24:4, 24:6, 24:9
**29th** [4] - 24:4, 24:8, 24:11, 40:8
**2:59** [1] - 28:15

## 3

**33,000** [1] - 20:12

## 4

**4(j** [1] - 34:8
**4(j)** [1] - 35:1

**4(j)(A** [1] - 34:10
**4(j)(B** [1] - 34:12
**4(m** [1] - 34:8
**40** [1] - 52:15
**400** [1] - 2:3
**42** [2] - 45:14, 45:15
**43** [2] - 8:20, 53:16
**430** [2] - 26:18, 28:16
**441** [2] - 44:25, 45:23
**48** [2] - 11:6

## 6

**60** [1] - 11:1
**6th** [1] - 2:3

## 7

**703-775-8607** [1] - 2:9
**72** [1] - 52:19

## A

**a.m** [4] - 3:2, 46:18, 58:5
**ab** [1] - 48:20
**abdicate** [1] - 36:8
**ability** [2] - 10:9, 12:8
**able** [13] - 4:18, 6:11, 6:20, 9:22, 11:11, 19:4, 19:17, 23:22, 24:15, 27:3, 29:22, 49:6, 50:14
**above-entitled** [1] - 26:15
**above-titled** [1] - 58:14
**abridgement** [1] - 17:20
**absolute** [1] - 12:15
**absolutely** [2] - 4:18, 52:1
**accept** [25] - 22:3, 22:4, 25:19, 26:5, 26:25, 27:10, 27:11, 27:15, 28:13, 28:20, 28:25, 29:6, 29:8, 29:14, 29:19, 29:23, 31:18, 32:9, 32:18, 33:12, 33:24, 34:3, 34:23, 35:12
**acceptance** [1] - 30:5
**accepted** [1] - 48:10
**accepting** [1] - 26:2
**accurate** [1] - 12:13
**acknowledged** [2] - 40:1, 40:2
**acknowledging** [1] - 39:20
**act** [2] - 7:22, 48:12
**acting** [1] - 7:24

**action** [11] - 3:3, 12:22, 18:13, 20:16, 26:10, 26:16, 26:20, 28:18, 45:11, 46:2, 46:21
**actions** [2] - 5:14, 25:10
**activist** [2] - 4:15, 5:19
**actual** [2] - 18:10, 23:8
**Ad** [1] - 31:8
**add** [3] - 5:22, 31:6, 35:6
**addition** [2] - 30:22, 45:18
**additional** [1] - 34:4
**address** [6] - 4:1, 7:11, 8:15, 15:7, 20:20, 25:12
**addressed** [1] - 18:19
**addressing** [1] - 49:20
**adequate** [1] - 6:18
**adjourned** [1] - 58:5
**administers** [1] - 10:14
**administration** [1] - 5:14
**admitted** [2] - 4:11, 25:21
**admittedly** [1] - 20:12
**adopted** [1] - 48:3
**advocate** [1] - 20:15
**affidavit** [14] - 4:9, 4:10, 18:22, 18:25, 19:4, 19:19, 19:23, 21:18, 23:16, 23:21, 25:25, 26:7, 34:11, 53:24
**affirmed** [1] - 49:24
**affirming** [1] - 39:18, 40:21
**afraid** [1] - 8:18
**age** [2] - 26:15, 27:25
**agency** [1] - 36:1
**ago** [1] - 26:17
**agree** [3] - 42:15, 43:3, 52:1
**ahead** [2] - 53:16, 53:22
**aired** [1] - 45:9
**al** [2] - 3:5, 46:23
**Alan** [1] - 18:25
**Alexandria** [1] - 2:8
**allegations** [1] - 55:8
**allege** [1] - 34:12
**alleged** [1] - 6:8
**allegedly** [1] - 5:13
**allow** [2] - 14:2, 31:21
**allowing** [1] - 18:8
**alluding** [1] - 38:21
**almost** [1] - 13:4

**amalgamation** [1] - 34:21
**ambiguity** [1] - 14:7
**Amendment** [10] - 5:7, 6:21, 37:4, 38:17, 38:18, 44:17, 45:16, 51:16, 57:1, 57:9
**amicably** [1] - 26:1
**apologize** [2] - 33:9, 37:16
**apparatus** [1] - 16:17
**appeal** [1] - 7:19
**appealable** [1] - 7:3
**appealed** [2] - 38:12, 39:17, 49:23
**Appeals** [70] - 3:5, 3:19, 3:21, 7:13, 7:18, 8:5, 8:14, 9:1, 9:3, 10:6, 12:21, 13:16, 14:2, 14:10, 14:12, 15:11, 18:4, 21:8, 21:14, 21:22, 22:2, 23:4, 23:6, 23:8, 24:3, 24:13, 24:22, 24:25, 25:3, 26:18, 27:4, 28:16, 33:4, 33:15, 33:19, 33:22, 39:15, 39:17, 40:6, 40:11, 40:14, 41:11, 42:7, 43:12, 44:2, 44:25, 45:23, 46:22, 47:6, 47:11, 47:14, 47:17, 47:24, 48:12, 48:13, 48:14, 48:16, 49:21, 49:24, 50:2, 50:12, 51:10, 51:17, 54:15, 55:1, 55:12, 56:4, 56:17, 58:4
**Appeals'** [2] - 40:25, 41:1
**appear** [2] - 23:6, 56:17
**appearance** [2] - 3:7, 27:19
**APPEARANCES** [1] - 2:1
**appellate** [4] - 7:22, 7:24, 15:8, 37:21
**apple** [2] - 38:19, 38:24
**applicable** [1] - 45:3
**application** [1] - 45:25
**applies** [2] - 5:18, 48:1
**apply** [1] - 11:14, 35:9, 44:12
**approach** [2] - 3:6, 25:22
**appropriate** [10] - 22:13, 22:22, 24:21,

**25:5, 31:17, 32:3, 33:14, 48:6, 48:7
**appropriately** [11] - 7:14, 21:15, 22:21, 23:14, 27:4, 27:7, 30:10, 31:4, 32:2, 32:15, 46:12
**argue** [2] - 30:20, 44:14
**argument** [11] - 25:15, 35:9, 35:14, 35:15, 35:21, 35:24, 37:10, 37:12, 40:8, 42:5, 44:18
**arguments** [11] - 4:25, 8:22, 38:22, 38:23, 40:2, 40:3, 40:5, 41:11, 48:3, 48:4, 49:15
**arm** [1] - 17:5
**aside** [2] - 37:1, 38:10
**aspect** [1] - 18:20
**assistant** [1] - 25:23
**associate** [1] - 11:3
**associate's** [1] - 11:2
**assume** [3] - 9:1, 40:17, 47:5
**assuming** [1] - 48:1
**attached** [2] - 4:22, 25:25
**attempt** [2] - 32:7, 44:14
**attempted** [3] - 21:20, 26:1, 35:12
**attempting** [1] - 10:19
**attempts** [1] - 25:19
**Attorney** [6] - 16:2, 16:3, 34:18, 47:8, 47:19, 47:21
**ATTORNEY** [1] - 2:2
**attorneys** [1] - 41:23
**authenticate** [1] - 50:15
**authenticating** [1] - 50:16
**authority** [20] - 14:16, 27:3, 30:23, 35:17, 37:7, 42:22, 43:5, 44:7, 44:21, 46:10, 49:25, 50:10, 51:4, 56:24, 57:13, 57:15, 57:17, 57:21, 57:22
**authorization** [2] - 30:13, 32:22
**authorized** [20] - 14:24, 22:3, 22:4, 26:9, 26:25, 27:11, 27:15, 28:12, 28:20, 28:25, 29:5, 29:8, 29:14, 29:19, 32:4,

32:18, 33:12, 33:24, 34:3, 34:23
**Avenue** [1] - 2:8
**award** [1] - 10:13
**aware** [1] - 9:8

## B

**balancing** [1] - 41:19
**bar** [7] - 10:13, 10:16, 10:17, 10:22, 11:7, 11:8, 16:12
**Bar** [9] - 10:15, 10:24, 11:6, 16:16, 16:17, 17:25, 18:3, 18:7, 20:7
**Barr** [1] - 16:2
**bars** [2] - 39:12, 44:16
**based** [4] - 37:3, 37:22, 55:9, 56:8
**basis** [1] - 7:21
**Bates** [1] - 5:12
**became** [1] - 16:15
**beginning** [1] - 3:7
**behalf** [8] - 3:13, 3:19, 7:3, 20:4, 22:5, 28:21, 29:20, 36:16
**behaved** [1] - 18:2
**bench** [1] - 25:22
**benefit** [1] - 55:20
**bent** [3] - 15:22, 19:2, 19:12
**best** [1] - 23:23
**better** [1] - 27:12
**between** [1] - 45:9
**beyond** [3] - 36:25, 38:11, 39:9
**Biden** [1] - 16:24
**Bill** [1] - 16:2
**bite** [2] - 38:19, 38:24
**Black** [2] - 5:17
**blunt** [1] - 15:18
**Board** [17] - 3:13, 13:9, 14:1, 15:19, 19:16, 31:8, 36:16, 36:23, 36:24, 43:18, 43:21, 45:13, 48:4, 48:9, 48:12, 48:15, 48:21
**board** [2] - 3:14, 19:16
**Board's** [5] - 9:17, 38:10, 48:19, 49:3, 49:4
**Boasberg** [1] - 5:25
**bobbed** [1] - 32:8
**bottom** [3] - 18:15, 27:18, 29:2
**BPR** [1] - 2:10
**brief** [3] - 36:17, 44:13, 53:25

**briefing** [2] - 40:3, 40:6
**briefly** [4] - 25:12, 41:9, 51:13, 56:12
**briefs** [4] - 4:20, 8:1, 13:13, 43:20
**bring** [4] - 4:12, 8:25, 38:22, 44:9
**brings** [1] - 45:14
**broad** [1] - 40:22
**brought** [4] - 21:21, 24:15, 38:3, 40:1
**Bundy** [5] - 39:7, 39:25, 44:15, 45:11, 45:22
**business** [1] - 23:19
**buy** [1] - 36:6
**BY** [2] - 2:3, 2:7

## C

**candidate** [1] - 16:18
**candidates** [1] - 16:22
**cannot** [4] - 18:18, 24:23, 25:9, 48:20
**capacity** [3] - 3:20, 16:23, 24:23
**carefully** [1] - 6:23
**cascading** [1] - 17:16
**case** [36] - 4:7, 4:24, 5:4, 5:9, 5:16, 6:2, 6:7, 6:8, 6:16, 7:5, 8:1, 8:2, 9:2, 9:12, 10:5, 10:12, 11:14, 12:23, 12:25, 13:20, 15:12, 21:21, 24:4, 26:15, 30:24, 36:8, 36:11, 37:7, 37:25, 38:7, 46:5, 46:19, 48:13, 53:7, 54:6
**cases** [11] - 5:11, 5:14, 10:15, 13:13, 13:19, 13:21, 14:6, 14:8, 35:22, 41:16, 43:24
**caused** [1] - 38:4
**causing** [1] - 17:14
**cent** [1] - 16:18
**certain** [3] - 12:7, 36:10, 57:23
**certainly** [3] - 35:25, 40:21, 48:8
**CERTIFICATE** [1] - 58:10
**certify** [1] - 58:12
**challenge** [1] - 42:9
**challenging** [1] - 9:8
**Chandra** [2] - 58:12, 58:16
**changed** [4] - 14:3, 16:15, 18:5, 24:11

**check** [2] - 33:3, 36:12
**checking** [1] - 33:9
**chief** [4] - 34:11, 47:2, 47:5, 47:18
**Christopher** [1] - 20:4
**Circuit** [11] - 5:25, 6:17, 7:3, 7:4, 8:17, 9:13, 12:1, 12:19, 17:6, 18:16, 18:17, 49:9, 52:25
**circumstances** [1] - 36:7
**circumvent** [1] - 44:8
**citation** [1] - 37:19
**cite** [3] - 13:13, 14:5, 57:21
**cited** [5] - 35:22, 38:1, 41:16, 52:14, 57:18
**citing** [1] - 45:22
**City** [6] - 16:4, 24:16, 47:1, 47:10, 47:11, 47:15
**city** [1] - 25:2
**civil** [5] - 3:3, 26:10, 26:20, 28:18, 46:21
**Civil** [3] - 6:14, 34:22, 35:4
**claim** [6] - 25:8, 37:23, 38:20, 45:6, 45:21, 57:9
**claims** [3] - 43:7, 45:14, 45:19
**clarification** [1] - 9:11
**clarified** [1] - 31:23
**Clark** [1] - 16:5
**classified** [1] - 15:7
**clear** [8] - 13:7, 13:8, 14:6, 17:6, 30:6, 46:1, 52:2, 57:22
**clearly** [4] - 32:3, 37:6, 37:7, 45:20
**CLERK** [2] - 3:3, 46:20
**Clerk** [17] - 26:25, 27:9, 27:11, 27:13, 27:15, 28:12, 29:5, 30:14, 30:17, 32:22, 32:24, 32:25, 33:4, 34:23, 47:4
**Clerk's** [4] - 27:22, 28:6, 28:7, 30:7
**cleverly** [1] - 19:15
**Clevinger** [1] - 20:14
**clients** [2] - 9:22, 20:17
**Clinesmith** [1] - 19:14
**Clinton** [3] - 16:23, 20:5, 20:12
**Clintons** [1] - 20:17
**close** [2] - 23:19, 40:12

**colleagues** [1] - 17:17
**collusion** [1] - 19:20
**Columbia** [19] - 3:4, 3:19, 3:20, 10:10, 10:20, 14:18, 15:18, 22:2, 24:17, 24:22, 25:5, 25:9, 26:18, 28:16, 34:17, 36:2, 44:15, 44:24, 46:22
**coming** [2] - 17:8, 23:23
**commenced** [1] - 38:5
**Committee** [5] - 3:15, 31:9, 36:24, 38:11, 39:8
**Committee's** [1] - 13:9
**compared** [1] - 47:15
**complaining** [1] - 38:3
**complaint** [4] - 20:14, 26:14, 26:24, 30:15
**complaints** [1] - 16:12
**complied** [1] - 55:16
**comply** [1] - 55:18
**component** [2] - 47:1, 47:3
**composition** [2] - 15:19, 15:20
**compromised** [1] - 12:20
**conceded** [1] - 54:3
**concern** [1] - 52:6
**concerned** [1] - 47:16
**conclude** [5] - 22:22, 47:4, 47:17, 47:22, 54:6
**conclusion** [1] - 13:10
**conclusions** [2] - 6:15, 6:25
**conduct** [1] - 12:22
**confident** [1] - 7:2
**confirm** [1] - 23:23
**conflict** [1] - 43:14
**conflicted** [2] - 15:12, 43:12
**consent** [5] - 26:10, 26:11, 26:20, 26:21, 28:18
**consequence** [1] - 20:10
**consequently** [2] - 4:11, 6:22
**conservative** [2] - 4:15, 51:13
**conservatives** [1] - 5:19
**consider** [3] - 40:15, 54:12, 57:3
**consideration** [1] - 40:23
**considerations** [1] -

52:21
**consistent** [1] - 34:13
**consistently** [1] - 43:16
**Constitution** [2] - 5:20, 17:4
**constitutional** [15] - 6:20, 8:12, 8:13, 8:15, 15:1, 15:5, 15:7, 17:21, 19:1, 37:3, 37:7, 39:3, 40:19, 42:9, 50:4
**constitutionally** [1] - 13:5
**construction** [1] - 14:5
**consuming** [1] - 10:23
**CONT'D** [1] - 2:1
**contact** [1] - 23:5
**context** [3] - 9:15, 36:11, 56:5
**continue** [2] - 10:10, 10:19
**contrary** [3] - 4:10, 8:9, 13:16
**control** [2] - 14:17, 17:3
**controlling** [1] - 13:22, 13:23, 14:19
**convicted** [1] - 19:19
**Conway** [1] - 16:1
**corporation** [1] - 24:24
**correct** [2] - 28:5, 58:13
**costly** [1] - 10:23
**counsel** [19] - 16:12, 16:14, 16:16, 18:2, 21:5, 21:8, 21:11, 21:14, 23:10, 23:12, 27:2, 31:10, 32:14, 33:3, 33:17, 33:21, 36:14, 46:9, 47:7
**Counsel** [6] - 9:16, 20:2, 22:6, 33:13, 33:24, 36:5
**country** [1] - 5:6
**course** [8] - 4:16, 5:9, 7:4, 9:4, 25:8, 29:22, 41:16, 52:15
**Court** [167] - 3:2, 3:5, 3:19, 3:20, 3:24, 4:13, 4:19, 5:5, 5:21, 7:13, 7:18, 7:21, 8:4, 8:10, 8:13, 8:14, 9:1, 9:2, 10:6, 10:12, 11:25, 12:14, 12:15, 12:18, 12:21, 13:15, 14:2, 14:10, 14:12, 15:11, 15:15, 15:21,

17:8, 18:4, 19:11, 21:8, 21:14, 21:15, 21:21, 22:2, 22:5, 22:7, 22:19, 23:4, 23:6, 23:8, 23:13, 24:3, 24:13, 24:22, 24:25, 25:3, 25:19, 26:2, 26:4, 26:18, 27:4, 27:8, 27:9, 27:11, 28:16, 28:21, 28:24, 29:20, 30:5, 30:10, 30:23, 31:4, 31:22, 33:4, 33:15, 33:18, 33:22, 33:24, 34:6, 34:15, 35:3, 35:10, 35:20, 35:23, 36:21, 36:22, 37:22, 37:25, 38:5, 38:6, 38:8, 38:10, 39:15, 39:17, 39:19, 40:6, 40:9, 40:10, 40:14, 40:24, 40:25, 41:11, 41:21, 41:24, 42:6, 42:7, 42:14, 43:11, 43:22, 44:1, 44:2, 44:3, 44:5, 44:8, 44:15, 44:19, 44:23, 45:1, 45:3, 45:20, 46:9, 46:12, 46:18, 46:22, 46:25, 47:4, 47:6, 47:10, 47:14, 47:16, 47:19, 47:24, 48:12, 48:13, 48:14, 48:16, 48:20, 49:21, 49:22, 49:23, 49:24, 49:25, 50:2, 50:8, 50:11, 51:10, 51:16, 51:19, 51:24, 52:14, 52:20, 52:24, 53:8, 54:8, 54:11, 54:12, 54:14, 55:1, 55:12, 56:4, 56:17, 57:12, 58:3, 58:5

**COURT** [124] - 3:11, 3:17, 3:23, 4:3, 7:10, 8:6, 8:8, 8:18, 8:24, 11:21, 12:2, 12:6, 13:15, 13:21, 14:14, 14:21, 15:3, 15:5, 20:23, 21:2, 21:5, 21:8, 21:11, 21:23, 22:4, 22:8, 22:12, 22:17, 23:3, 23:11, 24:2, 24:7, 24:10, 24:16, 24:18, 24:25, 25:11, 25:14, 25:17, 27:2, 27:13, 27:21, 28:3, 28:6, 28:10, 28:19, 29:1, 29:7, 29:11, 29:13, 29:17, 29:24, 30:1, 30:8,

30:25, 31:3, 31:10, 31:14, 31:24, 32:10, 32:13, 32:19, 32:23, 33:2, 33:6, 33:17, 33:21, 34:24, 35:2, 35:5, 35:7, 35:17, 36:5, 37:2, 37:14, 39:14, 40:14, 41:2, 42:3, 42:8, 42:15, 42:22, 42:24, 43:5, 43:25, 44:6, 46:3, 46:15, 46:19, 46:24, 48:5, 48:11, 49:10, 50:11, 50:18, 50:21, 50:23, 51:4, 51:12, 51:14, 53:10, 53:13, 53:16, 53:19, 53:22, 54:4, 54:18, 54:22, 55:1, 55:5, 55:8, 55:17, 55:24, 56:3, 56:6, 56:12, 56:15, 56:24, 57:5, 57:8, 57:15, 57:19, 57:22, 58:3

**court** [65] - 7:22, 7:23, 7:25, 10:22, 11:19, 12:8, 12:9, 12:10, 12:19, 12:23, 14:16, 14:22, 15:6, 15:14, 17:3, 17:9, 18:13, 18:14, 18:16, 20:21, 36:23, 37:8, 37:9, 37:13, 37:15, 37:20, 37:21, 38:3, 38:4, 38:13, 38:16, 38:23, 39:5, 39:6, 41:21, 41:22, 41:24, 42:10, 42:16, 42:17, 42:18, 42:19, 43:7, 43:9, 43:10, 44:9, 45:9, 45:11, 46:17, 48:3, 49:13, 49:14, 49:15, 49:16, 49:17, 50:6, 52:14, 52:15, 52:25, 57:23, 57:25

**court's** [1] - 44:22

**Court's** [2] - 40:22, 52:6

**courthouse** [1] - 30:7

**COURTROOM** [2] - 3:3, 46:20

**courts** [4] - 9:18, 10:21, 38:2

**created** [2] - 9:21, 16:9

**Cruz** [1] - 16:6

**cumulative** [1] - 52:23

**current** [2] - 7:20, 51:5

**cursory** [1] - 7:7

**cuts** [1] - 5:16

## D

**D.C** [42] - 5:25, 6:17, 7:3, 7:4, 7:13, 8:4, 8:14, 8:17, 9:13, 9:16, 10:24, 11:25, 12:18, 12:21, 14:9, 14:11, 15:11, 16:17, 17:6, 18:16, 18:17, 20:7, 21:21, 26:19, 28:17, 34:24, 39:17, 40:6, 40:10, 40:24, 40:25, 41:10, 42:6, 43:11, 44:24, 44:25, 45:22, 45:23, 47:6, 47:11, 49:8, 52:25

**damage** [3] - 17:12, 17:17

**damages** [6] - 8:7, 25:1, 25:2, 45:17, 48:24, 48:25

**dance** [1] - 39:11

**DATE** [1] - 58:16

**David** [1] - 20:11

**days** [5] - 13:10, 14:4, 39:9, 43:22, 55:14

**DC** [2] - 2:2, 2:4

**DCCA** [1] - 2:6

**de** [1] - 37:25

**deal** [4] - 11:15, 41:14, 46:7, 54:5

**dealing** [4] - 11:3, 11:20, 12:19, 35:22

**deals** [1] - 5:17

**decade** [2] - 13:5, 17:14

**decide** [1] - 52:16

**decided** [1] - 11:19

**decision** [6] - 7:7, 7:22, 9:25, 13:1, 39:19, 50:1

**decisions** [1] - 9:24

**declaratory** [2] - 45:12, 49:2

**declare** [1] - 49:19

**decline** [1] - 52:20

**defend** [1] - 35:25

**defendant** [1] - 48:21

**defendant's** [1] - 44:14

**defendants** [5] - 3:16, 7:8, 21:2, 36:16, 45:17

**Defendants** [2] - 2:10

**degree** [2] - 19:3, 19:18

**degrees** [1] - 15:22

**delay** [5] - 9:6, 9:11, 13:25, 40:16, 52:22

**delivering** [1] - 34:10

**Democrat** [2] - 16:21, 20:9

**Democrats** [1] - 20:17

**demonstrated** [1] - 17:23

**denial** [1] - 40:22

**denied** [3] - 5:24, 7:19, 56:3

**Department** [1] - 16:9

**deposed** [1] - 26:8

**DEPUTY** [2] - 3:3, 46:20

**Deputy** [1] - 16:3

**Dershowitz** [1] - 19:1

**described** [1] - 45:1

**describes** [1] - 27:18

**deserve** [2] - 11:9, 11:12

**destroy** [1] - 20:12

**detailed** [1] - 53:23

**determination** [1] - 31:16

**determine** [1] - 23:2

**determining** [1] - 17:4

**dichotomy** [1] - 20:18

**different** [2] - 8:3, 45:19

**differently** [1] - 51:17

**difficult** [1] - 44:7

**direct** [3] - 16:7, 16:13, 27:17

**disagree** [4] - 30:13, 42:20, 55:22, 55:24

**disbarred** [1] - 16:4

**disciplinary** [11] - 9:9, 15:23, 16:12, 16:14, 16:17, 18:1, 39:6, 39:7, 40:1, 40:4, 40:17

**Disciplinary** [1] - 9:16

**discipline** [2] - 41:14, 41:23

**discovery** [2] - 6:3, 6:9

**discrepancy** [1] - 24:2

**discretionary** [2] - 39:22, 43:23

**discrimination** [9] - 4:8, 4:14, 5:8, 5:13, 17:2, 18:24, 49:5, 51:2, 53:1

**discriminatory** [2] - 4:14, 5:7

**dismiss** [5] - 4:24, 5:23, 6:4, 38:1, 54:1

**dismissal** [2] - 39:18, 44:15

**dismissed** [1] - 25:4

**disqualification** [1] - 56:2

**disrespect** [1] - 9:25

**District** [22] - 3:4, 3:19, 3:20, 10:10, 10:20, 14:17, 15:18, 22:1, 24:17, 24:22, 25:5, 25:9, 26:18, 28:16, 34:17, 36:2, 37:22, 38:5, 38:6, 44:14, 44:24, 46:22

**division** [1] - 16:9

**doctrine** [12] - 18:11, 18:12, 36:20, 37:17, 39:1, 44:11, 44:18, 44:20, 45:2, 45:25, 46:1, 49:19

**document** [2] - 23:9, 30:2

**Document** [1] - 25:24

**documents** [4] - 54:1, 54:20, 56:11, 56:16

**done** [6] - 10:24, 12:4, 17:12, 34:12, 36:10, 55:9

**doubt** [1] - 55:20

**Douglass** [10] - 5:9, 5:17, 5:22, 6:1, 6:9, 7:5, 17:6, 18:15, 18:16, 30:24

**down** [3] - 5:11, 55:4, 55:10

**dramatic** [1] - 42:1

**dual** [1] - 47:18

**due** [3] - 11:16, 31:21, 42:4

**duly** [2] - 26:8, 26:9

**Durham** [1] - 20:2

**duty** [6] - 18:17, 18:18, 18:19, 20:21, 35:14, 36:1

## E

**Ed** [1] - 16:10

**effect** [8] - 9:7, 10:4, 15:25, 17:16, 22:9, 28:23, 49:5, 49:8

**effected** [2] - 27:7, 36:10

**effective** [1] - 24:14

**effectuate** [1] - 44:20

**effectuated** [3] - 33:15, 34:9, 34:16

**either** [2] - 12:25, 48:14

**Elias** [1] - 20:1, 20:2

**Elliot** [2] - 3:4, 46:21

**elsewhere** [1] - 36:2

**Email** [2] - 2:5, 2:9

**emails** [2] - 20:12, 26:1

**end** [2] - 6:13, 38:25
**energy** [1] - 41:14
**enforce** [3] - 14:12, 18:17, 45:13
**enforced** [4] - 13:2, 13:3, 20:19, 48:20
**enforcing** [1] - 5:6
**enjoin** [1] - 18:13
**enjoined** [1] - 5:15
**enjoining** [1] - 30:22
**entertain** [2] - 51:5, 56:15
**entire** [2] - 9:12, 22:25
**entitled** [1] - 26:15
**entity** [7] - 25:6, 33:14, 34:16, 34:17, 35:10, 35:18, 47:12
**equally** [1] - 5:18
**equitable** [3] - 45:18, 48:23, 49:1
**equities** [1] - 41:19
**equity** [1] - 31:21
**equivalent** [2] - 7:23, 49:13
**erroneously** [1] - 55:14
**essence** [1] - 9:23
**essentially** [4] - 37:18, 39:24, 40:7, 41:10
**et** [3] - 3:5, 46:22
**event** [5] - 25:20, 26:6, 48:3, 50:16, 54:19
**evidence** [8] - 4:19, 6:23, 15:25, 21:7, 41:12, 49:7, 50:15, 52:23
**evidenced** [1] - 15:12
**exact** [1] - 36:22
**exactly** [7] - 16:8, 36:19, 37:11, 37:18, 38:9, 39:1, 39:10
**example** [3] - 5:9, 25:1, 30:9
**examples** [1] - 19:12
**exclude** [1] - 10:19
**excuse** [3] - 4:23, 26:3, 37:15
**executive** [4] - 34:11, 47:2, 47:5, 47:19
**exercise** [3] - 42:13, 45:7
**exhaust** [3] - 15:10, 17:9
**Exhibit** [1] - 25:21
**exhibits** [9] - 26:14, 26:24, 50:15, 50:23, 50:25, 51:22, 52:5, 56:23
**expeditiously** [1] - 11:18

**expense** [1] - 9:21
**explained** [1] - 44:19
**explore** [2] - 23:18, 23:20
**extent** [1] - 48:22
**extraordinary** [1] - 42:1
**extremely** [3] - 5:20, 10:22, 45:24
**Exxon** [1] - 38:7

## F

**fact** [21] - 6:15, 6:24, 7:16, 8:25, 12:4, 13:7, 14:13, 15:13, 15:17, 16:20, 19:25, 28:20, 29:16, 36:2, 37:17, 38:25, 47:13, 49:21, 51:18, 55:9, 55:10
**fact-based** [1] - 55:9
**factors** [2] - 41:5, 41:18
**facts** [2] - 11:13, 18:23
**factual** [5] - 4:7, 4:12, 6:12, 40:10, 41:10
**fail** [1] - 23:1
**fair** [1] - 16:13
**falls** [1] - 45:21
**familiar** [2] - 5:10, 52:25
**family** [1] - 17:18
**far** [1] - 47:15
**favor** [1] - 22:18
**federal** [22] - 14:15, 14:22, 17:3, 18:13, 18:14, 18:15, 37:8, 37:12, 37:13, 37:24, 38:14, 38:16, 38:23, 39:3, 42:18, 42:19, 43:8, 44:9, 45:5, 45:7, 49:17
**Feldman** [12] - 18:11, 36:20, 37:17, 39:11, 39:11, 44:11, 44:18, 44:20, 45:2, 45:25, 46:1, 49:19
**felony** [1] - 19:19
**felt** [1] - 57:20
**Fifth** [3] - 5:6, 38:18, 45:16
**file** [1] - 19:23
**filed** [7] - 5:23, 13:9, 21:18, 23:16, 23:18, 23:21, 53:25
**files** [1] - 20:14
**final** [2] - 9:17, 41:18
**finally** [1] - 41:18
**financial** [1] - 47:9

**findings** [2] - 6:15, 6:24
**fine** [1] - 20:8
**finished** [1] - 25:15
**first** [10] - 4:5, 4:21, 7:12, 13:20, 21:5, 21:25, 50:7, 51:21, 53:5
**First** [8] - 5:6, 37:4, 38:17, 44:17, 45:16, 51:15, 56:25, 57:9
**five** [1] - 46:17
**five-minute** [1] - 46:17
**fleshed** [2] - 36:18, 40:3
**Florida** [3] - 10:12, 10:15, 11:6
**following** [1] - 13:10
**FOR** [1] - 2:2
**force** [1] - 49:5
**foregoing** [1] - 58:13
**former** [3] - 16:2, 16:3, 19:16
**forth** [3] - 18:23, 43:20, 43:24
**forward** [5] - 35:14, 48:14, 48:15, 48:22, 54:6
**four** [3] - 10:4, 13:25, 41:5
**four-month** [1] - 13:25
**fourth** [1] - 27:23
**Fox** [1] - 16:15
**frame** [1] - 46:13
**frames** [2] - 36:25, 38:12
**frankly** [1] - 36:4
**Friday** [1] - 23:19
**front** [13] - 4:12, 6:4, 6:16, 8:13, 9:9, 12:14, 12:15, 13:4, 19:11, 20:21, 22:10, 42:6, 42:13
**fully** [4] - 11:9, 18:8, 36:18, 40:3

## G

**game** [1] - 42:5
**Gene** [1] - 16:14
**General** [7] - 16:2, 16:3, 22:6, 33:13, 33:23, 34:18, 47:8
**general** [4] - 23:10, 23:12, 33:17, 33:21
**GENERAL** [1] - 2:2
**General's** [2] - 47:20, 47:21
**generally** [1] - 25:9
**Giuliani** [1] - 16:4

**given** [13] - 7:8, 10:24, 16:18, 16:20, 16:21, 22:18, 22:20, 23:21, 30:15, 30:16, 30:17, 45:24
**government** [8] - 5:23, 27:2, 31:15, 31:18, 33:2, 34:9, 34:17, 35:23
**governs** [1] - 14:6
**Grande** [1] - 37:25
**grant** [1] - 15:13
**granted** [1] - 5:24
**granting** [1] - 18:7
**great** [1] - 19:18
**ground** [1] - 57:6
**grounds** [1] - 6:18
**group** [1] - 5:18

## H

**half** [2] - 13:4, 17:14
**Hamilton** [1] - 16:15
**hand** [1] - 52:10
**hard** [3] - 15:17, 26:4, 44:4
**harm** [8] - 15:15, 15:16, 17:22, 18:7, 18:9, 18:10, 41:7, 41:17
**Hawley** [1] - 16:6
**headed** [1] - 16:10
**Healthcare** [2] - 44:24, 45:22
**hear** [6] - 21:2, 21:5, 21:14, 24:3, 46:4, 56:25
**heard** [2] - 31:1, 31:10
**hearing** [6] - 13:11, 38:2, 46:3, 49:1, 55:11, 55:21
**Hearing** [6] - 3:15, 13:8, 31:9, 36:24, 38:10, 39:8
**held** [4] - 10:4, 10:15, 55:20, 58:14
**helped** [1] - 20:12
**hereby** [1] - 58:12
**high** [2] - 6:5, 19:3
**highly** [1] - 16:16
**Hillary** [2] - 20:5, 20:12
**himself** [1] - 16:11
**history** [1] - 53:17
**Hoc** [1] - 31:8
**hold** [1] - 42:24
**holiday** [1] - 23:22
**honesty** [1] - 19:3
**Honor** [83] - 3:9, 3:12, 4:1, 4:5, 4:21, 5:10,

**6:5**, 6:12, 6:14, 6:16, 6:22, 7:7, 7:9, 7:25, 8:15, 8:21, 9:5, 9:8, 9:9, 9:25, 11:13, 12:14, 13:14, 14:11, 15:16, 15:17, 16:25, 17:5, 19:2, 19:8, 20:18, 20:19, 20:21, 21:17, 22:16, 22:24, 22:25, 23:15, 23:23, 24:1, 24:8, 24:13, 25:13, 27:17, 28:1, 29:15, 30:5, 31:13, 31:20, 31:23, 33:5, 33:8, 35:6, 35:8, 36:15, 36:19, 37:11, 37:19, 38:21, 39:16, 41:4, 41:19, 41:21, 42:4, 42:21, 44:5, 44:10, 46:14, 46:20, 48:2, 48:18, 50:9, 50:22, 51:10, 51:13, 51:25, 53:4, 54:17, 55:14, 55:22, 57:4, 58:1
**hope** [1] - 13:14
**hoped** [1] - 19:6
**hour** [1] - 27:3
**hours'** [1] - 52:19
**huge** [2] - 20:18, 43:14
**Huntington** [1] - 2:8

## I

**i.e** [1] - 51:6
**id** [2] - 45:9, 45:25
**idea** [2] - 30:11, 46:15
**identical** [1] - 39:5
**identify** [1] - 56:22
**ideological** [3] - 15:21, 19:2, 19:11
**illegal** [1] - 10:16
**impact** [1] - 48:16
**impediment** [2] - 45:7, 49:20
**important** [9] - 5:4, 5:20, 6:11, 6:25, 7:6, 7:9, 9:23, 17:19, 18:20
**importantly** [4] - 26:13, 26:23, 30:15, 45:5
**impression** [1] - 56:9
**including** [4] - 16:22, 16:23, 29:3
**inconsistent** [1] - 50:1
**incorporated** [2] - 5:1, 53:24
**Indeed** [1] - 45:3

independent [3] - 35:10, 45:6, 45:21
indicated [3] - 47:7, 55:19, 56:19
indicating [1] - 49:11
indication [1] - 47:20
individual [1] - 24:23
information [1] - 56:20
inherently [1] - 12:20
initial [1] - 23:7
initio [1] - 48:20
injunction [16] - 3:25, 4:22, 5:1, 6:10, 7:1, 18:8, 26:14, 26:24, 29:4, 30:16, 30:17, 35:13, 40:13, 44:13, 48:19, 52:17
injunctive [3] - 45:12, 45:18, 49:2
injuries [1] - 38:2
injury [1] - 17:18
inquiries [3] - 33:8, 34:1, 34:4
instance [2] - 50:7, 51:21
instant [3] - 45:14, 45:20, 46:2
institute [1] - 10:8
instruct [1] - 32:16
instructing [1] - 32:14
integrity [1] - 19:3
intends [1] - 52:18
intent [2] - 52:2, 52:12
intention [1] - 4:5
interest [7] - 16:23, 17:24, 18:3, 41:20, 42:1, 43:15
interested [1] - 26:16
interim [1] - 38:13
intimately [1] - 52:25
introduce [1] - 51:8
introducing [1] - 52:5
investigation [1] - 19:20
inviting [1] - 38:5
involved [2] - 4:7, 15:2
irrelevant [2] - 51:23, 56:21
irreparable [4] - 17:18, 17:22, 41:7, 41:17
issue [34] - 6:24, 7:16, 8:6, 8:12, 8:15, 11:19, 11:20, 11:22, 12:11, 25:15, 25:16, 31:23, 36:3, 36:19, 37:2, 37:3, 37:7, 39:14, 40:19, 40:23, 42:6, 49:8, 50:3,

50:4, 51:5, 51:7, 51:15, 51:17, 51:18, 51:23, 52:9, 54:8, 54:12
issued [5] - 36:23, 36:24, 38:11, 39:9, 39:18
issues [2] - 4:7, 4:12, 4:16, 5:4, 5:21, 8:13, 11:3, 12:7, 12:9, 15:7, 39:21, 42:16, 42:17, 42:18, 43:9, 49:14, 49:17, 50:1, 54:10, 56:18, 57:23
issuing [1] - 10:5
itself [8] - 14:1, 14:3, 17:22, 35:23, 37:23, 43:13, 47:3, 47:14

**J**

janitor [1] - 30:9
Jefferson [14] - 21:19, 21:24, 23:1, 23:2, 26:25, 27:15, 27:19, 28:12, 28:20, 29:5, 32:17, 33:4, 33:11, 34:2
Jeffrey [1] - 16:5
JESSICA [1] - 2:3
Jessica [1] - 3:18
jessica.krupke@dc.gov [1] - 2:5
Johnson [1] - 37:25
Josh [1] - 16:6
judge [7] - 8:19, 14:15, 26:11, 26:12, 26:21, 26:22, 53:16
Judge [3] - 5:11, 5:12, 5:25
judges [1] - 52:24
judgment [3] - 37:22, 37:23, 44:22
judgments [2] - 38:4, 38:7
juris [1] - 24:13
jurisdiction [9] - 7:15, 11:25, 12:18, 14:25, 32:5, 41:23, 45:8, 47:23, 48:7
jurisdictions [3] - 9:19, 10:21, 41:15
Justice [1] - 16:9

**K**

Kean [2] - 58:12, 58:16
keep [1] - 8:19
Kellyanne [1] - 16:1
Kendall [2] - 20:11,

20:16
Kevin [2] - 19:14
kind [1] - 34:21
Klayman [16] - 3:4, 3:10, 3:23, 7:10, 21:18, 24:7, 36:20, 39:21, 41:9, 42:24, 43:19, 44:16, 46:22, 52:2, 52:13, 54:4
KLAYMAN [94] - 3:9, 4:1, 4:4, 7:24, 8:7, 8:11, 8:21, 9:4, 11:24, 12:4, 12:13, 13:19, 13:23, 14:19, 15:1, 15:4, 15:9, 20:25, 21:3, 21:6, 21:10, 24:8, 24:11, 25:12, 25:18, 25:25, 27:8, 27:14, 27:23, 28:5, 28:9, 28:11, 28:22, 29:2, 29:9, 29:12, 29:15, 29:21, 29:25, 30:4, 30:12, 31:2, 31:6, 31:12, 31:20, 32:7, 32:11, 32:16, 32:21, 33:1, 35:6, 35:8, 35:21, 42:4, 42:12, 42:20, 42:23, 43:4, 43:11, 44:4, 44:10, 46:13, 48:1, 48:8, 48:17, 50:9, 50:13, 50:19, 50:25, 51:9, 53:5, 53:12, 53:15, 53:18, 53:21, 53:23, 54:14, 54:19, 54:24, 55:3, 55:6, 55:13, 55:22, 56:1, 56:5, 56:10, 56:13, 56:22, 57:2, 57:6, 57:13, 57:17, 57:20, 58:1
Klayman's [3] - 24:3, 45:16, 53:1
knows [1] - 19:2
KRUPKE [22] - 2:3, 3:18, 21:17, 21:24, 22:6, 22:10, 22:15, 22:24, 23:5, 23:15, 24:6, 24:12, 24:17, 24:19, 25:3, 25:16, 33:5, 33:8, 33:20, 33:23, 35:1, 35:3
Krupke [1] - 3:18

**L**

landmark [1] - 10:12
language [1] - 14:6
large [1] - 19:21
Larry [4] - 3:4, 3:9, 43:19, 46:21

last [3] - 23:7, 29:4, 39:17
launder [1] - 20:4
laundering [1] - 20:3
law [16] - 5:16, 6:15, 6:24, 6:25, 7:20, 9:22, 10:24, 11:4, 11:14, 14:17, 17:17, 20:19, 27:6, 34:14, 51:6, 56:9
lawyer [2] - 10:16, 20:14
lawyers [4] - 4:15, 5:19, 14:23, 15:23
lays [1] - 4:24
least [4] - 24:21, 47:22, 48:22, 50:2
leave [1] - 18:25
lectern [1] - 3:6
leftist [2] - 20:9, 20:17
legal [2] - 4:25, 8:6
Les [2] - 3:12, 36:16
LESLIE [1] - 2:7
liability [2] - 25:8, 47:9
liable [1] - 25:1
lie [1] - 47:10
lied [1] - 20:5
life [1] - 5:18
light [2] - 49:20, 51:18
likelihood [2] - 17:13, 41:6
limited [3] - 3:20, 18:12, 52:8
line [2] - 18:15, 29:4
listened [1] - 35:8
listening [1] - 21:12
literally [1] - 20:15
litigant [5] - 6:19, 13:3, 42:16, 43:18, 49:12
litigate [1] - 8:12
litigated [3] - 7:17, 11:9, 18:9
litigation [7] - 12:7, 15:14, 43:6, 44:16, 45:11, 45:22, 54:9
live [3] - 52:17, 52:18, 52:21
Lives [2] - 5:17
lmachado@ohaganmeyer.com [1] - 2:9
local [6] - 6:13, 14:16, 34:9, 34:13, 35:2, 52:13
look [11] - 13:14, 15:19, 15:20, 16:9, 27:23, 30:24, 35:5, 38:20, 38:24, 41:3, 46:5

looked [2] - 13:15, 46:24
lose [3] - 42:17, 43:8, 49:14
loser's [1] - 37:24
losers [1] - 38:3
losing [1] - 37:23
lost [4] - 38:12, 38:16, 55:13
lower [2] - 17:9, 44:9
lying [2] - 19:19, 20:5

**M**

MACHADO [11] - 2:7, 3:12, 36:15, 37:10, 37:15, 39:16, 40:20, 41:4, 50:22, 51:13, 51:25
Machado [2] - 3:13, 36:16
magistrate [4] - 26:11, 26:12, 26:21, 26:22
mandatory [2] - 13:17, 39:22
manner [1] - 34:13
Marc [2] - 20:1
Martin [1] - 16:10
matter [20] - 3:24, 9:10, 18:8, 20:22, 31:21, 31:22, 40:1, 40:4, 40:17, 43:17, 45:14, 45:20, 46:7, 46:8, 48:2, 49:13, 49:20, 55:10, 55:11, 58:14
Matter [2] - 5:17, 5:18
matters [3] - 4:2, 6:12, 7:11
Mayor [1] - 16:3
McFadden [1] - 5:11
mean [14] - 8:19, 9:25, 14:21, 22:18, 31:25, 33:2, 36:6, 36:9, 37:14, 38:15, 42:5, 44:6, 49:21, 51:14
meaning [1] - 18:4
member [8] - 9:18, 10:17, 10:22, 11:5, 11:7, 11:8, 18:1, 19:16
members [4] - 3:14, 3:15, 17:25, 18:3
mentioning [1] - 11:16
merely [1] - 32:19
merit [1] - 44:18
merits [1] - 57:9
MEYER [1] - 2:7
Michael [4] - 26:6, 27:24, 28:3

**might** [3] - 5:22, 39:2, 39:11
**Mills** [2] - 17:20, 18:10
**mine** [1] - 15:22
**minute** [3] - 17:21, 36:13, 46:17
**misrepresentations** [1] - 34:5
**missing** [1] - 27:21
**Mobile** [1] - 38:7
**moment** [1] - 25:14
**Monell** [1] - 25:8
**money** [2] - 20:3, 41:14
**month** [2] - 13:25, 39:18
**months** [4] - 9:11, 9:14, 19:18, 19:22
**mooted** [1] - 9:12
**morning** [10] - 3:9, 3:11, 3:12, 3:17, 3:18, 3:23, 21:17, 23:20, 36:15, 52:12
**Morrell** [1] - 13:24
**most** [1] - 16:20
**mostly** [1] - 35:22
**motion** [19] - 3:24, 4:23, 4:24, 5:1, 5:22, 6:4, 9:10, 26:13, 26:23, 29:4, 30:16, 30:17, 35:13, 38:1, 41:15, 46:14, 53:25, 56:2
**motions** [2] - 46:3, 52:17
**MR** [104] - 3:9, 3:12, 4:1, 4:4, 7:24, 8:7, 8:11, 8:21, 9:4, 11:24, 12:4, 12:13, 13:19, 13:23, 14:19, 15:1, 15:4, 15:9, 20:25, 21:3, 21:6, 21:10, 24:8, 24:11, 25:12, 25:18, 25:25, 27:8, 27:14, 27:23, 28:5, 28:9, 28:11, 28:22, 29:2, 29:9, 29:12, 29:15, 29:21, 29:25, 30:4, 30:12, 31:2, 31:6, 31:12, 31:20, 32:7, 32:11, 32:16, 32:21, 33:1, 35:6, 35:8, 35:21, 36:15, 37:10, 37:15, 39:16, 40:20, 41:4, 42:4, 42:12, 42:20, 42:23, 43:4, 43:11, 44:4, 44:10, 46:13, 48:1, 48:8, 48:17, 50:9, 50:13, 50:19,

50:22, 50:25, 51:9, 51:13, 51:25, 53:5, 53:12, 53:15, 53:18, 53:21, 53:23, 54:16, 54:19, 54:24, 55:3, 55:6, 55:13, 55:22, 56:1, 56:5, 56:10, 56:13, 56:22, 57:2, 57:6, 57:13, 57:17, 57:20, 58:1
**MS** [21] - 3:18, 21:17, 21:24, 22:6, 22:10, 22:15, 22:24, 23:5, 23:15, 24:6, 24:12, 24:17, 24:19, 25:3, 25:16, 33:5, 33:8, 33:20, 33:23, 35:1, 35:3
**must** [2] - 8:15, 45:13

## N

**name** [4] - 21:25, 23:4, 23:7, 30:14
**narrow** [3] - 45:2, 45:24, 52:5
**nearly** [1] - 16:21
**need** [12] - 8:22, 11:18, 13:2, 32:1, 34:17, 34:19, 35:19, 37:1, 46:14, 52:18, 52:20, 53:5
**needless** [1] - 52:22
**needs** [2] - 11:18, 46:9
**new** [3] - 14:9, 16:8, 43:21
**New** [1] - 16:3
**news** [1] - 20:8
**next** [1] - 28:13
**nine** [2] - 3:14, 9:11
**nobody** [1] - 35:15
**non** [1] - 24:13
**none** [1] - 54:2
**nonetheless** [1] - 55:19
**normal** [1] - 57:2
**Northwest** [2] - 26:19, 28:17
**notably** [1] - 39:19
**note** [4] - 4:9, 24:1, 24:12, 52:12
**nothing** [6] - 29:18, 31:4, 41:20, 56:6, 56:7, 57:8
**notice** [11] - 26:10, 26:11, 26:20, 26:21, 28:18, 30:18, 30:19, 35:11, 35:24, 52:19
**notwithstanding** [2] - 18:1, 33:12

**number** [5] - 13:13, 19:14, 43:11, 43:24, 51:14
**NW** [1] - 2:3

## O

**O'HAGAN** [1] - 2:7
**Obama** [1] - 16:24
**object** [1] - 53:3
**obviously** [4] - 27:10, 34:11, 41:5, 47:10
**occur** [1] - 6:17
**occurred** [1] - 13:25
**OF** [1] - 2:2
**office** [4] - 21:21, 22:1, 23:9, 23:25
**Office** [13] - 9:16, 22:3, 22:6, 27:22, 28:7, 28:8, 30:7, 33:13, 33:23, 34:18, 47:8, 47:20, 47:21
**OFFICE** [1] - 2:2
**officer** [3] - 47:2, 47:5, 47:19
**old** [1] - 14:9
**omit** [1] - 42:17
**one** [16] - 11:3, 16:16, 16:18, 17:21, 19:14, 25:14, 30:12, 31:6, 34:2, 35:6, 43:11, 45:2, 51:14, 52:1, 52:8, 57:23
**opinion** [5] - 6:1, 40:21, 40:25, 41:1, 55:17
**opportunity** [8] - 11:21, 13:14, 15:3, 23:18, 42:9, 51:6, 54:10, 57:24
**opposition** [4] - 4:23, 23:16, 41:15, 53:25
**option** [1] - 42:13
**order** [19] - 3:2, 7:8, 9:9, 9:17, 10:3, 18:14, 18:16, 23:13, 25:6, 27:4, 27:7, 31:23, 32:2, 32:5, 33:14, 39:18, 46:11, 48:18, 55:19
**ordinary** [1] - 29:22
**otherwise** [2] - 26:16, 56:20
**outcome** [1] - 40:11
**outside** [1] - 45:21
**outweighed** [1] - 52:21
**overlooked** [1] - 55:20
**overseeing** [1] - 41:22
**owes** [1] - 36:1

**own** [2] - 12:21, 14:12

## P

**p.m** [1] - 28:15
**papers** [1] - 36:18
**paragraph** [6] - 27:25, 28:1, 28:11, 28:14, 29:5
**part** [7] - 9:10, 19:21, 33:22, 40:7, 47:11, 51:11, 53:10
**participated** [1] - 20:3
**particular** [4] - 5:5, 8:3, 14:25, 36:8
**particularity** [1] - 43:20
**particularly** [3] - 6:20, 17:4, 45:24
**parties** [3] - 3:6, 45:9, 46:23
**partisan** [1] - 16:16
**party** [6] - 24:15, 24:21, 25:4, 26:16, 37:20, 52:18
**party's** [1] - 37:23
**pattern** [2] - 4:13, 51:1
**PAUL** [1] - 2:7
**pay** [1] - 25:2
**penalty** [1] - 27:20
**pending** [3] - 10:6, 12:23, 15:14
**people** [1] - 16:22
**per** [1] - 17:22
**percent** [1] - 11:1
**perjury** [1] - 27:20
**permission** [1] - 27:10
**person** [15] - 16:16, 21:23, 22:2, 22:13, 22:21, 23:8, 23:24, 30:11, 30:15, 31:14, 31:15, 33:11, 34:2, 34:3, 46:10
**person's** [1] - 21:25
**personally** [2] - 8:22, 8:24
**pertain** [1] - 43:13
**phase** [1] - 53:6
**phone** [1] - 33:9
**physical** [1] - 27:19
**PI** [1] - 41:16
**pick** [1] - 4:21
**picked** [1] - 36:19
**piecemeal** [3] - 12:6, 43:6, 54:9
**plaintiff** [5] - 3:8, 21:18, 25:7, 38:15, 45:6
**plaintiff's** [2] - 26:13, 26:23

**plausibility** [1] - 6:7
**play** [2] - 29:15, 29:17
**pleadings** [1] - 19:13
**plenty** [1] - 57:15
**PLLC** [1] - 2:7
**podium** [1] - 33:7
**point** [8] - 4:20, 24:14, 30:21, 34:7, 36:4, 47:22, 52:1, 54:23
**pointed** [1] - 7:25
**policing** [1] - 14:23
**political** [2] - 15:21, 19:12
**portion** [1] - 44:12
**position** [6] - 8:8, 13:16, 20:24, 24:20, 43:16, 57:9
**possible** [1] - 17:10
**practice** [11] - 4:13, 9:22, 10:10, 11:4, 14:17, 14:24, 17:17, 51:1, 52:15, 52:16
**practiced** [1] - 5:13
**practicing** [1] - 10:24
**practitioner** [1] - 11:2
**precedent** [1] - 7:4
**preclude** [2] - 18:12, 46:1
**precludes** [1] - 37:20
**predetermined** [1] - 13:1
**prejudged** [2] - 40:11, 41:11
**prejudice** [2] - 13:5, 17:14
**preliminary** [17] - 3:25, 4:2, 4:22, 5:1, 6:10, 7:1, 18:8, 26:13, 26:23, 29:4, 30:16, 30:17, 35:13, 40:13, 44:13, 48:19, 52:16
**prepared** [1] - 49:10
**present** [6] - 4:19, 15:25, 21:7, 46:23, 50:24, 50:25
**presentation** [1] - 52:22
**presents** [2] - 45:6, 45:20
**preserve** [2] - 11:4, 38:23
**President** [4] - 5:13, 16:23, 16:24
**presumptuous** [1] - 53:10
**prevail** [1] - 12:10
**preventing** [2] - 35:15, 54:24
**prevents** [1] - 10:23,

38:2, 39:1
**previous** [1] - 6:16
**previously** [4] - 49:11, 51:7, 56:3, 56:19
**private** [2] - 20:13, 26:6
**pro** [2] - 3:10, 5:18
**pro-life** [1] - 5:18
**problem** [2] - 9:5, 49:18
**Procedure** [4] - 6:14, 34:15, 34:22, 35:4
**proceed** [9] - 3:25, 11:18, 31:22, 43:19, 48:2, 48:5, 48:8, 51:24, 55:2
**proceeding** [9] - 6:13, 7:1, 9:7, 11:17, 11:22, 13:6, 39:7, 40:17
**proceedings** [4] - 10:21, 15:24, 38:5, 58:14
**PROCEEDINGS** [1] - 3:1
**process** [16] - 21:16, 25:20, 26:5, 26:6, 28:3, 28:22, 29:9, 29:21, 31:21, 32:11, 32:17, 36:3, 46:6, 46:12, 46:25, 47:16
**Profession** [1] - 3:13
**Professional** [2] - 15:19, 19:16
**Professor** [1] - 18:25
**proffer** [4] - 50:14, 51:11, 56:10, 57:2
**proffering** [3] - 51:9, 51:10, 54:19
**progeny** [1] - 6:7
**promulgated** [4] - 14:1, 14:3, 18:4, 43:17
**proper** [2] - 25:4, 34:22, 47:23
**properly** [1] - 3:21
**proposed** [1] - 7:7
**prosecution** [2] - 4:8, 17:1
**protect** [1] - 10:1
**proud** [1] - 17:25
**provide** [3] - 52:11, 52:16, 52:18
**provides** [1] - 47:2
**provision** [2] - 19:22, 34:24
**provisions** [1] - 34:10
**public** [12] - 16:23, 17:24, 18:2, 20:14, 21:21, 22:1, 23:9,

23:24, 36:1, 41:19, 42:1
**pure** [1] - 52:4
**purpose** [4] - 39:19, 44:20, 52:5, 52:8
**purposes** [2] - 6:10, 48:18
**pursue** [2] - 6:20, 49:13
**pursuing** [1] - 43:6
**put** [2] - 18:23, 49:7

**Q**

**questionable** [1] - 47:14
**quickly** [1] - 9:24
**quiet** [1] - 43:2
**quote** [7] - 38:2, 44:19, 44:21, 44:25, 45:3, 45:5, 45:21
**quote-unquote** [1] - 45:21

**R**

**raise** [24] - 11:21, 11:22, 12:9, 12:11, 15:5, 37:3, 37:4, 37:5, 42:9, 42:16, 42:18, 43:9, 49:14, 49:16, 51:6, 54:11, 56:18, 56:25, 57:11, 57:12, 57:23, 57:24
**raised** [23] - 11:24, 12:2, 12:11, 37:6, 37:8, 37:12, 37:13, 39:21, 40:18, 42:11, 42:19, 43:7, 49:15, 50:2, 50:5, 50:6, 50:7, 51:19, 51:20, 51:21, 54:7, 54:13
**raising** [4] - 8:19, 12:7, 54:5, 54:10
**rather** [1] - 23:9
**read** [6] - 28:1, 28:14, 30:2, 44:11, 50:10, 58:2
**ready** [1] - 17:11
**really** [2] - 39:3, 51:23
**reason** [3] - 54:5, 55:15, 55:18
**reasoned** [1] - 9:24
**reasons** [4] - 19:7, 30:4, 53:4, 56:19
**rebutted** [1] - 4:11
**recalling** [1] - 46:21
**receive** [1] - 32:4
**received** [3] - 23:9, 32:5, 33:10
**recent** [1] - 5:11

**recess** [4] - 46:4, 46:17, 46:18, 49:12
**reciprocal** [1] - 10:20
**recommendation** [6] - 9:17, 10:5, 31:8, 36:25, 39:9, 49:4
**record** [10] - 3:7, 7:6, 18:23, 23:17, 31:12, 49:7, 50:17, 51:8, 51:11, 54:20
**reference** [8] - 5:2, 26:10, 26:20, 28:18, 50:3, 50:4, 53:24
**referenced** [4] - 41:3, 46:5, 52:14
**referencing** [1] - 34:25
**refused** [3] - 12:22, 43:13, 43:14
**regard** [11] - 4:7, 5:7, 12:24, 16:11, 17:13, 22:16, 27:8, 45:18, 48:22, 48:24, 49:1
**regarding** [5] - 7:16, 7:22, 46:6, 46:25, 56:25
**regards** [1] - 5:12
**regurgitate** [3] - 53:3, 53:6
**regurgitated** [1] - 40:5
**reinstatement** [1] - 19:22
**rejection** [1] - 38:6
**related** [1] - 45:8
**relevance** [1] - 54:22
**relevant** [2] - 52:7, 57:1
**relief** [14] - 30:21, 30:22, 36:22, 39:5, 39:10, 44:16, 45:12, 45:19, 48:17, 48:23, 48:24, 49:1, 49:2
**rely** [1] - 18:6
**remain** [1] - 17:25
**remedies** [3] - 8:2, 15:10, 17:9
**remedy** [3] - 42:2, 43:25, 44:2
**rendered** [1] - 38:4
**renew** [1] - 56:2
**repackaging** [1] - 38:14
**repeat** [1] - 45:15
**repeatedly** [2] - 45:1, 52:13
**report** [6] - 13:9, 31:7, 36:24, 39:8, 48:19, 49:4
**reporter** [1] - 46:17
**represent** [1] - 20:16
**representation** [1] -

34:19
**represented** [1] - 19:15
**Republican** [3] - 4:15, 5:19, 16:18
**request** [3] - 49:6, 50:14, 55:23
**requested** [1] - 48:17
**requesting** [1] - 30:22
**require** [2] - 47:7, 47:18
**required** [3] - 4:18, 30:19, 36:25
**requirement** [1] - 13:17
**requires** [2] - 17:4, 47:2
**respect** [3] - 11:16, 21:12, 42:4
**respected** [2] - 10:13, 11:10
**respectfully** [7] - 6:17, 6:23, 42:20, 49:6, 50:14, 54:16, 55:23
**response** [1] - 33:10
**responsibility** [2] - 14:23, 26:5
**Responsibility** [3] - 3:14, 15:20, 19:17
**responsible** [2] - 41:22, 47:12
**rest** [1] - 18:11
**restrained** [1] - 48:15
**result** [1] - 5:15
**retaliated** [1] - 16:11
**retaliatory** [1] - 9:20
**reversal** [1] - 57:7
**reversed** [5] - 6:1, 6:17, 9:13, 53:13, 53:17
**review** [4] - 20:22, 37:21, 38:6, 44:22
**rights** [11] - 6:20, 11:9, 17:21, 37:24, 38:14, 38:17, 38:18, 39:4, 42:13, 44:17, 45:17
**ripe** [1] - 18:3
**RMR** [2] - 58:12, 58:16
**Rooker** [14] - 8:1, 15:4, 18:11, 36:20, 37:17, 39:1, 39:11, 44:11, 44:18, 44:20, 45:2, 45:25, 46:1, 49:19
**Rooker-Feldman** [12] - 18:11, 36:20, 37:17, 39:1, 39:11, 44:11, 44:18, 44:20, 45:2, 45:25, 46:1, 49:19

**Rubin** [1] - 10:15
**Rudy** [1] - 16:4
**Rule** [4] - 11:20, 17:14, 34:8, 45:13
**rule** [21] - 9:2, 12:21, 13:25, 14:3, 14:9, 22:17, 39:21, 40:16, 41:3, 43:17, 43:21, 43:22, 46:5, 46:25, 47:1, 47:17, 49:10, 50:3, 55:16, 55:18
**ruled** [2] - 8:9, 18:18
**rules** [14] - 6:14, 13:2, 13:3, 14:5, 14:12, 18:3, 34:24, 34:25, 36:6, 36:8, 36:12, 37:1, 52:13
**Rules** [4] - 6:14, 34:15, 34:22, 35:3
**ruling** [7] - 9:5, 49:2, 49:3, 49:22, 56:8, 57:21
**rulings** [1] - 43:12
**rushed** [1] - 10:7
**Russian** [1] - 19:20

**S**

**sanctioned** [1] - 19:17
**sat** [1] - 9:14
**Sataki** [1] - 10:3
**satisfy** [2] - 41:7, 41:8
**satisfying** [1] - 40:12
**scheduled** [1] - 55:11
**scheme** [1] - 20:3
**scholar** [1] - 19:1
**se** [2] - 3:10, 17:22
**seated** [1] - 31:11
**second** [2] - 27:25, 38:24
**secondly** [3] - 53:9, 53:21, 53:23
**Section** [2] - 25:7, 44:21
**see** [14] - 14:15, 22:22, 33:3, 33:10, 49:12, 49:17, 49:25, 50:6, 51:15, 51:16, 51:17, 51:20, 54:4, 57:3
**seek** [2] - 11:22, 49:16
**seeking** [9] - 19:8, 36:22, 37:20, 39:4, 39:10, 44:16, 45:18, 50:23, 50:25
**seeks** [1] - 45:17
**seem** [1] - 31:15
**seemingly** [1] - 47:1
**selective** [2] - 4:8, 17:1
**self** [1] - 50:16

**self-authenticating**
[1] - 50:16
**semantics** [2] - 29:15,
29:17
**Senators** [1] - 16:5
**send** [1] - 32:11
**sense** [1] - 7:21
**sent** [2] - 9:16, 9:19
**separate** [1] - 35:18
**serious** [1] - 8:14
**seriously** [1] - 20:22
**serve** [4] - 30:8, 30:9,
33:14, 35:19
**served** [36] - 3:21,
7:14, 19:18, 19:23,
21:6, 21:15, 21:19,
22:14, 22:21, 23:13,
23:14, 24:15, 26:18,
27:3, 27:5, 27:13,
27:22, 28:10, 28:15,
28:24, 29:3, 30:6,
30:10, 30:14, 31:4,
32:2, 32:15, 34:18,
34:19, 35:13, 46:11,
46:12, 47:3, 47:8,
48:9, 48:21
**server** [7] - 20:13,
26:7, 28:4, 28:23,
29:10, 32:12, 32:18
**servers** [1] - 29:22
**service** [57] - 21:18,
21:20, 22:3, 22:4,
22:23, 23:17, 23:21,
24:14, 25:5, 25:15,
25:16, 25:20, 26:1,
26:2, 26:5, 26:9,
27:1, 27:7, 27:10,
27:11, 27:16, 28:13,
28:20, 28:25, 29:6,
29:8, 29:19, 29:23,
30:5, 31:5, 31:17,
31:19, 32:3, 32:4,
33:12, 33:14, 33:25,
34:3, 34:8, 34:12,
34:16, 34:20, 34:22,
34:23, 35:12, 36:3,
36:9, 46:6, 46:25,
47:16, 47:18, 47:21,
47:23, 48:6, 48:7,
48:10
**serving** [3] - 26:24,
29:4, 34:13
**set** [5] - 7:4, 37:1,
38:10, 43:20, 43:24
**setting** [1] - 39:13
**seven** [3] - 19:18,
19:22, 55:14
**several** [2] - 25:18,
52:24
**shall** [4] - 13:12, 14:4,

43:22
**share** [1] - 52:6
**shell** [1] - 42:5
**Shipp** [1] - 16:15
**shirked** [1] - 18:18
**short** [1] - 44:12
**shorten** [1] - 11:17
**show** [2] - 41:17, 51:1
**showing** [2] - 23:11,
26:1
**shown** [1] - 17:13
**sic** [1] - 17:20
**signed** [1] - 27:19
**significant** [3] - 17:12,
17:18, 18:9
**similar** [1] - 19:10
**similarity** [1] - 4:17
**situation** [3] - 14:22,
20:1, 20:11
**Sixth** [1] - 6:21
**slap** [1] - 19:9
**slow** [3] - 55:4, 55:5,
55:9
**sole** [1] - 11:2
**solely** [2] - 44:22,
45:12
**someone** [3] - 23:6,
32:4, 43:19
**somewhere** [1] - 23:4
**soon** [2] - 46:7, 46:16
**sorry** [2] - 27:21, 34:8
**sort** [2] - 37:1, 41:24
**sought** [4] - 8:2, 8:3,
39:5, 45:12
**speaks** [1] - 37:17
**Special** [1] - 20:2
**specifically** [3] - 4:25,
11:15, 34:1
**speeded** [2] - 55:10,
55:13
**spinning** [1] - 38:20
**stacked** [1] - 10:11
**stacking** [4] - 9:7,
10:2, 10:18, 17:15
**stage** [1] - 30:19
**stand** [9] - 4:6, 11:12,
11:13, 21:1, 50:20,
52:4, 52:8, 52:11,
53:2
**standard** [2] - 6:6,
40:12
**standing** [2] - 11:5,
11:7
**start** [1] - 21:12
**started** [1] - 52:11
**state** [15] - 3:6, 7:20,
7:23, 12:8, 12:10,
12:23, 15:6, 15:14,
18:13, 34:9, 37:8,
37:15, 37:20, 37:21,

37:23, 38:3, 38:4,
38:16, 39:5, 39:6,
41:21, 41:22, 41:24,
42:16, 42:17, 42:19,
43:7, 43:10, 44:22,
45:9, 45:11, 49:13,
49:14, 50:6, 51:5
**state's** [1] - 34:13
**States** [4] - 17:19,
26:12, 26:22, 37:22
**states** [2] - 13:8, 26:7
**stating** [1] - 21:19
**statute** [2] - 13:7, 13:8
**statutory** [1] - 14:5
**stay** [7] - 12:22, 12:24,
12:25, 15:13, 17:10,
43:14
**Steele** [1] - 20:4
**still** [4] - 11:8, 13:21,
55:17, 55:25
**Stop** [1] - 19:4
**stop** [1] - 41:25
**stopping** [1] - 41:21
**Street** [3] - 2:3, 26:19,
28:16
**strong** [1] - 6:1
**structure** [1] - 33:18
**subject** [1] - 15:23
**subjected** [1] - 13:6
**submit** [4] - 18:25,
19:4, 22:15, 35:9
**submitted** [5] - 4:9,
18:22, 53:23, 54:1,
54:2
**subsequently** [1] -
49:23
**substance** [1] - 37:21
**substantial** [1] - 4:17
**substantially** [1] -
19:10
**substituted** [1] - 24:19
**success** [2] - 17:13,
41:6
**succinct** [1] - 44:12
**sue** [2] - 24:21, 25:6
**sued** [6] - 3:15, 16:22,
24:23, 25:9, 47:15
**suggest** [3] - 31:20,
41:20, 58:1
**sui** [1] - 24:13
**Suite** [2] - 2:3, 2:8
**suits** [1] - 38:2
**summons** [3] - 26:9,
26:19, 28:17
**Superior** [21] - 7:18,
8:4, 8:9, 8:13, 10:6,
34:15, 35:3, 36:21,
38:10, 39:19, 40:22,
42:6, 44:1, 44:15,
46:25, 49:21, 49:24,

51:19, 54:8, 57:12
**support** [2] - 40:10,
41:10
**supports** [2] - 35:18,
42:1
**Supreme** [9] - 10:12,
37:25, 38:8, 44:3,
44:5, 44:8, 44:19,
44:22, 45:1
**suspended** [1] - 19:24
**suspension** [1] - 10:8
**sworn** [1] - 26:8
**system** [5] - 7:23,
12:20, 14:17, 16:7,
16:25
**Systems** [2] - 44:24,
45:22

---

**T**

**Ted** [1] - 16:6
**temporarily** [1] - 19:24
**temporary** [1] - 10:8
**ten** [1] - 53:17
**tendered** [1] - 25:24
**terms** [5] - 4:16, 6:4,
17:16, 18:7, 30:21
**territory** [1] - 8:20
**testify** [6] - 4:6, 4:18,
6:11, 11:1, 18:22,
49:7
**testimony** [5] - 52:11,
52:17, 52:18, 52:21,
54:2
**Texas** [1] - 10:14
**THE** [124] - 3:11, 3:17,
3:23, 4:3, 7:10, 8:6,
8:8, 8:18, 8:24,
11:21, 12:2, 12:6,
13:15, 13:21, 14:14,
14:21, 15:3, 15:5,
20:23, 21:2, 21:5,
21:8, 21:11, 21:23,
22:4, 22:8, 22:12,
22:17, 23:3, 23:11,
24:2, 24:7, 24:10,
24:16, 24:18, 24:25,
25:11, 25:14, 25:17,
27:2, 27:13, 27:21,
28:3, 28:6, 28:10,
28:19, 29:1, 29:7,
29:11, 29:13, 29:17,
29:24, 30:1, 30:8,
30:25, 31:3, 31:10,
31:14, 31:24, 32:10,
32:13, 32:19, 32:23,
33:2, 33:6, 33:17,
33:21, 34:24, 35:2,
35:5, 35:7, 35:17,
36:5, 37:2, 37:14,
39:14, 40:14, 41:2,

42:3, 42:8, 42:15,
42:22, 42:24, 43:5,
43:25, 44:6, 46:3,
46:15, 46:19, 46:24,
48:5, 48:11, 49:10,
50:11, 50:18, 50:21,
50:23, 51:4, 51:12,
51:14, 53:10, 53:13,
53:16, 53:19, 53:22,
54:4, 54:18, 54:22,
55:1, 55:5, 55:8,
55:17, 55:24, 56:3,
56:6, 56:12, 56:15,
56:24, 57:5, 57:8,
57:15, 57:19, 57:22,
58:3
**theoretically** [1] - 25:1
**therefore** [6] - 35:19,
37:1, 44:9, 49:3,
51:20, 54:2
**they've** [3] - 35:11,
41:11, 54:2
**third** [3] - 27:25, 28:1,
28:11
**thorough** [1] - 4:20
**three** [2] - 3:14, 19:12
**throughout** [1] - 5:5
**thrown** [1] - 20:15
**time-consuming** [1] -
10:23
**timeline** [1] - 12:17
**timely** [2] - 12:16, 17:8
**titled** [1] - 58:14
**today** [12] - 3:24, 4:6,
5:3, 6:10, 19:6,
31:25, 35:15, 39:4,
39:20, 48:25, 49:7,
55:11
**tolerated** [1] - 17:7
**took** [1] - 49:12
**top** [1] - 27:24
**topic** [2] - 37:18,
39:11
**transcript** [1] - 58:13
**transcription** [1] -
58:13
**trash** [1] - 20:15
**trial** [3] - 26:11, 26:21,
48:25
**tried** [1] - 17:9
**trigger** [1] - 10:20
**triggered** [1] - 19:20
**true** [2] - 14:8, 58:13
**Trump** [1] - 5:13
**try** [4] - 39:2, 39:10,
46:9, 50:24
**trying** [6] - 23:1,
23:20, 29:17, 42:25,
55:4, 55:5
**twice** [1] - 45:4

**two** [5] - 16:12, 30:4, 34:10, 34:21, 41:18
**Twombly** [1] - 6:7
**Ty** [1] - 20:14
**type** [1] - 47:9
**typically** [1] - 25:3

**U**

**U.S** [2] - 44:25, 45:23
**U.S.C** [3] - 44:21, 45:14, 45:15
**ultimately** [1] - 5:24
**uncertainty** [1] - 9:22
**unconstitutional** [1] - 31:9
**under** [22] - 5:19, 6:7, 6:13, 6:21, 8:1, 11:25, 12:18, 14:4, 14:9, 16:14, 17:5, 18:10, 27:19, 34:8, 34:15, 34:21, 43:21, 44:17, 45:13, 45:14
**underscores** [1] - 36:4
**undue** [1] - 52:21
**unethical** [1] - 10:16
**unfair** [1] - 10:16
**unintentional** [1] - 55:15
**United** [4] - 17:19, 26:12, 26:22, 37:22
**unquote** [5] - 44:23, 45:2, 45:4, 45:5, 45:21
**up** [22] - 4:21, 5:25, 7:18, 8:17, 8:25, 9:21, 10:25, 20:7, 27:24, 33:6, 36:19, 39:15, 39:25, 40:2, 40:19, 44:4, 49:8, 50:17, 52:3, 55:10, 55:13
**upset** [1] - 42:25
**usurp** [1] - 14:16

**V**

**vacate** [1] - 31:7
**various** [3] - 5:21, 6:12, 19:7
**vests** [1] - 44:21
**vexatious** [1] - 6:19
**view** [2] - 56:18, 56:20
**viewpoint** [9] - 4:8, 4:14, 5:7, 5:12, 17:2, 18:24, 49:5, 51:1, 53:1
**views** [2] - 18:1, 53:1
**vindictive** [1] - 9:20
**violated** [5] - 38:17, 38:18, 39:23, 40:16,

42:7
**violates** [1] - 37:24
**violating** [1] - 18:14
**violation** [7] - 15:2, 15:6, 25:7, 38:14, 44:17, 45:16, 51:16
**Virginia** [1] - 2:8
**virtually** [1] - 9:12
**void** [1] - 48:19

**W**

**waited** [1] - 10:2
**Wallace** [1] - 16:14
**wants** [3] - 37:2, 39:2, 43:18
**Washington** [3] - 2:4, 26:19, 28:17
**waste** [1] - 52:22
**ways** [1] - 5:16
**weaponized** [2] - 16:8, 16:25
**weaved** [1] - 32:8
**Weaver** [4] - 26:6, 27:24, 28:3
**week** [1] - 26:17
**weekend** [1] - 23:22
**weigh** [1] - 6:23
**well-respected** [1] - 10:13
**whatsoever** [1] - 56:8
**whichever** [1] - 7:2
**wins** [1] - 10:13
**witness** [4] - 4:6, 11:12, 11:13, 20:25
**witnesses** [1] - 52:20
**wonderment** [1] - 52:6
**works** [1] - 23:7
**wrist** [1] - 19:21
**writing** [1] - 22:8

**Y**

**year** [1] - 10:14
**years** [9] - 8:20, 10:4, 10:25, 11:6, 11:8, 26:15, 52:15, 53:16
**York** [1] - 16:4
**Younger** [1] - 8:1